David S. Kahn
Nevada Bar No. 007038
WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER LLP
300 South Fourth Street, 11th Floor
Las Vegas, NV 89101
(702) 727-1400; FAX (702) 727-1401
E-mail:David.Kahn@wilsonelser.com

*Attorneys for Defendant Hansen, Barnett & Maxwell, P.C.*

THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEVADA

| | |
|---|---|
| OAKTREE CAPITAL MANAGEMENT, L.P., on behalf of its managed funds and accounts, LAZARD ASSET MANAGEMENT LLC, on behalf of its managed funds and accounts, ANGELO, GORDON & CO., L.P., ZAZOVE ASSOCIATES LLC, on behalf of certain of its managed funds and accounts, CNH PARTNERS, LLC, ADVENT CAPITAL MANAGEMENT, LLC AQR CAPITAL MANAGEMENT, LLC, and HFR CA LAZARD RATHMORE MASTER TRUST,<br><br>Plaintiffs,<br><br>v<br><br>KPMG, KPMG INTERNATIONAL COOPERATIVE, KPMG LLP, HANSEN, BARNETT & MAXWELL, P.C., And MORGAN STANLEY & CO.,<br><br>Defendants | No. 12-cv-00956-JCM-GWF |

**<u>DEFENDANT HANSEN, BARNETT & MAXWELL P.C.'S MOTION TO DISMISS</u>**

Defendant Hansen, Barnett & Maxwell P.C. ("Hansen"), by and through its attorney of record David S. Kahn, Esq., of WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER LLP, hereby moves for an order dismissing the complaint as against Hansen, in its entirety and for any

other relief the Court finds just and proper, for failure to state a claim upon which relief can be granted. This motion is brought pursuant to Federal Rules of Civil Procedure 12(b)(6) and 9(b), and pursuant to the Private Securities Litigation Reform Act ("PSLRA").[1]

## PRELIMINARY STATEMENT

Hansen, Barnett & Maxwell, P.C. is a small accounting firm with one office in Salt Lake City, Utah. Hansen conducted an audit of ShengdaTech, Inc.'s financial statements for the fiscal year ending December 31, 2007. Now, five years later, Plaintiffs are bringing a securities fraud action questioning the audit and the opinion rendered by Hansen in early 2008. However, the public was alerted to potential issues with Hansen's Audit Report as early as April 1, 2009, by virtue of a subsequent report by KPMG, which found material weaknesses in the Company's internal controls. Plaintiffs describe the KPMG report as providing notice that there were "great concerns" about Hansen's audit and that there was a significant chance that the Company's underlying financial statements were misstated. By no means does movant suggest that anything about Hansen's audit departed from professional standards or was reckless or was negligent. To the contrary, the audit was conducted in accordance with professional standards and Hansen's audit opinion was its belief at the time. However, Plaintiffs' plainly state that they were on notice of potential issues with the Hansen audit by early 2009, yet they waited years before bringing this action. Now it is not timely.

Moreover, rather than actually allege that Hansen's opinion was false or that it had no reasonable basis for the opinion it reported, Plaintiffs allege that the underlying company financial statements for 2007 must be false because of events that occurred in 2011. Because Plaintiffs fail to set forth an alleged misstatement by Hansen, actual reliance on that misstatement and loss causation relating to that misstatement, the allegations do not set forth a claim under Section 18 of the

[1] This Memorandum of Law contains many of the same arguments advanced in the Memorandum of Law submitted in the concurrently filed motion to dismiss in *Delaware Public Employees' Retirement System v. KPMG et al.*, No. 12-cv-00961-JCM-GWF. In order to maintain the completeness of each record, movant must include all applicable arguments in each brief.

Exchange Act and should be dismissed. Additionally, the Complaint completely undercuts any allegation of Plaintiffs' justifiable reliance on the Hansen audit report because, by Plaintiffs' own description, the KPMG audit report caused investors to seriously question whether the Hansen audit report was correct or that Hansen had a reasonable basis for its opinion. Thus, Plaintiffs cannot claim justifiable reliance because they were on notice of potential serious misstatements in the very document they claim to have relied upon.

As Plaintiffs' Section 18 claim fails, the Court should decline to exercise supplemental jurisdiction over Plaintiffs' state law claims. If the Court opts to hear these claims, they nevertheless fail. First, Plaintiffs attempt to bring claims under Connecticut and California law on behalf of unnamed purchasers. There are simply no allegations in the Complaint identifying any purported purchasers in Connecticut or California, how much they purchased, when the purchased or any other relevant information to state a claim under those states' laws. Thus, Plaintiffs have no standing to bring such claims. Additionally, and equally as compelling, Plaintiffs' claim under Section 25504.2 of the California Corporation Code is barred by the statute of limitations and fails to properly allege written consent, an untrue statement or omission and reliance. Plaintiffs' claim under Conn. Gen. Stat. § 36b-29 fails because the claim is time-barred and fails to allege "material assistance." Finally, Plaintiffs' Common Law Negligent Misrepresentation claim fails because Hansen was not in privity with the purchasers under Utah law.

This is a kitchen sink case - as in Plaintiffs have thrown everything they could in the Complaint including the kitchen sink. When the Complaint is actually analyzed to determine if a cause of action is properly pled, it becomes clear that, at least as against Hansen, the complaint is deficient. Therefore, the Complaint, at least as against Hansen, should be dismissed.

. . .

. . .

**STATEMENT OF THE CASE AS AGAINST HANSEN**

**A. Background**

This matter arises from an alleged fraud perpetrated by ShengdaTech, Inc. (the "Company"), a Chinese company that manufactures a specialty additive known as nano-precipated calcium carbonate. Complaint ¶ 31. ShengdaTech is not a party to this lawsuit. *Id*. ShengdaTech went public in the United States by virtue of a "reverse merger," a common method used by foreign and domestic entities to access the market without going through an initial public offering. *See* Complaint ¶ 38; *In re Advanced Battery Technologies*, 2012 U.S. Dist. LEXIS 123757, *58 (S.D.N.Y. Aug. 29, 2012).

Hansen audited the Company's financial statements for the fiscal year ending December 31, 2007 (the "2007 Audit Opinion"). Complaint ¶ 4. The 2007 Audit Opinion was filed with the SEC on March 14, 2008. Complaint ¶ 46. The Audit Opinion was amended several weeks later to reclassify some balance sheet items, which did not have any impact on the financial statements as a whole.

