Andrew P. Gordon
Nevada Bar No. 3421
MCDONALD CARANO WILSON LLP
2300 West Sahara Avenue, Suite 1000
Las Vegas, NV 89102
Telephone: (702) 873-4100
Facsimile: (702) 873-9966
agordon@mcdonaldcarano.com

William R. Maguire (*admitted pro hac vice*)
Kenneth M. Katz (*admitted pro hac vice*)
Yoshinori M. Sasao (*admitted pro hac vice*)
HUGHES HUBBARD & REED LLP
One Battery Park Plaza
New York, NY 10004-1482
Telephone: (212) 837-6000
Facsimile: (212) 422-4726
maguire@hugheshubbard.com
katzk@hugheshubbard.com
sasao@hugheshubbard.com

*Attorneys for Defendant*
*KPMG International Cooperative*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

OAKTREE CAPITAL MANAGEMENT, L.P., on behalf of its managed funds and accounts; LAZARD ASSET MANAGEMENT LLC, on behalf of its managed funds and accounts; ANGELO, GORDON & CO., L.P.; ZAZOVE ASSOCIATES LLC, on behalf of its managed funds and accounts; CNH PARTNERS, LLC; ADVENT CAPITAL MANAGEMENT, LLC; AQR CAPITAL MANAGEMENT, LLC; HFR CA LAZARD RATHMORE MASTER TRUST, and DELAWARE PUBLIC EMPLOYEES' RETIREMENT SYSTEM

Plaintiffs,

vs.

KPMG; KPMG INTERNATIONAL COOPERATIVE; KPMG LLP; HANSEN, BARNETT & MAXWELL, P.C.; and MORGAN STANLEY & CO.,

Defendants.

Case No.: 2:12-cv-00956-JCM-(GWF)

**KPMG INTERNATIONAL COOPERATIVE'S MOTION TO DISMISS THE CONSOLIDATED COMPLAINT**

Defendant KPMG International Cooperative ("KPMG International") respectfully submits this Motion to Dismiss the claims against KPMG International in the Consolidated Complaint (the "Amended Complaint"), filed November 21, 2012, pursuant

to Federal Rule of Civil Procedure 12(b)(6), for failure to state a claim. The Amended Complaint replaces, amends, and consolidates complaints in two previously separate actions, *Oaktree Capital Management, L.P. v. KPMG*, No. 2:12-cv-00956-JCM-(GWF) (D. Nev. June 6, 2012) and *Delaware Public Employees' Retirement System v. KPMG*, No. 2:12-cv-00961-JCM-(GWF) (D. Nev. June 6, 2012) (together, the "Original Complaints"), under the former action's case number.

**MEMORANDUM OF POINTS AND AUTHORITIES**

**PRELIMINARY STATEMENT**

Plaintiffs concede – as they must – that their Original Complaints were defective.[1] Their second attempt offers nothing to cure the defects. Like in the Original Complaints, the Amended Complaint does not offer a single factual allegation connecting KPMG International to any alleged wrongdoing. Nor does it plead any facts showing that KPMG International controlled or directed any such wrongdoing.

The Amended Complaint alleges that plaintiffs purchased notes from ShengdaTech, Inc. ("ShengdaTech" or the "Company") after ShengdaTech issued fraudulent financial statements. (Am. Compl. ¶¶ 2-3.) The Amended Complaint seeks damages from five defendants: the company that ShengdaTech retained as its underwriter, Morgan Stanley & Co.; the firms that ShengdaTech retained as its auditors, Hansen, Barnett & Maxwell, P.C. ("Hansen"), and KPMG, a Hong Kong Partnership ("KPMG Hong Kong"); and two additional defendants that are not alleged to have had any engagement with ShengdaTech: a United States firm, KPMG LLP ("KPMG USA"), and a Swiss cooperative, KPMG International. There is no allegation that ShengdaTech was ever a client of KPMG International or, indeed, that the cooperative has any clients.

---

[1] *See* Stipulation and Order Concerning Consolidation of Cases at 2, *Oaktree Capital Mgmt., L.P. v. KPMG*, No. 2:12-cv-00956-JCM-(GWF) (D. Nev. Nov. 13, 2012), ECF No. 115 (the "proposed consolidated complaint . . . seeks to address certain arguments made by Defendants in their currently pending motions to dismiss").

In fact, the pleading expressly concedes that KPMG International "does not provide audit services to clients." (*Id.* ¶ 28.)

The Amended Complaint claims that KPMG International should be held vicariously liable for the alleged conduct of KPMG Hong Kong in performing audits for ShengdaTech, but the pleading fails to allege that KPMG International performed, participated in, or supervised the ShengdaTech audits or, indeed, any audit by KPMG Hong Kong. Nor does the Amended Complaint plead facts to show that KPMG International controlled KPMG Hong Kong in connection with the ShengdaTech audits or otherwise.

All that the Amended Complaint offers are bare recitals of the elements of a claim that "KPMG International and KPMG USA were controlling persons of KPMG [Hong Kong]." (*Id.* ¶ 166.) Conclusory assertions that KPMG International was a "controlling person" or that it "had the power to influence and control, and did influence and control, directly or indirectly, the decision-making of its member firms, including KPMG [Hong Kong]" (*id.*), fail to state a claim. As the Supreme Court has made clear, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Because the Amended Complaint fails to plead facts to support a claim that KPMG International did anything wrong or controlled anyone who allegedly did anything wrong, the pleading should be dismissed as against KPMG International.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

## BACKGROUND[2]

**ShengdaTech**

ShengdaTech was a Nevada corporation with its principal place of business in China. (Am. Compl. ¶ 34.) In March 2006, ShengdaTech was created through a "reverse merger" with an existing U.S. shell company. (*Id.* ¶ 37.) ShengdaTech began trading on the NASDAQ in early 2007. (*Id.*)

Plaintiffs invested in ShengdaTech's debt securities (or "Notes") in two private offerings and the secondary market. (*Id.* ¶¶ 3, 18-26.) In 2008, in connection with the first offering, the Company provided materials that included ShengdaTech's 2007 financial statements, which were audited by Defendant Hansen. (*Id.* ¶¶ 32, 39.) In 2010, in connection with the second offering, the Company provided materials that included ShengdaTech's 2007, 2008, and 2009 financial statements. (*Id.* ¶¶ 40-41.) KPMG Hong Kong audited ShengdaTech's 2008 and 2009 financial statements. (*Id.* ¶ 41.) Holders of the Notes had the option to convert the Notes into shares of ShengdaTech common stock. (*Id.* ¶¶ 39-40.)