In 2008, ShengdaTech conducted a 6.0% Note Offering pursuant to an Offering Memorandum. Complaint ¶ 35. According to the complaint, this offering incorporated the Hansen audit report and the Company's financial statements for 2007.

On November 11, 2008, ShengdaTech announced that it had dismissed Hansen as its auditor and retained KPMG. Complaint ¶ 40. KPMG, in its audit report on the Company's 2008 Financial Statements filed on April 1, 2009, reported that it had found material weaknesses in the Company's internal controls over financial reporting. Complaint ¶ 41.

According to Plaintiffs, "[t]he fact that KPMG uncovered "material weaknesses" mere months into its engagement raise[d] serious questions about the rigor Hansen applied in auditing the Company's 2007 Financial Statements and the basis upon which it opined that such statements

presented the Company's financial positions and the results of its operations in accordance with GAAP…" Complaint ¶ 41. Plaintiffs go on to allege that "[t]he fact that "material weaknesses" evidently existed and were able to be uncovered by a new auditor within months of its retention strongly suggests that such weaknesses existed during Hansen's audits of ShengdaTech's financial statements and that, accordingly, Hansen did not have a reasonable basis for issuing unqualified audit opinions…." Complaint ¶ 48.

On December 10, 2010, ShengdaTech commenced a second note offering for notes bearing 6.5% interest. Complaint ¶ 37. This note offering also incorporated the Hansen 2007 audit report and the Company's 2007 financial statements. It also included the KPMG audit report regarding the material weaknesses in internal controls that Plaintiffs state would cause any reader to seriously question the Hansen audit.

On August 23, 2011, ShengdaTech filed for bankruptcy protection in the United States Bankruptcy Court for the District of Nevada and effectively defaulted on the 6.0% Notes and 6.5% Notes purchased by Plaintiffs. Complaint ¶ 72.

***B. The Causes of Action***

Plaintiffs set forth multiple claims for relief against multiple parties, some by all plaintiffs and some by only a select few plaintiffs. The first Claim for Relief is against Hansen pursuant to Section 18 of the Exchange Act relating to the company's 2007 10-k. The second Claim for Relief is a Section 18 claim against Hansen and KPMG relating to the Company's 2008 10-k. No new representations were made by Hansen in the 2008 10-k, but a copy of its previous audit report was incorporated into the 2008 10-k. The third Claim for Relief is also a Section 18 claim against Hansen and KPMG, but relates to the 2009 10-k. Like the 2008 10-k, a copy of the 2007 Hansen audit report is incorporated into the 10-k.[2]

---

[2] The fourth, seventh, eighth, tenth, eleventh, thirteenth, fourteenth and fifteenth Claims for Relief do

The fifth Claim for Relief seeks recovery relating to Plaintiff CNH's purchase of the 6.0% Notes and sounds in common law negligent misrepresentation. The sixth Claim for Relief seeks recovery on behalf of all Plaintiffs in connection with the 6.5% Note purchases and sounds in common law negligent misrepresentation. The ninth Claim for Relief seeks damages for a violation of California Corporations Code § 25504.2 relating to the purchases by the "California Plaintiffs" of the 6.5% Notes. The complaint does not identify the California plaintiffs.

The twelfth Claim for Relief seeks damages for a violation of the Connecticut Uniform Securities Act § 36b-29(a) relating to the "Connecticut plaintiffs" purchases of the 6.5% notes. Like the California state law claims, the complaint is silent as to the identity of the Connecticut plaintiffs.

## **ARGUMENT**[3]

In order to survive a motion to dismiss pursuant to Fed. R. Civ. P. 12(b), a complaint must plead sufficient factual allegations "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 570 (2007). "A claim has facial plausibility when the pleaded factual content allows the court to the draw reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (citation omitted). "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (internal quotation marks and citation omitted). If the plaintiff has not "nudged [his] claims across the line from conceivable to plausible, [the] complaint must be dismissed." *Twombly*, 550 U.S. at 570.

. . .

. . .

---

not name Hansen as a defendant. Thus, they will not be addressed herein.

[3] To the extent an argument for dismissal is set forth in co-defendants' respective motions to dismiss and is applicable to Hansen, Hansen hereby adopts those arguments as if fully set forth herein.

**POINT I**

**THE COMPLAINT FAILS TO ADEQUATELY PLEAD A CLAIM AGAINST HANSEN UNDER SECTION 18 OF THE EXCHANGE ACT OF 1933**

To state a claim under Section 18 of the Exchange Act, a plaintiff must plead that (1) a document filed pursuant to the Exchange Act, or any rule or regulation promulgated under it, contained a false or misleading statement; (2) the defendant made or caused to be made the false or misleading statement; (3) the plaintiff actually relied on the false statement; and (4) that reliance caused loss to the plaintiff. *See Kelley v. Rambus*, 2008 U.S. Dist. LEXIS 100319, fn. 3 (N.D. Cal. 2008) (aff'd by *Kelly v. Rambus, Inc*., 384 Fed. Appx. 570 (9th Cir. 2010)). Plaintiffs' claims are time-barred as against Hansen. Moreover, Plaintiffs' Complaint fails to adequately allege a false statement, actual reliance and loss causation. As such, the Complaint's First, Second and Third Claims for Relief must be dismissed as to Hansen.

***A. The Section 18 Claim is Barred By the Statute of Limitations***

Under Section 18, "no action shall be maintained to enforce any liability created under [Section 18] unless brought within one year after the discovery of the facts constituting the cause of action and within three years after such cause of action accrued." 15 U.S.C.S. § 78r(c). In determining when the statute of limitations began to run in a Section 18 case, the courts must first ask when plaintiffs had "inquiry notice" of the alleged misconduct and whether plaintiffs in their exercise of reasonable diligence should have discovered the facts constituting their claim. *Betz v. Trainer Wortham & Co.*, 504 F.3d 1017-1024-25 (9th Cir. 2007); *Kelley*, 2008 U.S. Dist. LEXIS 100319 at *32. The question of whether plaintiffs conducted a reasonable investigation is "suitable for resolution as a matter of law where (1) the investor is "experienced" or "sophisticated"; (2) the defendants made no reassurances; or (3) the "total[ity] of the circumstances" otherwise indicates that there were no disputed material facts. *Kelley*, 2008 U.S. Dist. LEXIS 100319 at *32 (*citing Betz*, 504

F.3d at 1025 n.4, 1027). As compared to fraud-based securities claims, far less is required to alert one to a potential Section 18 claimant such that a lower standard need be met for establishing whether Plaintiffs had "inquiry notice" of a Section 18 claim against Hansen. *Id.* at *33.