On March 15, 2011, ShengdaTech announced that "its board of directors had appointed a Special Committee to investigate 'potentially serious discrepancies and unexplained issues relating to the Company's and its subsidiaries' financial records identified by KPMG [Hong Kong]' in the course of KPMG [Hong Kong]'s examination of the Company's 2010 Financial Statements." (*Id.* ¶ 46; *see also id.* ¶ 29.) Following this announcement, the NASDAQ suspended trading in the Company's shares, and on April 20, 2011, the NASDAQ delisted the Company's shares. (*Id.* ¶¶ 47-48.) On April 19, 2011, KPMG Hong Kong informed the Company that management had not taken

---

[2] For purposes of this Motion, KPMG International assumes, without conceding, the truth of factual allegations in the Amended Complaint. Conclusory statements in the Amended Complaint, however, are "not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679-81.

timely and appropriate remedial action with respect to the discrepancies and issues it had identified. (*Id.* ¶¶ 29, 48.) On April 29, 2011, KPMG Hong Kong resigned as ShengdaTech's auditor and advised that no reliance should be placed on its previously issued reports. (*Id.* ¶¶ 29, 51-52.) ShengdaTech has since defaulted on the Notes and filed for bankruptcy protection. (*Id.* ¶¶ 54-55, 57.)

**Plaintiffs**

The named plaintiffs include eight investment advisory firms or asset management companies and the Delaware Public Employees' Retirement System. (*Id.* ¶¶ 18-26.) Seven of nine named plaintiffs bring the action on behalf of certain funds that they manage and on behalf of certain of their clients. (*Id.* ¶¶ 18-24.) The remaining two named plaintiffs – HFR CA Lazard Rathmore Master Trust and the Delaware Public Employees' Retirement System – are managed by two of the other named plaintiffs. (*Id.* ¶¶ 25-26.)

**KPMG International**

The Amended Complaint admits that KPMG International did not conduct any of the audits in question or issue any report or other statement about ShengdaTech. (*See, e.g., id.* ¶¶ 28-29.) As described in the Amended Complaint, KPMG International is a "Swiss entity" that "does not provide audit services to clients," but rather "coordinates the global network of professional KPMG-affiliate firms" that provide audit, tax, and advisory services. (*Id.* ¶ 28.) Each KPMG member firm is separate and legally distinct. (*See id.* ¶¶ 29 (KPMG Hong Kong is a "Hong Kong partnership"), 30 (KPMG USA "is a United States-based audit, tax and advisory services firm").)

The Amended Complaint does not contain a single factual allegation that KPMG International supervised KPMG Hong Kong's audits of ShengdaTech or any of KPMG Hong Kong's audits. Instead, the Amended Complaint simply makes the conclusory allegations that KPMG International "dominated and controlled" KPMG Hong Kong in connection with that firm's audits of ShengdaTech, and KPMG International "facilitated communication between KPMG [Hong Kong] and KPMG USA concerning the audits."

(*See id*. ¶¶ 6, 28.) The Amended Complaint also contains a handful of general statements concerning KPMG International and the KPMG network of professional firms, apparently drawn from KPMG International's website. The Amended Complaint alleges that the KPMG member firms "commit to abide by a common set of KPMG values that are established by the Global Board, which is KPMG International's principal oversight and governance body. The Global Board Council, which includes representation of 54 member firms, focuses on high-level governance tasks and facilitates discussion with and between member firms." (*Id*. ¶ 28); *see also Structure*, KPMG, http://www.kpmg.com/global/en/about/organization/structure/ (last visited Jan. 2, 2013). Consistent with these "high-level" functions, the Amended Complaint does not allege a single act that KPMG International performed in connection with ShengdaTech or even KPMG Hong Kong. (*See* Am. Compl. ¶ 28.)

The Amended Complaint contains the equally conclusory allegations that "KPMG [Hong Kong]'s affiliation with KPMG International added to KPMG [Hong Kong]'s reputational prestige" (*id*. ¶ 6); that KPMG Hong Kong's affiliation with KPMG International helped it secure retention as ShengdaTech's auditor (*id*.); and that "KPMG International and its member and network firms market themselves worldwide under the brand name 'KPMG'" (*id*. ¶ 28). The Amended Complaint does not – and cannot – make any connection between these allegations and its legal theories of control and agency. Indeed, on the same webpage from which the Amended Complaint draws the allegations noted above, KPMG International explains that "[e]ach KPMG member firm takes responsibility for its management and the quality of its work," and that "[n]o member firm has any authority to obligate or bind KPMG International or any other member firm vis-à-vis third parties, nor does KPMG International have any such authority to obligate or bind any member firm." *Structure*, KPMG, http://www.kpmg.com/global/en/about/organization/structure/ (last visited Jan. 2, 2013).