Accepting the Complaint's allegations on their face, Plaintiffs had inquiry notice of a potential claim against Hansen as a result of the 2008 report by KPMG. On April 1, 2009, the Company filed its 10-K with the KPMG audit report for fiscal year 2008. KPMG also issued a report regarding the Company's internal controls (the "Internal Controls Report"). *See* Complaint ¶¶ 41; 49. The Internal Controls Report stated, *inter alia*,

> Material weaknesses have been identified and included in management's assessment related to the lack of adequate policies, procedures and personnel to address the accounting for and disclosures of non-routine transactions and the Company's internal control over the accounting for income taxes.
> …
> In our opinion, because of the effect of the aforementioned material weaknesses on the achievement of the objectives of the control criteria, ShengdaTech, Inc., and subsidiaries have not maintained effective internal control over financial reporting as of December 31, 2008….

This Court need not conduct an inquiry as to whether these disclosures by KPMG constituted inquiry notice. Plaintiffs have affirmatively pled that they were put on notice by these disclosures. In their Complaint, Plaintiffs state that KPMG's warning about material weaknesses in ShengdaTech's internal controls raised "serious questions about the rigor Hansen applied in auditing the Company's 2007 Financial Statements and the basis upon which it opined that such statements presented the company's financial position and the results of its operations in accordance with GAAP and that the Company had effective internal controls over its financial reporting." Complaint ¶ 41. Plaintiffs further contend that the presence of the material weaknesses in a company's internal controls created "a reasonable possibility that a material misstatement of the company's annual or interim financial statements would not be prevented or detected on a timely basis." Complaint ¶ 48. Plaintiffs note that KPMG's determination "strongly suggests" that "Hansen did not have a

reasonable basis for issuing the [2007 Audit Opinion]" and were "negligent, at best, in not discovering the falsity of the Company's financial statements during their audits." *Id.* Effectively, Plaintiffs are announcing in the Complaint that Plaintiffs had inquiry notice of the exact allegations made against Hansen.

In *Kelley*, the Court read the plaintiffs' complaint to concede "inquiry notice" by pleading that they "became highly suspicious of Rambus's option grants" well before the statutory cutoff date. *Id.* at *34. Specifically, the complaint noted that the 2000 and 2001 losses "caused the Plaintiffs to examine closely the option grants and compensation expenses reported in [the Proxy Statements] in making and retaining Rambus securities in 2005 and 2006." *Id.* Here, Plaintiffs similarly concede inquiry notice.

As detailed by Plaintiffs' own allegations, investors were on notice as of the filing of the material weaknesses report on April 1, 2009 that there was a reasonable possibility of a material misstatement in the company's audited financial statements from the previous year. Plaintiffs are experienced and sophisticated institutional investors who had three years from the date of KPMG's Internal Controls Report to exercise "reasonable due diligence" to determine if a claim exists as to Hansen. As Plaintiffs concede notice on the face of the Complaint, there is no need to conduct a factual inquiry as to whether the circumstances could be interpreted to give rise to inquiry notice.

Therefore, because Plaintiffs, by their own admission, were on inquiry notice more than three years before the action was commenced, the claim against Hansen is untimely.

Regardless, all claims relating to purchases before March 14, 2009 are barred by the statute of repose. Claims pursuant to Section 18 are barred unless brought "within three years after such cause of action accrued." 15 U.S.C.S. § 78r(c). For statute of limitations purposes, this action is deemed commenced on March 14, 2012.[4] Thus any claims relating to purchases of the Notes prior

---

[4] The Parties entered into a stipulation tolling the statute of limitations from March 15 through June

to March 14, 2009 are barred. The 6.0% Note offering occurred in 2008 and the Complaint conveniently omits the dates on which any of the Plaintiffs purchased these notes. However, it is fair to assume that the purchases occurred shortly after the Note offering and would have occurred prior to March 14, 2009. Therefore, those claims are time barred.

**B. The Section 18 Claim Is Subject to Heightened Pleading Standards**

Although not an element of a Section 18 claim, when allegations of fraud permeate the complaint, the pleading is subject to a heightened pleading requirement under both Rule 9(b) and the Private Securities Litigation Reform Act. *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1104-5 (9th Cir. 2003); *Desaigoudar v. Meyercord*, 223 F.3d 1020, 1022-23 (9th Cir. 2000). Indeed, courts in the Ninth Circuit have applied Rule 9(b) to Section 18 claims against auditors. *Kelley v. Rambus*, 2008 U.S. Dist. LEXIS 100319. A court must determine the applicability of Rule 9(b) by examining the actual substance of the pleadings. *Vess*, 317 F.3d at 1103-05.

In addition to satisfying Rule 9(b), a plaintiff bringing a Section 18 claim must meet the PSLRA's "exacting pleading requirements." *See Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308 (2007); *Kelley*, 2008 U.S. Dist. LEXIS 100319 at *10 (applying PSLRA to Section 18(a) claims); *Deephaven Private Placement Trading Ltd. v. Grant Thornton & Co.*, 454 F.3d 1168, 1172 (10th Cir. 2006) (applying PSLRA to Section 18(a) claim). "The PSLRA requires a heightened pleading standard for allegations regarding misleading statements and omissions that is similar to the heightened pleading standard as required under Rule 9(b)." *In re Hansen Natural Corp. Sec. Litig.*, 527 F. Supp. 1142 (C.D. Cal. 2007); *see also Teamsters Local 617 Pension Funds v. Apollo Group, Inc.*, 633 F.Supp.2d 763 (D. Ari. 2009).

Here, the complaint is permeated with allegations of fraudulent conduct by Hansen,

---

6, 2012, the actual date the action was commenced. Complaint ¶ 89.