Based on these allegations, the Amended Complaint alleges that KPMG International is liable as a secondary actor under Section 20(a) of the Securities Exchange

Act of 1934 ("Exchange Act") (Fourth Claim For Relief), the common law doctrine of *respondeat superior* (Seventh Claim For Relief), and Section 36b-29(c) of the Connecticut Uniform Securities Act (Eleventh Claim For Relief). (Am. Compl. ¶¶ 162-68, 189-93, 222-26.) The federal and state securities claims are supported by nothing other than the naked assertions that "[b]y virtue of the unified international structure of the auditing firm and the relationships among member firms, KPMG International had the power to influence and control, and did influence and control, directly or indirectly, the decision-making of its member firms, including KPMG [Hong Kong]" (*see id*. ¶ 166); and that "KPMG International . . . directly or indirectly controlled" KPMG Hong Kong (*see id*. ¶ 225). The *respondeat superior* claim is based on the conclusory assertion that KPMG Hong Kong was an agent of KPMG International in the 2008 and 2009 audits. (*See id*. ¶ 192.) The Amended Complaint does not offer a single factual allegation supporting this assertion, nor that the parties consented to any agency relationship.

**KPMG Hong Kong**

"KPMG [Hong Kong] is the entity that signed KPMG's audit reports on the Company's 2008 and 2009 Financial Statements." (*Id*. ¶ 29.) KPMG Hong Kong is a Hong Kong partnership and a member of the KPMG network of independent member firms. (*Id*.) The Amended Complaint alleges that KPMG Hong Kong's audit reports on ShengdaTech's 2008 and 2009 financial statements included material misstatements and omissions. (*Id*. ¶¶ 29, 41, 80, 82, 126, 129.) KPMG Hong Kong is filing a motion to dismiss simultaneously with this motion which explains why the allegations in the Amended Complaint as to KPMG Hong Kong are inadequate and the claims against KPMG Hong Kong should be dismissed. (*See* KPMG HK's Motion to Dismiss and Memorandum of Points and Authorities in Support of Motion to Dismiss Plaintiffs' Consolidated Amended Complaint (the "KPMG Hong Kong Memorandum").)

**KPMG USA**

KPMG USA is a United States-based audit, tax, and advisory services firm, and the U.S. member of the KPMG network of independent member firms. (*Id*. ¶ 30.) The

Amended Complaint contains the conclusory allegation that KPMG USA "supervised and reviewed the audit work that KPMG [Hong Kong] performed for ShengdaTech, and had ultimate authority over whether KPMG [Hong Kong]'s audit reports would be included in the SEC filings and offering memoranda of ShengdaTech." (*Id.*) KPMG USA is filing a motion to dismiss simultaneously with this motion which explains why the allegations as to KPMG USA are inadequate and the claims against KPMG USA should be dismissed. (*See* Defendant KPMG LLP's Memorandum of Points and Authorities in Support of its Motion to Dismiss (the "KPMG USA Memorandum").)

## **<u>ARGUMENT</u>**

The Supreme Court has held that, under Rule 8(a) of the Federal Rules of Civil Procedure, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). While well-pleaded factual allegations are assumed to be true, legal conclusions are not. *Id.* Thus, "conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss for failure to state a claim." *Caviness v. Horizon Cmty. Learning Ctr., Inc.*, 590 F.3d 806, 812 (9th Cir. 2010) (quoting *Epstein v. Wash. Energy Co.*, 83 F.3d 1136, 1140 (9th Cir. 1996)); *accord Iqbal*, 556 U.S. at 678.

The federal and state vicarious liability claims against KPMG International should be dismissed because the Amended Complaint fails to plead any facts to support a claim that KPMG International "controlled" or "dominated" the ShengdaTech audits or KPMG Hong Kong. (Points I-II, *infra*.) Similarly, the Amended Complaint fails to plead any specific, non-conclusory facts to support a claim that KPMG Hong Kong acted as an agent for KPMG International in connection with the ShengdaTech audits. (Point III, *infra*.)

The Amended Complaint should also be dismissed because it does not state a primary violation, which is a necessary precondition for vicarious liability. (*See* KPMG Hong Kong Memorandum.) Further, defining "KPMG" to include KPMG International

as well as defendants KPMG Hong Kong and KPMG USA, and defining those three firms together with Hansen as the "Auditor Defendants" (*see* Am. Compl. ¶ 4), impermissibly circumvents the pleading rules and cannot cure the Amended Complaint's failure to plead any factual basis for liability against KPMG International. (Point IV, *infra*.)

**I. <u>The Amended Complaint Fails to State a Claim Under the Exchange Act.</u>**

The Amended Complaint alleges that KPMG Hong Kong violated Section 18 of the Exchange Act based on the assertion that KPMG Hong Kong's reports on ShengdaTech's financial statements were false or misleading. (Am. Compl. ¶¶ 29, 164.) The Amended Complaint then alleges that KPMG International should be held liable for this alleged Section 18 violation because it was a controlling person of KPMG Hong Kong under Section 20(a) of the Exchange Act. (*Id.* ¶ 168 (Fourth Claim For Relief).) To state a claim under Section 20(a) of the Exchange Act, a pleading must allege facts showing (1) that "a violator committed a primary violation of the federal securities laws" and (2) "that the defendant had actual power or influence over the violator." *In re CBT Grp. PLC Sec. Litig.*, No. C-98-21014-RMW, 2000 WL 33339615, at *4 (N.D. Cal. Dec. 29, 2000);[3] *accord Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 990 (9th Cir. 2009). The Amended Complaint fails to plead both elements of this claim because (1) the Amended Complaint fails adequately to plead a primary violation and (2) the Amended Complaint fails adequately to plead control.[4]

---

[3] In *CBT Group*, the controlling person claim was brought under Section 15 of the Securities Act of 1933. "Although § 15 is not identical to § 20(a) [of the Exchange Act], the controlling person analysis is the same." *Hollinger v. Titan Capital Corp.*, 914 F.2d 1564, 1578 (9th Cir. 1990) (en banc).