ShengdaTech and other defendants. For example, Plaintiffs allege that ShengdaTech was a "sham," that the Company engaged in a "massive fraud through the loss period," that the Financial Statements reviewed by the Company's auditors were "riddled with fraud" and that the relevant audit opinions contained false and misleading statements. *See* Complaint ¶¶ 2; 38-39; 77. Plaintiffs have alleged a "uniform course of fraudulent conduct" such that the Complaint is subject to the heightened pleading requirements embodied in Rule 9(b) and the PSLRA.

**C. The Complaint Fails to Sufficiently Identify a False Statement by Hansen**

To allege a false statement in a Section 18 claim, pursuant to Rule 9(b) and under the PSLRA, Plaintiffs must "specify each statement alleged to have been misleading, the reason or reason why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that believe is formed." 15 U.S.C. § 78u-4(b)(1). In a Section 18 claim, as brought here, to plead that an audit opinion is false and misleading, plaintiffs must generally allege either (1) that the auditor did not believe its audit opinions were true at the time they were made, or (2) that it did not have a reasonable basis for its audit opinions. *See Kelley*, 2008 U.S. Dist. LEXIS 100319 at *41. Plaintiffs do neither.

Here, Plaintiffs' only factual allegations are that the underlying financial statements are false. However, "[o]utside auditors may not be held liable under § 18(a) for misstatements in the company's financial statements that were certified by the auditor." *Id.* at *40. Outside auditors are not liable for such statements under § 18(a) because:

> [A]uditors do not 'certify' a company's financial statements in the sense that they 'guarantee' or 'insure' them. Nor do they, by virtue of auditing a company's financial statements, somehow make, own or adopt the assertions contained therein.

*Id.* at *40-41 (*citing Deephaven Private Placement Trading Ltd., v. Grant Thornton & Co.*, 454 F.3d 1168, 1174 (10th Cir. 2006); *see also SEC v. Arthur Young & Co.*, 590 F.2d 785, 788-89 (9th Cir.

1979) ("an accountant is not a guarantor of the reports he prepares").

Moreover, alleging GAAP violations in the company's financial statements to demonstrate that the auditor's opinion was materially false and misleading is inadequate to plead a Section 18 claim against an auditor. *Deephaven*, 454 F.3d at 1175. In *Kelley*, a decision affirmed by the Court of Appeals for the Ninth Circuit, the plaintiffs brought a Section 18 claim against an auditor, PricewaterhouseCoopers, for its role as the outside auditor of Rambus, Inc., an entity that allegedly engaged in and concealed and extensive pattern of options backdating. *Kelley*, 2008 U.S. Dist. LEXIS 100319, *3 (*aff'd by Kelly v. Rambus, Inc.*, 384 Fed. Appx. 570 (9th Cir. 2010)). Relying on a theory that the auditor lacked a reasonable basis for its audit opinion, the plaintiffs in *Kelley* alleged "(1) that [auditor] PwC's audit opinions with respect to Rambus's financial statements and internal controls were false and misleading, and (2) that PwC is responsible for errors in Rambus's financial statements." *Id.* at *40-41. The plaintiffs argued that the auditor defendant had no reasonable basis for its opinion because the auditor did not recognize any material weakness in internal controls. *Id*. The plaintiffs pointed to a series of alleged GAAS and GAAP violations to support its claim. *Id*. These allegations, virtually identical to those pled in Plaintiffs' Complaint, were deemed insufficient. *Id*. at *42.

The Tenth Circuit's decision in *Deephaven* is particularly helpful in understanding the roles of auditors and the subsequent pleading requirements for a Section 18 claim. *Deephaven Private Placement Trading Ltd., v. Grant Thornton & Co.*, 454 F.3d 1168, 1174 (10th Cir. 2006). In Deephaven, the court examined the actual audit report submitted by the defendant auditor and noted that it can be separated into three sections, an introduction, a scope paragraph and finally, a conclusion paragraph setting forth the auditor's opinion. As the *Deephaven* court explained,

> The opinion paragraph, as the term suggests, is stated as an opinion of Grant Thornton rather than a statement of absolute fact or a guarantee. Moreover, the phrase "in our opinion" indicates that there may be some information risk associated with the 1999 financial

> statements, even though the statements have been audited.
>
> Investors conveniently attempt to read Grant Thornton's opinion that the 1999 financial statements present Daw's financial position fairly in conformity with GAAP as an isolated statement of material fact. That is, Investors attempt to characterize it as a categorical statement separate from its stated basis. The audit report does not, however, allow for such a cropped reading. To the contrary, the audit report must be read in its entirety. When so read, it is readily apparent that the introductory paragraph tethers Grant Thornton's opinion to its stated basis: Grant Thornton's factual assertion that its audits were performed in accordance with GAAS and therefore provide an adequate basis for its opinion. It is against this backdrop that we must assess whether the SAC satisfies the PSLRA's statement-reason-and-basis requirements.

The *Deephaven* court then explained that:

> …Because Grant Thornton's opinion is couched in terms of a stated basis, a claim that the former is false or misleading must necessarily specify the reason or reasons why in terms of the latter. Such a showing would, for example, specify how (1) Grant Thornton did not actually form its opinion regarding the 1999 financial statements based on its audits; or (2) it did not have a reasonable basis for its opinion because it did not plan and perform its audits of the 1999 financial statements in accordance with GAAS.

The allegations here are identical to those in the *Deephaven* case. Just as in *Deephaven*, nowhere in the Complaint are there any allegations that Hansen misstated its opinion. Furthermore, Plaintiffs have not alleged facts that Hansen did not have a reasonable basis for its audit opinion. Although Plaintiffs inserts boilerplate language that Hansen did not conduct its audit in accordance with PCAOB standards (Complaint ¶ 47), it does not allege facts, which if true, would cause one to conclude that Hansen had no reasonable basis for its opinion. Absent the requisite factual allegations, the Complaint is deficient. Allegations concerning the alleged falsity of the underlying financial statements are insufficient. Therefore, Plaintiffs' Section 18 claims should be dismissed.