[4] Exchange Act violations based on untrue or misleading statements are subject to the heightened pleading requirements of the Private Securities Litigation Reform Act ("PSLRA"), 15 U.S.C. § 78u-4(b)(1) (2010). The PSLRA provides that "the Complaint shall specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is

Continued . . .

The first element of the Section 20(a) claim is missing here because the Amended Complaint fails to plead a primary violation of federal securities laws for the reasons provided in the KPMG Hong Kong Memorandum. *See Zucco Partners, LLC*, 552 F.3d at 990 (a controlling person claim may be "dismissed summarily" if a primary violation is not adequately pled).

The second element of the Section 20(a) claim is also missing here because the Amended Complaint fails to allege any facts to show how KPMG International "had actual power or influence" over KPMG Hong Kong. "[B]are legal conclusions . . . devoid of any factual underpinnings" are simply not enough to state a claim. *Al-Thani v. Wells Fargo & Co.*, No. C 08-1745 CW, 2009 WL 55442, at *9 (N.D. Cal. Jan. 7, 2009). As the Ninth Circuit has found, a finding of control hinges on the defendant's "participation in the day-to-day affairs of the corporation and the defendant's power to control corporate actions." *Paracor Fin., Inc. v. Gen. Elec. Capital Corp.*, 96 F.3d 1151, 1162 (9th Cir. 1996) (quotation omitted) (finding that neither lender nor CEO/chairman was a controlling person of the alleged primary violator corporation); *Al-Thani*, 2009 WL 55442, at *9. Thus, in *Al-Thani*, it was not enough to baldly allege (1) that an entity controlled another "[b]y virtue of [its] operational and management control" and "systematic involvement in the [underlying] fraudulent scheme," and (2) that the defendant allegedly influenced the "decision making and actions" of the other entity and had "direct and supervisory involvement in the operations" of the other entity. 2009 WL 55442, at *9.

The Amended Complaint alleges only that KPMG International "coordinates the global network of professional KPMG-affiliate firms," that KPMG International's Global Board "facilitates discussion with and between member firms," that KPMG International "facilitated communication between KPMG [Hong Kong] and KPMG USA concerning

---

made on information and belief," – which is the basis for the Complaint here, (*see* Am. Compl. ¶ 1) – "the complaint shall state with particularity all facts on which that belief is formed." § 78u-4(b)(1)(B).

the audits," and that KPMG International establishes "a common set of KPMG values" which KPMG member firms abide by. (Am. Compl. ¶¶ 6, 28.) Taken together, these allegations stand for the unremarkable propositions that KPMG International enhanced the "KPMG" name and served as a mere conduit through which a member firm could make contact with another member firm.[5] The Amended Complaint does not contain a single factual allegation showing that KPMG International had the ability or right to assert actual power or influence on the "day-to-day affairs" of KPMG Hong Kong. *See Paracor Fin., Inc.*, 96 F.3d at 1162-63 (lender not a control person of corporation because no evidence that influence was exercised on a "day-to-day basis").

The Amended Complaint does not contain a single reference to KPMG International in its "Factual Allegations." (*See* Am. Compl. ¶¶ 37-128.) The Amended Complaint's "Claims For Relief" cannot be saved by rehashing the same vague and conclusory assertions made in the introductory sections of the Amended Complaint. (*See id.* ¶¶ 162-68, 189-93, 222-26.) Thus, alleging that KPMG International, KPMG Hong Kong, and KPMG USA are part of a "unified international structure" and that by way of "the relationships among member firms" KPMG International "had the power to influence and control, and did influence and control, directly or indirectly, the decision-making of its member firms, including KPMG [Hong Kong]" (*id.* ¶ 166), is insufficient because the Amended Complaint fails to plead what power or decision-making ability KPMG International allegedly held over the day-to-day affairs of the member firms. In other words, there is no fact alleged to show *how* KPMG International "had the power to

---

[5] The Complaint also alleges that KPMG Hong Kong's affiliation with KPMG International added to its "reputational prestige" (Am. Compl. ¶ 6); that "KPMG [Hong Kong's] ability to consult with KPMG USA as a result of their common affiliations with KPMG International positioned KPMG [Hong Kong] to secure its retention as ShengdaTech's auditor" (*id.*); and that "KPMG International and its member and network firms market themselves worldwide under the brand name 'KPMG'" (*id.* ¶ 28). None of these allegations has any logical bearing on the question of KPMG International's ability to control day-to-day operations at KPMG Hong Kong.

influence and control, and did influence and control" (*id.*), KPMG Hong Kong's decisions.

Courts have rejected similarly defective allegations against coordinating entities of professional networks like KPMG International. In *CBT Group*, the United States District Court for the Northern District of California dismissed a controlling person claim against Ernst & Young International ("EY International"), which, like KPMG International, coordinates a global network of member firms providing professional services. 2000 WL 33339615, at *1. The claim was based on alleged primary violations by the Ernst & Young Irish member firm, Ernst & Young Chartered Accountants. *Id.* The complaint had alleged – like here – that EY International was responsible for "coordinating cross-border work" and "developing uniform practice standards," and the auditing work at issue was alleged to have been performed "on a global coordinated basis" by the Irish firm and other member firms of the Ernst & Young network. *Id.* at *5. The court found that the complaint did not permit the inference that EY International had "power to direct . . . day-to-day operation or management" of the member firm and thus held that the allegations were "too indefinite to establish a 'controlling person' relationship." *Id.* As in *CBT Group*, the complaint here does not establish a controlling person relationship, because it does not show that KPMG International had "power to direct . . . day-to-day operation or management" of KPMG Hong Kong. *Id.*