**D. The Complaint Fails to Set Forth Facts Supporting Actual Reliance**

A Section 18 claimant must allege *actual* reliance on the relevant misstatements or omissions

in purchasing or selling a security, and may not allege constructive or presumed reliance. *Howard v. Everex Sys., Inc.*, 228 F.3d 1057, 1065 (9th Cir. 2000); *Kelley*, 2008 U.S. Dist. LEXIS 100319, *48. The standard for pleading actual reliance in a Section 18 claim is demanding. "Conclusory assertions of reliance are insufficient, and plaintiffs must plead facts probative of their actual reliance on any specific false statement in the filings at issue." *Kelley*, 2008 U.S. Dist. LEXIS 100319, *48 (*citing In re Suprema Specialties, Inc. Sec. Litig.*, 438 F.3d 256, 284 (3d Cir. 2006)). "Statements to effect that plaintiffs 'received, reviewed, actually read, and relied upon' certain financial documents, or 'actually read and relied upon [them] in making their decisions to invest in [company] common stock,' are inadequate." *Id.* Section 18 plaintiffs must affirmatively allege that such reliance occurred "when he bought or sold the security at issue" and provide the accompanying factual allegations. *Id.* (*citing Ravenswood Inv. Co. v. Bishop Capital Corp.*, 374 F. Supp. 2d 1055, 1064 (D. Wy. 2005)).

In each of the Section 18 claims, Plaintiffs allege that they "read and relied upon" the financial statements contained in ShengdaTech's 2007 10-K/A and the 2007 Audit Opinion. Complaint ¶¶ 94, 103, 112. Plaintiffs provide no factual allegations regarding what was relied upon in the audit opinions, how those opinions were false and how their reliance led them to the purchase. Plaintiffs also fail to affirmatively allege that such reliance occurred when the Notes was bought or sold. Plaintiffs merely rely on the improper conclusory assertion that they "read and relied upon" the 2007 Audit Opinion. As has been held previously, boilerplate allegations of reliance will not be sufficient to state a Section 18 claim.

**E. The Facts Alleged Do Not Support Justifiable Reliance on The Hansen Audit Report**

As discussed in the context of the statute of limitations discussion regarding inquiry notice, the KPMG Internal Controls report identified material weaknesses in the Company's internal controls. Plaintiffs' allege that this report raised "serious questions about the rigor Hansen applied in

auditing the Company's 2007 Financial Statements and the basis upon which it opined that such statements presented the Company's financial position and the results of its operations in accordance with GAAP and that the Company had effective internal controls over its financial reporting." After KPMG issued its report, according to Plaintiffs, the Hansen audit report was so seriously questioned that no reasonable investor would have or should have reasonably relied on the audit report in making its investment decisions. Because the 6.5% Notes were not offered until 2010, over a year after KPMG issued its Internal Controls report, the Complaint makes clear that there could be no reasonable reliance on the Hansen report in making a decision at that time to invest in the Company's notes. Absent reasonable reliance, the claim should fail.

**F. Plaintiffs' Allegations of Loss Causation are Insufficient as Against Hansen**

To allege loss causation, a plaintiff must "demonstrate a causal connection between the deceptive acts that form the basis for the claim…and the injury suffered by the plaintiff." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055-56 (9th Cir. 2008); *see* 15 U.S.C. § 78u-4(b)(4) (in private actions under this title, plaintiff must prove loss causation--"that the act or omission of the defendant alleged to violate this title caused the loss for which the plaintiff seeks to recover damages"). Plaintiffs must have set forth particular allegations as to "what the relevant economic loss might be," and "what the causal connection might be" between the fraud alleged and the economic losses actually suffered. *Dura Pharmaceuticals, Inc. v. Broudo*, 544 U.S. 336, 342, 347 (2005). The misrepresentation "need not be the sole reason for the decline in value of the securities, but it must be a 'substantial cause.'" *In re Gilead*, 536 F.3d at 1055-56. While a court assumes that the facts in a complaint are true, it is not required to indulge "unwarranted inferences in order save a complaint from dismissal." *In re Syntex Corp. Sec. Litig.*, 95 F.3d 922, 926 (9th Cir. 1996) ("[C]onclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss for failure to state a claim.").

Here, Plaintiffs are asking the Court to infer that the drop in price after the March 15, 2011 disclosure must mean that the 2007 Audit Report, filed three years before the disclosure, caused the fall in value of the Notes. Nothing in the March 15, 2011 disclosure implicated the Hansen audit report from 2008 in any way. The disclosure, as alleged in the Complaint, discussed the fact that the Company established a Special Committee to investigate "potentially serious discrepancies" uncovered by KPMG in conducting its 2010 audit. Nothing therein called into question Hansen's audit report from years prior. Thus, no drop in securities price triggered by this announcement could be logically or legally traced back to any representation by Hansen.

Similarly, the April 29, 2011 8-k filed by the Company did not mention anything having to do with Hansen. In fact, the filing and related press release identified ongoing issues concerning cooperation of management and late filings as the cause of the stock's delisting. Again, no drop in securities price attributable to this filing or press release could relate in any way to anything Hansen did or said in connection with its 2007 year audit.

The May 5, 2011 disclosures are also unconnected to anything relating to Hansen's audit. Those disclosures detail management's continuing refusal to cooperate with the investigation, KPMG's resignation as auditors and KPMG's concerns about the company's 2010 financial statements. There is no mention of the Hansen audit report or the time period covered by that audit report. KPMG also withdrew its prior audit opinions because it found that management's conduct in 2011 caused KPMG to doubt the veracity of prior representations of management made previously. Thus, KPMG withdrew all of its audit opinions for ShengdaTech. Again, nothing in this or any of the disclosures in 2011 or 2012 mentioned anything about Hansen or its audit period.

Plaintiffs must allege that the relevant corrective disclosure disclosed something about a defendant causing a loss. At minimum, Plaintiffs have clearly failed to allege that the 2007 Audit Report was a "substantial cause" for the decline in value of the services. The disclosures occurred

several years and multiple audit opinions after the 2007 Audit Report and Plaintiffs do not allege that the corrective disclosures specifically corrected any misstatement by Hansen regarding the Company's financial condition in 2007.

The Supreme Court has found that the loss causation requirement is designed "not to provide investors with broad insurance against market losses, but to protect them against those losses that misrepresentations actually cause." *Dura Pharms*., 544 U.S. at 345. It is contrary to the objectives of federal securities laws to allow Plaintiffs to allege causation as to everyone ever related to ShengdaTech.

As Plaintiffs fail to allege loss causation, their Section 18 claims must be dismissed.