Similarly, in *In re Asia Pulp & Paper Securities Litigation*, 293 F. Supp. 2d 391 (S.D.N.Y. 2003), the U.S. District Court for the Southern District of New York dismissed controlling person claims against the "umbrella entity" for the Andersen network of professional firms – Andersen Worldwide Société Coopérative ("Andersen Worldwide"). The complaint had alleged that Andersen Worldwide "was designed to 'maintain a "one firm" concept, and was intended to foster the belief that Andersen operates as a single entity,'" and that Andersen Worldwide "achieves this goal primarily through: (1) partner overlap; (2) sharing of costs and profits; (3) global setting of professional standards; and (4) maintenance of a global infrastructure and administration." *Id.* at 393. The court

rejected the claims against Andersen Worldwide because the complaint failed to allege Andersen Worldwide's "control over the primary violator." *Id.* at 396. The Court reasoned that the complaint could not "support the notion that [Andersen Worldwide] directed the 'management and policies'" of a member firm by alleging that Andersen Worldwide "set 'professional standards and principles' under which the individual offices operated." *Id.* The complaint thus failed to allege that Andersen Worldwide "was able to control or in any way influence the particular audits conducted or opinions offered by its individual member firms." *Id.* The Amended Complaint contains even less than the complaint against Andersen Worldwide.

At bottom, the Amended Complaint hinges on conclusory allegations that KPMG Hong was "dominated and controlled" by KPMG International. (Am. Compl. ¶ 31.) Indeed, the Amended Complaint concedes the hollowness of its allegations when it states: "[i]nformation regarding the exact relationship among these entities is within the exclusive control of these Defendants and discovery will therefore demonstrate the full extent to which these entities act for and answer for each other." (*Id.*) It is well established that the hope that discovery will provide a factual basis lacking from a complaint (a classic "fishing expedition") cannot defeat a motion to dismiss a complaint alleging federal securities violations. As the Ninth Circuit found in *Medhekar v. United States District Court for the Northern District of California*, "Congress clearly intended that complaints in these securities actions should stand or fall based on the actual knowledge of the plaintiffs rather than information produced by the defendants after the action has been filed." 99 F.3d 325, 328 (9th Cir. 1996); *see also SG Cowen Sec. Corp. v. U.S. Dist. Court for the N. Dist. of Cal.*, 189 F.3d 909, 912-13 (9th Cir. 1999) (vacating a grant to a request for discovery to gather facts to satisfy pleading standards in a securities action because such discovery would contravene congressional intent).

With only "bare legal conclusions" without any "factual underpinnings," the Section 20(a) claim, at best, amounts to nothing more than a "formulaic recitation" of the required elements, which is "not entitled to be assumed true." *See Iqbal*, 556 U.S. at 680-

81; *Al-Thani*, 2009 WL 55442, at *9. Accordingly, the Section 20(a) claim fails as a matter of law.[6]

## II. <u>The Amended Complaint Fails to State a Claim for Controlling Person Liability Under the Connecticut Uniform Securities Act.</u>

The Amended Complaint includes a claim against KPMG International under the Connecticut Uniform Securities Act Section 36b-29(c).[7] (Am. Compl. ¶ 225 (Eleventh Claim For Relief.) To establish control under this statute, at least one Connecticut court has applied the standard required to pierce the corporate veil. *See Farlander v. Mitchell*, Nos. FSTCV040200884S, FSTCV054004555S, 2007 WL 2080612, at *3, 6 (Conn. Super. Ct. May 10, 2007) (denying controlling person claim under Section 36b-29(c)). Thus, "[t]here must be such domination of finances, policies and practices that the controlled corporation has, so to speak, no separate mind, will or existence of its own and is but a business conduit for its principal." *Id*. at *3.

---

[6] For the reasons provided in the KPMG Hong Kong Memorandum, if the Court dismisses the claims brought under the Exchange Act, the Court lacks subject-matter jurisdiction and should decline supplemental jurisdiction over the Amended Complaint's state law claims.

[7] Pursuant to Section 36b-29(c):

> Every person who directly or indirectly controls a person liable under subsections (a) and (b) of this section, every partner, officer or director of such a person, every person occupying a similar status or performing similar functions, every employee of such a person who materially aids in the act or transaction constituting the violation and every broker-dealer or agent who materially aids in the act or transaction constituting the violation are also liable jointly and severally with and to the same extent as such person, unless the person who is so liable sustains the burden of proof that he did not know, and in exercise of reasonable care could not have known, of the existence of the facts by reason of which the liability is alleged to exist.

As a threshold matter, as with the Exchange Act claim, the plaintiffs' failure to plead a primary violation (*see* KPMG Hong Kong Memorandum), requires dismissal of the Connecticut controlling person claim.

The Amended Complaint offers no fact that would allow a plausible inference that KPMG International "exercised the power to direct or cause the direction" of KPMG Hong Kong's "day-to-day operation or management," *In re CBT Grp. PLC*, 2000 WL 33339615, at *5, much less that KPMG International so dominated KPMG Hong Kong's "finances, policies and practices that [KPMG Hong Kong] has, so to speak, no separate mind, will or existence of its own" *Farlander*, 2007 WL 2080612, at *3. The only allegations supporting the Connecticut Uniform Securities Act controlling person claim are the same deficient allegations made in connection with the Section 20(a) claim. (*See* Am. Compl. ¶¶ 162-68, 222-26.) As the Ninth Circuit has found, "there is no reason to infer that 'controlling person' has a different meaning in [state securities law] than in federal law." *Burgess v. Premier Corp.*, 727 F.2d 826, 833 (9th Cir. 1984).[8] Accordingly, the state claim should be dismissed for the same reasons as the federal claim. (*See* Point I, *supra*.)