## POINT II

## PLAINTIFFS' STATE LAW CLAIMS MUST BE DISMISSED

### *A. The Court Should Decline to Exercise Supplemental Jurisdiction*

Plaintiffs assert subject matter jurisdiction based on a federal question, not diversity. Complaint ¶ 15. If the Court dismisses the federal claim against Hansen, as it should for the reasons set forth above, the Court should follow routine practice in such cases and decline to exercise supplemental jurisdiction over the state law claims. *See, e.g.*, 28 U.S.C. § 1367(c)(3). However, to the extent that this Court is inclined to assess the State Law claims, it will find that each of the State Law claims lack merit.

### B. Plaintiffs Lack Standing to Bring State Law Claims

Plaintiffs attempt to bring California and Connecticut claims against Hansen on behalf of the purchasers in those states. However, Plaintiffs plead no information regarding these purchasers. *See* Complaint ¶¶ 161 (California); 1187 (Connecticut). The Complaint contains no facts regarding the residence of those purchasers and no facts regarding the purchasers whatsoever. The Complaint does not even have any information regarding the names of the purported Plaintiffs or when they

purchased the securities at issue. *See* Complaint ¶¶ 17-24. Absent factual allegations concerning the identity of the purported Plaintiffs as residents of certain states, the Complaint lacks allegations establishing the right to pursue those claims. Moreover, Defendants have a right to know who is suing them, especially when state claims are brought pursuant to those parties' purported residences.

### ***C. The Common Law Negligent Misrepresentation Claims against Hansen Should Be Dismissed***

*i. Choice of Law*

Plaintiffs' Common Law Negligent Misrepresentation claim should be based on Utah law. The Complaint is silent as to what state's common law should apply to this claim, however there are two clear possibilities: Nevada (the venue) or Utah (the state in which Hansen conducted its audits). A federal court in conducting a choice of law analysis utilizes the forum state's choice of law rules. Nevada has adopted the Restatement (Second) of Conflict of Laws as the relevant authority for choice-of-law jurisprudence in tort cases and the most significant relationship test of section 6 of the Second Restatement governs a choice-of-law analysis, unless another, more specific section applies. *Dictor v. Creative Mgmt. Servs., LLC*, 223 P.3d 332, 334 (2010). When there is no directive on choice of law, the relevant factors include: (a) the needs of the interstate and international systems; (b) the relevant policies of the forum; (c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue; (d) the protection of justified expectations; (e) the basic policies underlying the particular field of law; (f) certainty, predictability and uniformity of result; and (g) ease in the determination and application of the law to be applied. *Id.* The Supreme Court of Nevada has determined that additional comments in the Second Restatement support the position that the local law of the state where the parties are domiciled, rather than the local law of the state of conduct and injury, may be applied to determine whether one party is immune from tort liability. *Id*. at 336.

The Hansen audit was conducted primarily in Utah. Hansen's accountants are regulated by the State of Utah. Hansen's accountants have to maintain continuing professional education requirements in accordance with the rules set forth by the State of Utah. As Utah based accountants, they would expect that Utah law would apply to their conduct. Because the claim arises from conduct that occurred, for the most part, in Utah, Utah law should apply. Moreover, it is in the best interests of the state of Utah to regulate the professionals licensed to practice in their state.

The only connection to Nevada is that ShengdaTech, a non-party, is a Nevada Corporation and that Plaintiffs chose this venue. At no time did the Hansen accountants contemplate that their conduct would be governed by Nevada law. Indeed, if an accountant had to be concerned about being sued under any state's law simply because it conducted an audit, the cost to the audit community to ensure compliance would be prohibitive.

Therefore, Utah state law should apply to the common claim for negligent misrepresentation.

*ii. Plaintiff Fails to Allege Privity*

In Utah, to prevail under a claim for negligent misrepresentation, a plaintiff must demonstrate the existence of a duty running between the parties. *Smith v. Frandsen*, 94 F.3d 919, 923 (Utah 2004). *Smith v. Frandsen*, 94 F.3d 919, 923 (Utah 2004); *Aclys Int'l v. Equifax*, 438 Fed. Appx. 689 (10th Cir. 2011). The question of whether a duty exists is a question of law and involves the examination of the legal relationships between the parties. *Davencourt at Pilgrims Landing Homeowners, Ass'n*, 221 P.3d 234, 244 (Utah 2009).

In 2000, Utah enacted the Accountancy Practice Act, which provides:

> A licensee, a CPA firm registered under this chapter, and any employee, partner, member, officer, or shareholder of a licensee or CPA firm *are not liable to persons with whom they are not in privity of contract* for civil damages resulting from acts, omissions, decisions, or other conduct in connection with professional services performed by that person, except for:
>
> (1) acts, omissions, decisions, or conduct that constitute fraud

> or intentional mispresentations; or
>
> (2) other acts, omissions, decisions, or conduct, if the person performing the professional services:
>
> > (a) knew that a *primary intent* of the client was for the professional services to benefit or influence the *particular* person seeking to establish liability; and
> >
> > (b) identified in writing to the client that the professional services performed on behalf of the client were intended to be relied upon by the particular person seeking to establish liability.

Utah Code Ann. § 58-26a-602 (2012) (emphasis added); *see also In re No. 1 International, Inc.*, 2010 U.S. Dist. LEXIS 84323 (D. Utah 2010).

Plaintiffs do not allege that they was in privity of contract with Hansen. It is clear that neither exception applies. First, Plaintiffs have brought a negligent misrepresentation claim, which clearly does not constitute fraud or intentional misrepresentations. Second, with respect to the second exception, Plaintiffs have not, and cannot, allege that (a) ShengdaTech's *primary* intent was for the professional services to benefit or influence purchasers of the notes and (b) Hansen "identified in writing" that the 2007 Audit Opinion was intended to be relied upon by specific purchasers of future notes. As neither the Plaintiffs nor the purchasers are in privity of contract with Hansen, the negligent misrepresentation claims are improper.