**III. <u>The Amended Complaint Fails to State a Claim Under the Doctrine of *Respondeat Superior*.</u>**

The Amended Complaint's Sixth Claim For Relief is brought against KPMG Hong Kong for negligent misrepresentation "under common law principles of negligence."[9] (Am. Compl. ¶ 179.) This primary liability claim fails for the reasons set forth in the KPMG Hong Kong Memorandum.

---

[8] In *Burgess*, the Ninth Circuit applied the controlling person section of Washington securities law, and held that "[s]ince [defendants] were not controlling persons under the federal definition, they could not properly be liable under Washington law." *Burgess*, 727 F.2d at 833. The same conclusion applies under the Connecticut law, which is substantially similar to the Washington law (*compare* Conn. Gen. Stat. § 36b-29(c) (2010), *with* Wash. Rev. Code § 21.20.430(3) (2012)), because both state statutes are based on the model Uniform Securities Act.

[9] "Claims of intentional and negligent misrepresentation must be pled with particularity pursuant to Fed. R. Civ. P. 9(b)." *Tene v. BAC Home Loan Servicing LP*, No. 2:11-CV-01095-KJD-PAL, 2012 WL 222920, at *3 (D. Nev. Jan. 25, 2012) (dismissing negligent misrepresentation claim for failure to plead with particularity under Rule 9(b)).

Failure to plead primary liability means that the Amended Complaint's Seventh Claim For Relief, charging KPMG International with negligent misrepresentation under the doctrine of *respondeat superior*, also fails. *See* Restatement (Third) of Agency § 7.03 cmt. b (2006) (A "principal's vicarious liability turns on whether the agent is liable."); *Crawford v. Signet Bank*, 179 F.3d 926, 929 (D.C. Cir. 1999) ("In the absence of agent liability . . . none can attach to the principal.").

The *respondeat superior* claim also fails for an additional, independent reason: failure to plead the elements of an agency relationship. As the Amended Complaint acknowledges, a *respondeat superior* claim requires establishment of an agency relationship. (*See* Am. Compl. ¶¶ 192-93 (alleging that KPMG Hong Kong "was an agent of . . . KPMG International" and that "KPMG International . . . [is] responsible for the actions and liabilities of [its] agent, KPMG [Hong Kong]")); *see also* Restatement (Third) of Agency § 2.04 cmt. b (2006) (*respondeat superior* is "[v]iewed as a doctrine within the law of agency").

Two essential elements of a common law agency relationship are the right to control and consent. *See Grand Hotel Gift Shop v. Granite State Ins. Co.*, 839 P.2d 599, 602 (Nev. 1992) ("An agency relationship is formed when one who hires another retains a contractual right to control the other's manner of performance;" finding "no agreement or other manifestation of consent from which to find a principal-agent relationship"). As comment c to Section 1.01 of Restatement (Third) of Agency explains, "A relationship is not one of agency within the common-law definition unless the agent consents to act on behalf of the principal, and the principal has the right throughout the duration of the relationship to control the agent's acts." *See also Meyer v. Holley*, 537 U.S. 280, 286, 291 (2003) (under traditional agency principles, right to control alone is insufficient to establish a principal-agent relationship; manifestation of consent by both parties is also required); *Batzel v. Smith*, 333 F.3d 1018, 1035-36 (9th Cir. 2003) (no agency where "practical control" not shown).

Here, the Amended Complaint fails to plead both elements – right to control and consent. First, the Amended Complaint is completely devoid of anything that would amount to a claim that KPMG Hong Kong – a Hong Kong partnership – consented to any control by KPMG International – a Swiss cooperative – in the ShengdaTech audits. (*See* Am. Compl. ¶¶ 28-29, 189-93.) Second, the Amended Complaint fails to plead KPMG International's right to control any aspect of KPMG Hong Kong's operations or the ShengdaTech audits specifically. (*See* Point I, *supra*.)

The Amended Complaint asserts that, in performing the 2008 and 2009 ShengdaTech audits, KPMG Hong Kong was "dominated and controlled" by KPMG International, "was an agent" of KPMG International, and issued its audit opinions at the "behest" of KPMG International. (*See id*. ¶¶ 31, 192.) The Amended Complaint "may not rest on legal conclusions regarding agency that are cast as factual allegations." *In re Toyota Motor Corp.*, 785 F. Supp. 2d 883, 911 (C.D. Cal. 2011) (citing *Iqbal*, 556 U.S. at 677-79). Accordingly, these conclusory allegations are insufficient as a matter of law. *See Iqbal*, 556 U.S. at 680-81; *Larson v. Liberty Mut. Fire Ins. Co.*, Civil No. 11-00272 SOM/BMK, 2011 WL 3512025, at *5 (D. Haw. Aug. 11, 2011) (where no facts are alleged supporting an agency relationship, conclusory allegations are insufficient to defeat a motion to dismiss).

The Amended Complaint's allegations about KPMG Hong Kong's mere "affiliation" with KPMG International, or the use, marketing, and "reputational prestige" of the KPMG "brand name," do not even purport to speak to the right of control.[10] Further, the Amended Complaint alleges that KPMG International's Global Board

---

[10] Thus, the Amended Complaint misses the mark by alleging that: (1) "KPMG [Hong Kong]'s affiliation with KPMG International added to KPMG [Hong Kong]'s reputational prestige, and KPMG [Hong Kong]'s ability to consult with KPMG USA as a result of their common affiliations with KPMG International positioned KPMG [Hong Kong] to secure its retention as ShengdaTech's auditor" (Am. Compl. ¶ 6); and (2) that "KPMG International and its member and network firms market themselves worldwide under the brand name 'KPMG'" (*id*. ¶ 28).