Plaintiffs have apparently drafted its Complaint around the "foreseeability" standard that has been superseded by the more stringent "contractual privity" standard set forth in the Accountancy Practice Act. Regardless, even under that standard, Plaintiffs were not foreseeable. Prior to the enactment of the Act, Utah courts found that accountants may only be held liable for negligent misrepresentation to its client and reasonably foreseeable third parties and is not liable an "unlimited class of third parties, i.e., purchasers of client's stock." *Milliner v. Elmer Fox & Co.*, 529 P.2d 806, 808 (Utah 1974). "A future purchaser of shares of stock of a corporation, however, belongs to an

unlimited class of equity holders who could not be reasonably foreseen as a third party who would be expected to rely on a financial statement prepared by an accountant for the corporation." *Milliner*, 529 P.2d at 808.

Here, Plaintiffs merely allege that the purchasers were foreseeable because the auditors knew their audit opinions "would be disseminated to a limited group of *potential* purchasers." Complaint ¶ 122 (emphasis added). Utah courts, prior to the enactment of the Accountancy Practice Act, were clear that purchasers, even if foreseeable as a "group," are nevertheless an unlimited field and that accountants do not owe a duty to such an unlimited group. *Id.* The purchasers of the Notes were *potential* purchasers and the exact kind of future purchaser that belongs to an unlimited class. Regardless, this standard has been superseded by the more stringent requirement of contractual privity in the Accountancy Practice Act. As Plaintiffs do not allege contractual privity, their fifth and sixth Claims for Relief must be dismissed.

Additionally, and separately requiring dismissal, the negligent misrepresentation claim is premised on an allegation of reasonable reliance by the Plaintiffs. As discussed above, once the KPMG Internal Controls Report was filed which, according to Plaintiffs, raised "serious questions about the rigor Hansen applied auditing the Company's financial statements," no future investor can legitimately claim to have reasonably relied upon the Hansen report. Therefore, any purchaser who purchased notes after April 1, 2009 (the date of the KPMG report), can not state a claim for negligent misrepresentation. Because the 6.5% Notes were not offered until late 2010, any negligent misrepresentation claim brought by purchasers of those notes is not supported by the facts alleged and should be dismissed.

### ***D. The Claim under Section 25504.2 California Corporations Code Should Be Dismissed***

Plaintiff alleges that Hansen is secondarily liable as an "expert" under Cal. Corp. Code § 25504.2 ShengaTech, Inc.'s alleged violations under Cal. Corp. Code § 25401 related to the 6.5%

Notes. Complaint ¶ 162. Section 25501 provides a private cause of action for the purchaser of the security against a primary actor. Cal. Corp. Code § 25501. Section 25504.2 provides that particular types of experts who, "pursuant to the rule of the commissioner has given written consent to be and has been named in any prospectus or offering circular distributed in connection with the offer or sale of securities as having prepared or certified in such capacity" may be jointly and severally liable to persons liable under Section 25501 whom the secondary actors control. Cal. Corp. Code § 25501; *In re ZZZZ Best Securities Litigation*, 1990 U.S. Dist. LEXIS 11867, *44 (C.D. Cal. 1990).

Such experts are only liable if two requirements are satisfied. First, the "part of such document so prepared or certified or the report or valuation so distributed or referred to includes an untrue statement of a material fact or omits to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading." Cal. Corp. Code § 25504.2(a)(1). Second, the "person asserting such liability must have acquired a security described in such document in reliance on such untrue statement or in reliance on such part of the document or on such report or valuation without notice of such omission." Cal. Corp. Code § 25504.2(a)(2).

*i. Plaintiffs' Claim under 25504.2 is Time-Barred*

A claim under Section 25504.2 of the California Corporations Code must be brought "within one year after the discovery of the facts constituting the violation, or after such discovery should have been made by the exercise of reasonable diligence." Cal. Corp. Code § 25506.1. Like the Section 18 claim above, this claim is time-barred. As Plaintiffs state, the KPMG Internal Controls report "raise[d] serious questions about the rigor Hansen applied…."

In addition to the one year discovery rule, the claim is time-barred under the three year statute of repose. Under Section 25504.2, "[i]n no event shall any such action be brought more than three years after the act or transaction constituting the violation." Cal. Corp. Code § 25506.1. The

"act" or "transaction" constituting the alleged aiding and abetting was the original 2007 Audit Opinion, filed on March 14, 2008, four years before the operate date of filing for statute of limitations purposes.

As such, Plaintiffs Ninth Claim for Relief must be dismissed.

*ii. Plaintiffs Fail to Allege the Requisite "Written Consent"*

Section 25504.2 expressly provides that the expert provide written consent to be named in an offering. "The importance of the written consent element in pleading liability under § 25504.2 cannot be treated lightly" and is a "vital factor in § 25504.2 liability." *In re ZZZZ Best*, 1990 U.S. Dist. LEXIS at *58 (C.D. Cal. 1990). "The basis for liability under Section 25504.2 is that the [expert] has, pursuant to the Commissioner's rules, given written consent to be named." *ZZZZ Best*, 1990 U.S. Dist. LEXIS 11867 at *56-57.

In *ZZZZ Best*, the plaintiffs alleged that the auditor provided "written consent to use of its audit report" in the Registration Statement and Prospectuses and that the report was included "with the consent of [the auditor]." *ZZZZ Best*, 1990 U.S. Dist. LEXIS 11867 at *55. There, the Court found that such language fails to allege the requisite written consent. *Id.* at *57. Moreover, the Court found consent cannot be implied from the fact that consent is required for a report to be included in a registration statement. *Id.* at *58. The Court also found that the written consent requirement was not met by the fact that the auditor's reports had been filed with the SEC. *Id.*

Here, Plaintiffs merely note that Hansen "consented to the inclusion (or incorporation by reference) of its audit opinion" and nothing more. *See e.g.*, Complaint ¶¶ 35, 37, 47, 51, 56, 60, 165. Plaintiffs provide no information regarding the consent itself or whether the consent was included in the offering and utilize almost the exact language that was insufficient in *ZZZZ Best*. Therefore, this claim should be dismissed.

. . .