Council facilitates discussion between member firms (Am. Compl. ¶ 28), and makes the bald assertion that "KPMG International facilitated communication between KPMG [Hong Kong] and KPMG USA concerning the audits" (*id.* ¶ 6). The Amended Complaint does not allege when this facilitation occurred or what communications were "facilitated." Even if it had, facilitation is far from the "right to control" KPMG Hong Kong's "manner of performance," which is required to show a principal-agent relationship. *Grand Hotel Gift Shop*, 839 P.2d at 602. (*See also* Point I, *supra*.)

Finally, the Amended Complaint excerpts and paraphrases KPMG International's website, and alleges that "member firms commit to abide by a common set of KPMG values," that these values are "established by the Global Board, which is KPMG International's principal oversight and governance body," and that the Global Board Council "focuses on high-level governance tasks."[11] KPMG International's website also expressly confirms that "[e]ach KPMG member firm takes responsibility for its management and the quality of its work," and that "[n]o member firm has any authority to obligate or bind KPMG International or any other member firm vis-à-vis third parties, nor does KPMG International have any such authority to obligate or bind any member firm."[12] The Amended Complaint's allegations drawn from KPMG International's website do not show control or a principal-agent relationship, and courts regularly dismiss claims against coordinating entities of professional networks based on similar allegations.

In *In re Lernout & Hauspie Securities Litigation*, 230 F. Supp. 2d 152, 171 (D. Mass. 2002), for example, plaintiffs alleged that KPMG International was vicariously

---

[11] *Compare Structure*, KPMG, http://www.kpmg.com/global/en/about/organization/structure/ (last visited Jan. 2, 2013), *with* Am. Compl. ¶ 28.

[12] *Structure*, KPMG, http://www.kpmg.com/global/en/about/organization/structure/ (last visited Jan. 2, 2013).

liable for the alleged misstatements of three member firms of the KPMG network of independent firms. This claim was based on (i) statements allegedly from KPMG International's website and an annual report to shareholders that described the KPMG network as a "unitary global entity" and "tout[ed] . . . global services or strategies," and (ii) "the alleged 'co-extensive responsibility' and collaboration among different KPMG entities in conducting audits for [Lernout & Hauspie], 'all under the umbrella name of KPMG.'" *Id.* at 171-72. The court found that these allegations did not "support the inference of an agency relationship" between KPMG International and the KPMG member firms, noting that – like here – the complaint (i) did not allege that "any of the audit reports bore the name or logo of KPMG International," (ii) did not "cite wording from an audit proposal or offering memorandum implying that KPMG International itself was retained as an independent auditor," and (iii) lacked "support for the notion that such collaborations [among the KPMG entities] occurred at the behest of, on behalf of, under the direction of, or subject to the control of KPMG International." *Id.* at 173. The court thus dismissed the vicarious liability claim against KPMG International. *Id.*

In *Star Energy Corporation v. RSM Top-Audit*, No. 08 Civ. 00329(DC), 2008 WL 5110919 (S.D.N.Y. Nov. 26, 2008), a plaintiff brought vicarious liability claims against RSM International for the actions of the Russian member firm of the RSM network of professional firms. The complaint alleged, among other things, that RSM International controlled RSM member firms "through the use of a common manual of auditing," that RSM International "audits the work of its members to ensure compliance with its strict procedures and has the power to force the member to change its conduct under the threat of sanction or remedial action," and that RSM International facilitated communication between companies and member firms "through an on-line directory on its website." *Id.* at *3. The court dismissed the complaint because it failed to allege that RSM International controlled or was able to control the Russian member firm's audits, which is the "central element necessary to sustain a claim of vicarious liability," and it failed to allege any "manifestation" by RSM International that the member firm was acting as its

agent in performing the audits. *Id.* at *3-5. Similarly, here, the Amended Complaint does not allege a "manifestation of consent" or facts showing that KPMG International controlled, or could control, any part of the ShengdaTech audits.

Accordingly, with allegations even more meager and deficient than those pled in *Lernout & Hauspie* and *Star Energy*, the Amended Complaint's vicarious liability claim against KPMG International should be dismissed. *Accord Nuevo Mundo Holdings v. Pricewaterhouse Coopers LLP*, No. 03 Civ.0613 GBD, 2004 WL 112948, at *5 (S.D.N.Y. Jan. 22, 2004) (dismissing agency claims between U.S. and Peruvian member firms in the absence of allegations showing manifestation of consent and allegations that the alleged principal participated in the issuance of the audit report); *In re WorldCom, Inc. Sec. Litig.*, No. 02 Civ. 3288(DLC), 2003 WL 21488087, at *10 (S.D.N.Y. June 25, 2003) (dismissing agency claim against Andersen "umbrella organization," because complaint did not allege facts showing that the Andersen member firm acted as the agent of the umbrella organization when it conducted the WorldCom audits); *see also In re Asia Pulp & Paper Sec. Litig.*, 293 F. Supp. 2d at 396 (dismissing controlling person claims against Andersen Worldwide because setting professional standards and principles does not "support the notion that [Andersen Worldwide] directed the 'management and policies'" of the Andersen member firm).

**IV. <u>The Amended Complaint Cannot Circumvent the Pleading Requirements.</u>**

The Amended Complaint does not allege that KPMG International performed or directed any aspect of KPMG Hong Kong's audits of ShengdaTech or issued any report or made any statement regarding those audits. (*See* Am. Compl. ¶¶ 28-29.) In fact, the Amended Complaint does not specifically refer to KPMG International in even a single instance in its "Factual Allegations." This section does, however, refer to "KPMG" generally (*id*. ¶¶ 46, 48, 51, 53, 58, 70, 82, 87, 92, 99, 108, 125, 126), which the Amended Complaint had defined to include three separate defendants – KPMG Hong Kong, KPMG USA, and KPMG International (*id.* ¶ 4), and the "Auditor Defendants," which it had defined to include four separate defendants – KPMG Hong Kong, KPMG

USA, KPMG International, and Hansen (*id.* ¶¶ 4, 44, 106-11, 115, 123). Such pleading is defective under Federal Rule of Civil Procedure 8(a) and cannot provide any support for the claims against KPMG International.