*iii. Plaintiffs Fail to Allege Reliance on an Untrue Statement*

Plaintiffs fail to allege an untrue statement of material fact or that Hansen omitted to state a material fact under Cal. Corp. Code 25504.2(a)(1). Plaintiffs allege that the 6.5% Offering Memorandum contained untrue statements such as the 2007 Financial Statements and Hansen's 2007 Audit Opinion. Complaint ¶ 164. Plaintiffs also allege that Hansen failed to "disclose and/or correct false and misleading statements in the 2007 Financial Statements contained in the 6.5% Notes Offering Memorandum." Complaint ¶ 166. As noted in the argument to dismiss the Section 18 claim, *supra*, "auditors do not 'certify' a company's financial statements in the sense that they 'guarantee' or 'insure' them" and may not be liable for misstatements in the company's financial statements that were certified by the auditor and allegations of GAAP violations are insufficient. *See Kelley*, 2008 U.S. Dist. 100319.

Moreover, as discussed above, the facts alleged in the Complaint undercut any argument for justifiable reliance by purchasers of the Notes after the KPMG Internal Controls report was filed with the SEC.

As Plaintiffs' claim against Hansen under Section 25504.2 of the Cal. Corp. Code § 25504.2 is time-barred and inadequately pleads written consent, an untrue statement and reliance, the claim should be dismissed.

***E. The Claim under Section 36b-29 of the Connecticut Securities Law and Business Opportunity Investment Act Should Be Dismissed***

Section 36b-29 of the Connecticut Uniform Securities Law attaches liability to any person who "offers or sells or materially assists any person who offers or sells a security by means of any untrue statement of a material fact or any omission to state a material fact necessary in order to make the statements made." Conn. Gen. Stat. § 36b-29(a).

*i. Plaintiffs' Claim under Section 36b-29 is Time-barred*

Under Conn. Gen. Stat. § 36b-29, no person may bring an action "more than two years after the date of the contract of sale or of the contract for investment advisory services, except that with respect to actions arising out of intentional misrepresentation or fraud in the purchase or sale of securities, no person may bring an action more than two years from the date when the misrepresentation or fraud is discovered or in the exercise of reasonable care should have been discovered, except that no such action may be brought more than five years from the date of such misrepresentation or fraud. Conn. Gen. Stat. § 36b-29(f).

As Plaintiffs are alleging that Hansen materially assisted ShengdaTech's fraud in the sale of securities (or Notes). Again, Plaintiffs had inquiry notice of a potential claim on April 1, 2009, almost three years before the statute of limitations was tolled on March 15, 2012. As such, the statute of limitations under Section 36b-29 ran on April 1, 2011, almost a year prior to the operative filing date.

To the extent that Plaintiffs will argue that this is not a claim based on fraud, then they would have only 2 years from their purchase of the securities at issue to bring suit. Or put conversely, any purchase made more than two years prior to March 14, 2012 (i.e. March 14, 2010) is time barred.

*ii. Plaintiffs Fail to Allege "Material Assistance"*

To be liable under Section 36b-29, Plaintiffs must allege that Hansen "materially assisted" ShengdaTech's alleged fraud. In 1997, the Connecticut Supreme Court clarified the relevant standard for what constitutes "material assistance" under the statute. *Conn. Nat'l Bank v. Giacomi*, 242 Conn. 17, 47 (1997); *see also Farlander v. Mitchell*, 2007 Conn. Super. LEXIS 1721, *9 (Conn. Sup. Ct. 2007). The Court found that (under the Former Section 36-498(a)(2)):

In order for conduct to violate this section as "material assistance," to which we refer

> as aiding and abetting, it must also be proven that the aider or abettor materially assisted the primary violator: (1) in the offer or sale; and (2) in the violation by which the primary violator accomplished the offer or sale. In addition to the foregoing elements of proof, the buyer must also meet a burden of production concerning the issue of whether the aider and abettor knew or should have known of the untruth or omission.

The *Giacomi* court also quotes the U.S. Supreme Court in *Kungys v. United States* for the proposition that "aid is material if it has a natural tendency to influence, or was capable of influencing, the decision of the purchaser." *Giacomi*, 242 Conn. 17, 53. To support the burden shifting above, the Connecticut Supreme Court cited what they found to be a "desire on the part of the legislature to provide some additional protection to those persons alleged to be aiders and abettors, namely, that the plaintiff will have to produce some evidence relevant to the aider and abettor's knowledge of the untruth or omission before that issue gets to the fact finder." *Id.* at fn. 34. "A simple pleading of knowledge will not suffice." *Id.*

Plaintiffs allege that "Hansen and KPMG materially assisted ShengdaTech in selling the 6.5% Notes." Complaint ¶ 189. To support their allegation of material assistance, Plaintiffs note that the auditors' role as outside auditors assumed "special importance" because "ShengdaTech accessed the United States capital markets via a 'reverse merger' transaction, a process that allowed ShengdaTech to sell its securities publicly without undergoing the due diligence typically performed by underwriters in advance of an initial public stock offering…". Complaint ¶ 189. One Court recently found the mere fact that a Chinese company entered the U.S. market via a "reverse merger" does not establish that it was "industry standard to view reverse mergers, particularly those involving China-based operations, with skepticism from 2007-2009." *In re Advanced Battery Technologies*, 2012 U.S. Dist. LEXIS 123757, *58 (S.D.N.Y. Aug. 29, 2012). Moreover, such "special importance" does not imply that an auditor "materially assisted" in a fraud. Plaintiffs assert no facts of aiding and abetting a fraud beyond the fact that Hansen had once prepared an audit report that was included in an offering three years in the future.

Plaintiffs also note, in a conclusory assertion that Hansen "should have known" that the Company's financial statements were materially false and misleading. Complaint ¶ 190. Such a bare and unsupported allegation is insufficient. *Giacomi*, 242 Conn. at 47, fn. 34 (burden is on plaintiff to allege knowledge and a simple pleading of knowledge will not suffice).

Finally, as discussed above, the facts alleged in the Complaint undercut any argument for justifiable reliance by purchasers of the Notes after the KPMG Internal Controls report was filed with the SEC.

As such, Plaintiffs' twelfth Claim for Relief must be dismissed as to Hansen.

## CONCLUSION

For all the foregoing reasons, defendant Hansen respectfully requests the Court to dismiss all of the claims as against Hansen in their entirety, and with prejudice.

Dated: September 6, 2012

Respectfully submitted,
WILSON, ELSER, MOSKOWITZ,
EDELMAN & DICKER LLP

By: */s/ David S. Kahn*
David S. Kahn
300 South 4th Street
Las Vegas, NV 89101
Attorney for Hansen, Barnett &
Maxwell, P.C.