As Judge George has found, a complaint's "broad and vague allegations as to all defendants fail[] to provide fair notice to each defendant of the claim for relief pled against the defendant." *Tate v. Univ. Med. Ctr. of S. Nev.*, No. 2:09-cv-1748-LDG (RJJ), 2010 WL 3829221, at *2-4 (D. Nev. Sept. 24, 2010) (allegations against defendants collectively failed under Rule 8); *see also Corazon v. Aurora Loan Servs., LLC*, No. 11-00542 SC, 2011 WL 1740099, at *4-5 (N.D. Cal. May 5, 2011) (dismissing claims where plaintiff failed to "indicate which defendant was allegedly responsible for which wrongful act"); *In re Sagent Tech., Inc., Derivative Litig.*, 278 F. Supp. 2d 1079, 1094-95 (N.D. Cal. 2003) (same). KPMG International "should not be required to guess which allegations pertain to it." *Corazon*, 2011 WL 1740099, at *4.

In *Tate*, for example, this Court considered numerous causes of action brought by a doctor against, collectively, the medical center that formerly employed him, the trustees and staff of the medical center, and certain individual doctors. 2010 WL 3829221, at *3. The Court dismissed the plaintiff's claims as inadequately pled because, in order to provide fair notice, the complaint must specify "who is alleged to have done what to whom." *Id.* at *3 (quoting *Robbins v. Oklahoma*, 519 F.3d 1242, 1250 (10th Cir. 2008)). The Court found such collective pleading particularly problematic where the context indicated that the alleged conduct or obligations could not have been common to all defendants. *Id.* at *4.

The Amended Complaint's "broad and vague allegations" collectively as to KPMG Hong Kong, KPMG USA, and KPMG International (and in certain instances, Hansen as well) also fail to satisfy any standard of notice. *See id.* at *2. As in *Tate*, the context here belies any suggestion that KPMG International had any involvement in any ShengdaTech audit: the Amended Complaint affirmatively pleads that KPMG Hong Kong – not KPMG International – performed the audit work and issued the audit reports.

(*See*, *e.g.*, Am. Compl. ¶¶ 29, 100-01.) Accordingly, allegations that refer only to "KPMG" or the "Auditor Defendants" – without any specific mention of KPMG International – should not be considered in connection with the claims brought against KPMG International.

Finally, courts have rejected the notion that networks of accounting firms using a common brand name should be treated as a single entity. *See, e.g.*, *Nuevo Mundo Holdings*, 2004 WL 112948, at *3 ("Member firms in an international accounting association are not part of a single firm and are neither agents nor partners of other member firms simply by virtue of using the same brand name."); *In re Lernout & Hauspie Sec. Litig.*, 230 F. Supp. at 171 ("[N]either the facts of this case nor the relevant caselaw lends credence to Plaintiffs' 'single firm' theory."); *In re AM Int'l, Inc. Sec. Litig.*, 606 F. Supp. 600, 607 (S.D.N.Y. 1985) (rejecting claims against Price Waterhouse firms that were based on the argument that "all the Price Waterhouse firms world-wide are in fact one entity, and acted as agents of one another"). Thus, the allegation that "KPMG International and its member and network firms market themselves worldwide under the brand name 'KPMG,'" (Am. Compl. ¶ 28), fails to provide a basis to ignore separate legal identities, especially where the Amended Complaint admits the distinct nature of each of the KPMG entities: KPMG International "is a Swiss entity" (*id.*), KPMG Hong Kong is a "Hong Kong partnership" (*id.* ¶ 29), and KPMG USA is a "United States-based audit, tax and advisory services firm" (*id.* ¶ 30).[13]

/ / /

/ / /

---

[13] Similarly, the Complaint alleges no basis to claim that KPMG International was the alter ego of KPMG USA or KPMG Hong Kong. *See, e.g.*, *Nuevo Mundo Holdings*, 2004 WL 112948, at *7 (dismissing alter ego claims against international coordinating entity where complaint was devoid of factual allegations supporting a finding of alter ego other than "conclusory allegations of control"); *see also* KPMG USA Memorandum.

## CONCLUSION

For the foregoing reasons, all claims against KPMG International should be dismissed with prejudice.

RESPECTFULLY SUBMITTED this 7th day of January, 2013.

*/s/ William R. Maguire*
William R. Maguire (*admitted pro hac vice*)
Kenneth M. Katz (*admitted pro hac vice*)
Yoshinori M. Sasao (*admitted pro hac vice*)
HUGHES HUBBARD & REED LLP
One Battery Park Plaza
New York, NY 10004-1482
maguire@hugheshubbard.com
katzk@hugheshubbard.com
sasao@hugheshubbard.com

Andrew P. Gordon (# 3421)
MCDONALD CARANO WILSON LLP
2300 West Sahara Avenue, Suite 1000
Las Vegas, NV 89102
agordon@mcdonaldcarano.com

*Attorneys for Defendant*
*KPMG International Cooperative*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that I am an employee of Hughes Hubbard & Reed LLP, and that on this 7th day of January 2013, a true and correct copy of the foregoing **KPMG INTERNATIONAL COOPERATIVE'S MOTION TO DISMISS THE CONSOLIDATED COMPLAINT** was electronically filed with the Clerk of the Court by using CM/ECF service which will provide copies to all counsel of record registered to receive CM/ECF notification in this case.

*/s/ Patricia E. Smith*
An Employee of Hughes Hubbard & Reed LLP