David S. Kahn
Nevada Bar No. 007038
WILSON, ELSER, MOSKOWITZ,
EDELMAN & DICKER LLP
300 South Fourth Street, 11th Floor
Las Vegas, NV 89101
(702) 727-1400; FAX (702) 727-1401
E-mail:David.Kahn@wilsonelser.com

Peter J. Larkin
William J. Kelly
Benjamin A. Tulis
Admitted *Pro Hac Vice*
WILSON, ELSER, MOSKOWITZ,
EDELMAN & DICKER LLP
3 Gannett Drive
White Plains, NY 10604
(914) 323-7000; FAX (914) 323-7001
E-mail: Peter.Larkin@wilsonelser.com
E-mail: William.Kelly@wilsonelser.com
E-mail: Benjamin.Tulis@wilsonelser.com

*Attorneys for Defendant Hansen, Barnett & Maxwell, P.C.*

THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEVADA

OAKTREE CAPITAL MANAGEMENT, L.P., on behalf of its managed funds and accounts, LAZARD ASSET MANAGEMENT LLC, on behalf of its managed funds and accounts, ANGELO, GORDON & CO., L.P., ZAZOVE ASSOCIATES LLC, on behalf of certain of its managed funds and accounts, CNH PARTNERS, LLC, ADVENT CAPITAL MANAGEMENT, LLC AQR CAPITAL MANAGEMENT, LLC, and HFR CA LAZARD RATHMORE MASTER TRUST,

Plaintiffs,

v

KPMG, KPMG INTERNATIONAL COOPERATIVE, KPMG LLP, HANSEN, BARNETT & MAXWELL, P.C., And MORGAN STANLEY & CO.,

Defendants

No. 12-cv-00956-JCM-GWF

## DEFENDANT HANSEN, BARNETT & MAXWELL P.C.'S MOTION TO DISMISS

Defendant Hansen, Barnett & Maxwell P.C. ("Hansen"), by and through its attorneys of record, WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER LLP, hereby moves for an order dismissing the complaint as against Hansen, in its entirety and for any other relief the Court finds just and proper, for failure to state a claim upon which relief can be granted. This motion is brought pursuant to Federal Rules of Civil Procedure 12(b)(6) and 9(b), and pursuant to the Private Securities Litigation Reform Act ("PSLRA").

## PRELIMINARY STATEMENT

Hansen, Barnett & Maxwell, P.C. is an accounting firm with one office in Salt Lake City, Utah. Hansen conducted an audit of ShengdaTech, Inc.'s financial statements for the fiscal year ending December 31, 2007. Now, five years later, Plaintiffs are bringing a securities fraud action questioning the audit and the opinion rendered by Hansen in early 2008 as it pertains to Notes Offerings by ShengdaTech in 2008 and December 2010. However, plaintiffs allege that they and the investing public were alerted to potential issues with Hansen's Audit Report as early as April 1, 2009, by virtue of a subsequent report by KPMG, which found material weaknesses in the Company's internal controls. In both their Original and Amended Complaint, Plaintiffs describe the KPMG report as providing notice that there were "great concerns" about Hansen's audit and that there was a significant chance that the Company's underlying financial statements were misstated. By no means does movant suggest that anything about Hansen's audit departed from professional standards or was reckless or was negligent. To the contrary, the audit was conducted in accordance with professional standards and Hansen's audit opinion was its belief at the time. However, Plaintiffs plainly state that they were on notice of potential issues with the Hansen audit by early 2009, yet they waited years before bringing this action. Now it is not timely.

Moreover, rather than actually allege that Hansen's opinion was intentionally or recklessly misstated or that it had no reasonable basis for the opinion it reported, Plaintiffs allege, based upon mere assumptions and hindsight, that the underlying company financial statements for 2007 must be false. However, those financial statements are the representations of the company, not Hansen. Any claim that those financial statements are false or misleading is a claim against the company, not Hansen. Plaintiffs do not properly allege that Hansen misstated its opinion or it had no reasonable basis for that opinion. Nonetheless, plaintiffs conclude that Hansen must have violated professional standards because of events that occurred in 2011 pertaining to the audit of ShengdaTech's 2010 financial statements. This conclusion is nothing more than alleging fraud with the aid of hindsight. Because Plaintiffs fail to set forth an alleged misstatement by Hansen, actual reliance on that misstatement and loss causation relating to that misstatement, the allegations do not set forth a claim under Section 18 of the Exchange Act and should be dismissed.

As Plaintiffs' Section 18 claim fails, the Court should decline to exercise supplemental jurisdiction over Plaintiffs' state law claims. If the Court opts to hear these claims, they nevertheless fail. Plaintiffs' claim under Conn. Gen. Stat. § 36b-29 fails because the claim is time-barred and fails to allege a primary violation as well as Hansen's "material assistance." Second, Plaintiffs' Common Law Negligent Misrepresentation claims fail because Hansen was not in privity with the purchasers under Utah law, which governs the practice and professional liability of Hansen, a Utah accounting firm.

Ultimately, Plaintiffs are grasping at straws in attempting to attach liability to Hansen. These claims are inadequately pled, time-barred and simply do not allege facts pertaining to ShengdaTech's 2007 financial statements beyond unfounded assumptions made in hindsight. Therefore, the Complaint, at least as against Hansen, should be dismissed.

## STATEMENT OF THE CASE AS AGAINST HANSEN

### A. Background

This matter arises from an alleged fraud perpetrated by ShengdaTech, Inc. (the "Company"), a Chinese company that manufactures a specialty additive known as nano-precipated calcium carbonate. AC ¶ 34. Plaintiffs filed the original complaint in this matter on June 6, 2012 (the "Original Complaint"). Also pending was a similar action entitled *Delaware Public Employees' Retirement System v. KPMG et al.*, Index No. 12-cv-00961-JCM-GWF. On September 6, 2012, Hansen had moved to dismiss both actions. On November 21, 2012, Plaintiffs filed an Amended Consolidated Complaint to consolidate this action with the other similar action. Thus, the present motion is to dismiss the Amended Consolidated Complaint.

Hansen audited the Company's financial statements for the fiscal year ending December 31, 2007 (the "2007 Audit Opinion"). AC ¶ 5. Hansen is a Utah accounting firm with its sole office in Utah. AC ¶ 32. The 2007 Audit Opinion was filed with the SEC on March 14, 2008. AC ¶ 77. The Audit Opinion was amended several weeks later to reclassify some balance sheet items, which did not have any impact on the financial statements as a whole.

Plaintiffs are institutional investors who reside in California, New York, Connecticut, Delaware, Nevada and Bermuda. AC ¶¶ 18-26. ShengdaTech, a Nevada Corporation, is not a party to this lawsuit. AC ¶ 34. The Defendants include Hansen, KPMG Hong Kong ("KPMG HK"), KPMG International Cooperative, KPMG LLP and Morgan Stanley & Co.

ShengdaTech went public in the United States by virtue of a "reverse merger," a common method used by foreign and domestic entities to access the market without going through an initial public offering. *See* AC ¶¶ 37, 93; *In re Advanced Battery Technologies*, 2012 U.S. Dist. LEXIS 123757, *58 (S.D.N.Y. Aug. 29, 2012). Beginning in mid-2011, such "reverse mergers" by Chinese companies have come under scrutiny. AC ¶¶ 93-96.

In 2008, ShengdaTech conducted a 6.0% Note Offering pursuant to an Offering Memorandum. AC ¶ 39. According to the Amended Complaint, this offering incorporated the Hansen audit report and the Company's financial statements for 2007. AC ¶ 77. Only one Plaintiff, CNH Partners LLC, has brought a claim based upon their purchase of 6.0% Notes in the 6.0% Notes Offering. *See* AC ¶¶ 18-26.

On November 11, 2008, ShengdaTech announced that it had dismissed Hansen as its auditor and retained KPMG HK. AC ¶ 99. KPMG HK subsequently audited and issued audit reports concerning ShengdaTech's 2008 and 2009 Financial Statements. AC ¶ 99. KPMG HK, in its audit report on the Company's 2008 Financial Statements filed on April 1, 2009, reported that it had found material weaknesses in the Company's internal controls over financial reporting. AC ¶ 118; Original Complaint ¶ 41.

According to Plaintiffs, "[t]he fact that KPMG uncovered "material weaknesses" mere months into its engagement raise[d] serious questions about the rigor Hansen applied in auditing the Company's 2007 Financial Statements and the basis upon which it opined that such statements presented the Company's financial positions and the results of its operations in accordance with GAAP…" Original Complaint ¶ 41; *see also* AC ¶ 121. Plaintiffs also alleged that "[t]he fact that "material weaknesses" evidently existed and were able to be uncovered by a new auditor within months of its retention strongly suggests that such weaknesses existed during Hansen's audits of ShengdaTech's financial statements and that, accordingly, Hansen did not have a reasonable basis for issuing unqualified audit opinions…." Original Complaint ¶ 48; *see also* AC ¶ 119. Plaintiffs allege to have "read and relied" upon KPMG HK's 2008 audit report disclosing the alleged material weaknesses. AC ¶ 147.

On December 10, 2010, ShengdaTech commenced a second note offering for notes bearing 6.5% interest. AC ¶ 40. This note offering also incorporated the Hansen 2007 audit

report and the Company's 2007 financial statements as well as the two audit reports that followed Hansen's 2007 opinion. AC ¶ 90. It also included the KPMG HK audit report regarding the material weaknesses in internal controls that Plaintiffs state would cause any reader to seriously question the Hansen audit. AC ¶ 90.

On August 19, 2011, ShengdaTech filed for bankruptcy protection in the United States Bankruptcy Court for the District of Nevada and effectively defaulted on the 6.0% Notes and 6.5% Notes purchased by Plaintiffs. AC ¶ 57. On October 17, 2012, ShengdaTech's Chapter 11 Plan of Reorganization was made effective. *In re ShengdaTech, Inc.*, Case No. BK-11-52649. Under the Plan, Plaintiffs, as noteholders, are Class 4 Creditors and are entitled to distributions from the Liquidating Trust. *Id.*

## B. The Causes of Action

Plaintiffs set forth multiple claims for relief against multiple parties, some by all plaintiffs and some by only a select few plaintiffs. The first Claim for Relief is against Hansen pursuant to Section 18 of the Exchange Act relating to the company's 2007 10-k. The second Claim for Relief is a Section 18 claim against Hansen and KPMG relating to the Company's 2008 10-k. No new representations were made by Hansen in the 2008 10-k, but a copy of its previous audit report was incorporated into the 2008 10-k. The third Claim for Relief is also a Section 18 claim against Hansen and KPMG, but relates to the 2009 10-k. Like the 2008 10-k, a copy of the 2007 Hansen audit report is incorporated into the 10-k.[1]

The fifth Claim for Relief seeks recovery relating to Plaintiff CNH Partners LLC's purchase of the 6.0% Notes and sounds in common law negligent misrepresentation. Plaintiff

[1] The fourth, seventh, eighth, ninth, and eleventh Claims for Relief do not name Hansen as a defendant. Thus, they will not be addressed herein.

CNH, a Connecticut entity, is the only plaintiff who purchased the 6.0% Notes from the 6.0% Notes Offering. The sixth Claim for Relief seeks recovery on behalf of all Plaintiffs in connection with the December 2010 6.5% Note purchases and sounds in common law negligent misrepresentation.

Finally, the tenth Claim for Relief seeks recovery on behalf of two plaintiffs, CNH and AQR Management LLC, the "Connecticut plaintiffs," for an alleged violation of the Connecticut Uniform Securities Act § 36b-29(a) relating to these plaintiffs' purchases of the 6.5% notes.

## ARGUMENT[2]

In order to survive a motion to dismiss pursuant to Fed. R. Civ. P. 12(b), a complaint must plead sufficient factual allegations "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 570 (2007). "A claim has facial plausibility when the pleaded factual content allows the court to the draw reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (citation omitted). "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (internal quotation marks and citation omitted). If the plaintiff has not "nudged [his] claims across the line from conceivable to plausible, [the] complaint must be dismissed." *Twombly*, 550 U.S. at 570.

---

[2] To the extent an argument for dismissal is set forth in co-defendants' respective motions to dismiss and is applicable to Hansen, Hansen hereby adopts those arguments as if fully set forth herein.

## POINT I

## THE COMPLAINT FAILS TO ADEQUATELY PLEAD A CLAIM AGAINST HANSEN UNDER SECTION 18 OF THE EXCHANGE ACT OF 1933

To state a claim under Section 18 of the Exchange Act, a plaintiff must plead that (1) a document filed pursuant to the Exchange Act, or any rule or regulation promulgated under it, contained a false or misleading statement; (2) the defendant made or caused to be made the false or misleading statement; (3) the plaintiff actually relied on the false statement; and (4) that reliance caused loss to the plaintiff. *See Kelley v. Rambus*, 2008 U.S. Dist. LEXIS 100319, fn. 3 (N.D. Cal. 2008) (aff'd by *Kelley v. Rambus, Inc.*, 384 Fed. Appx. 570 (9th Cir. 2010)). Plaintiffs' claims are time-barred as against Hansen. Moreover, Plaintiffs' Complaint fails to adequately allege a false statement, actual reliance and loss causation. As such, the Complaint's First, Second and Third Claims for Relief must be dismissed as to Hansen.

### A. The Section 18 Claim is Barred By the Statute of Limitations

Under Section 18, "no action shall be maintained to enforce any liability created under [Section 18] unless brought within one year after the discovery of the facts constituting the cause of action and within three years after such cause of action accrued." 15 U.S.C.S. § 78r(c). In determining when the statute of limitations began to run in a Section 18 case, the courts must first ask when plaintiffs had "inquiry notice" of the alleged misconduct and whether plaintiffs in their exercise of reasonable diligence should have discovered the facts constituting their claim. *Betz v. Trainer Wortham & Co.*, 504 F.3d 1017-1024-25 (9th Cir. 2007); *Kelley*, 2008 U.S. Dist. LEXIS 100319 at *32. The question of whether plaintiffs conducted a reasonable investigation is "suitable for resolution as a matter of law where (1) the investor is "experienced" or "sophisticated"; (2) the defendants made no reassurances; or (3) the "total[ity] of the

circumstances" otherwise indicates that there were no disputed material facts. *Kelley*, 2008 U.S. Dist. LEXIS 100319 at *32 (*citing Betz*, 504 F.3d at 1025 n.4, 1027). As compared to fraud-based securities claims, far less is required to alert one to a potential Section 18 claimant such that a lower standard need be met for establishing whether Plaintiffs had "inquiry notice" of a Section 18 claim against Hansen. *Id.* at *33.

Accepting the Complaint's allegations on their face, Plaintiffs had notice of a potential claim against Hansen as a result of the 2008 report by KPMG. On April 1, 2009, the Company filed its 10-K with the KPMG audit report for fiscal year 2008. KPMG also issued a report regarding the Company's internal controls (the "Internal Controls Report"). AC ¶ 118; *see also* Original Complaint ¶ 41. The Internal Controls Report stated, *inter alia*,

> Material weaknesses have been identified and included in management's assessment related to the lack of adequate policies, procedures and personnel to address the accounting for and disclosures of non-routine transactions and the Company's internal control over the accounting for income taxes.
>
> . . .
>
> In our opinion, because of the effect of the aforementioned material weaknesses on the achievement of the objectives of the control criteria, ShengdaTech, Inc., and subsidiaries have not maintained effective internal control over financial reporting as of December 31, 2008....

This Court need not conduct an inquiry as to whether these disclosures by KPMG constituted notice. Plaintiffs have affirmatively pled that they were put on notice by these disclosures. In the Complaint, Plaintiffs state that KPMG HK's warning about material weaknesses in ShengdaTech's internal controls raised serious questions about the "rigor that Hansen applied in auditing the Company's 2007 Financial Statements and the basis upon which it opined that such statements presented the company's financial position and the results of its operations in accordance with GAAP and that the Company had effective internal controls over its financial reporting." AC ¶ 121; Original Complaint ¶ 41. Plaintiffs further contend that KPMG HK's disclosure indicated that the presence of the material weaknesses in a company's

internal controls created "a reasonable possibility that a material misstatement of the company's annual or interim financial statements would not be prevented or detected on a timely basis." AC ¶ 118. Plaintiffs note that KPMG HK's determination "strongly suggests" that "Hansen did not have a reasonable basis for issuing the [2007 Audit Opinion]" and were "negligent, at best, in not discovering the falsity of the Company's financial statements during their audits." AC ¶ 119. Effectively, Plaintiffs are announcing in the Complaint that Plaintiffs had notice of the exact conclusory allegations now made against Hansen. Plaintiffs, sophisticated institutional investors, affirmatively allege that they "read and relied" upon KPMG HK's audit report and thus allege that they were put on notice to potential issues in Hansen's audit.

This situation is like the case in *Kelley*, supra. In *Kelley*, the Court read the plaintiffs' complaint to concede "inquiry notice" by pleading that they "became highly suspicious of Rambus's option grants" well before the statutory cutoff date. *Id.* at *34. Specifically, the complaint noted that the 2000 and 2001 losses "caused the plaintiffs to examine closely the option grants and compensation expenses reported in [the Proxy Statements] in making and retaining Rambus securities in 2005 and 2006." *Id.* Here, Plaintiffs similarly concede inquiry notice.

As detailed by Plaintiffs' own allegations, investors were on notice as of the filing of the material weaknesses report on April 1, 2009 that there was a reasonable possibility of a material misstatement in the company's audited financial statements from the previous year. Like *Kelley*, the Plaintiffs here essentially allege that KPMG HK's disclosure would have caused Plaintiffs, as sophisticated institutional investors, to be suspicious. Plaintiffs are experienced and sophisticated institutional investors who had three years from the date of KPMG's Internal Controls Report to exercise "reasonable due diligence" to determine if a claim exists as to Hansen. As Plaintiffs concede notice on the face of the Complaint, there is no need to conduct a factual inquiry as to whether the circumstances could be interpreted to give rise to inquiry notice.

Moreover, Plaintiffs' allegations of actual 'eye-ball' reliance undercut any argument that they were not on inquiry notice in 2009. Plaintiffs allege that they "read and relied on" ShengdaTech's 2008 Financial Statements contained in the 2008 10-K, as well as [KPMG HK's] unqualified audit opinion." AC ¶ 147. Plaintiffs simply cannot allege ignorance without undercutting their own allegations of actual reliance. This is beyond traditional "inquiry notice." Plaintiffs had actual notice. If there is any merit to Plaintiffs' claims, which there is not, Plaintiffs had notice of those claims years before this lawsuit was filed.

Therefore, because Plaintiffs, by their own admission, were on inquiry notice more than three years before the action was commenced, the claim against Hansen is untimely.

Regardless, all claims relating to purchases before March 14, 2009 are barred by the statute of repose. Claims pursuant to Section 18 are barred unless brought "within three years after such cause of action accrued." 15 U.S.C.S. § 78r(c). For statute of limitations purposes, this action is deemed commenced on March 14, 2012.[3] Thus any claims relating to purchases of the Notes prior to March 14, 2009 are barred. The 6.0% Note offering occurred in 2008 and the Complaint conveniently omits the dates on which any of the Plaintiffs purchased these notes. However, it is fair to assume that the purchases occurred shortly after the May 2008 Notes Offering and would have occurred prior to March 14, 2009. Therefore, those claims are time barred.

## B. The Section 18 Claim Is Subject to Heightened Pleading Standards

Although not an element of a Section 18 claim, when allegations of fraud permeate the complaint, the pleading is subject to a heightened pleading requirement under both Rule 9(b) and

---

[3] The Parties entered into a stipulation tolling the statute of limitations from March 15 through June 6, 2012, the actual date the action was commenced.

the Private Securities Litigation Reform Act. *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1104-5 (9th Cir. 2003); *Desaigoudar v. Meyercord*, 223 F.3d 1020, 1022-23 (9th Cir. 2000).

Indeed, courts in the Ninth Circuit have applied Rule 9(b) to Section 18 claims against auditors. *Kelley*, 2008 U.S. Dist. LEXIS 100319, *10 (aff'd by *Kelly v. Rambus, Inc.*, 384 Fed. Appx. 570 (9th Cir. 2010)). A court must determine the applicability of Rule 9(b) by examining the actual substance of the pleadings. *Vess*, 317 F.3d at 1103-05.

In addition to satisfying Rule 9(b), a plaintiff bringing a Section 18 claim must meet the PSLRA's "exacting pleading requirements." *See Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308 (2007); *Kelley*, 2008 U.S. Dist. LEXIS 100319, *10 (applying PSLRA to Section 18(a) claims); *Deephaven Private Placement Trading Ltd. v. Grant Thornton & Co.*, 454 F.3d 1168, 1172 (10th Cir. 2006) (applying PSLRA to Section 18(a) claim). "The PSLRA requires a heightened pleading standard for allegations regarding misleading statements and omissions that is similar to the heightened pleading standard as required under Rule 9(b)." *In re Hansen Natural Corp. Sec. Litig.*, 527 F. Supp. 1142 (C.D. Cal. 2007); *see also Teamsters Local 617 Pension Funds v. Apollo Group, Inc.*, 633 F.Supp.2d 763 (D. Ari. 2009).

Here, the complaint is permeated with allegations of fraudulent conduct by Hansen, ShengdaTech and other defendants. For example, Plaintiffs allege that ShengdaTech was a "sham," that the Company engaged in a "massive fraud through the loss period," that the auditors "turned a blind eye to [the Company's rampant] financial fraud," that "ShengdaTech's financial records were falsified" that the relevant audit opinions contained false and misleading statements and that the Defendants' conduct "fraudulently creat[ed] a market for the Notes…." *See e.g.*, AC ¶¶ 12, 45, 63, 69, 129. Plaintiffs have clearly attempted to allege a "uniform course of fraudulent conduct" such that the Complaint is subject to the heightened pleading requirements embodied in Rule 9(b) and the PSLRA.

**C. The Complaint Fails to Sufficiently Identify a False Statement by Hansen**

i. *Plaintiffs Must Plead, with Particularity, that Hansen's Opinions were false or lacked a reasonable basis*

To allege a false statement in a Section 18 claim, pursuant to Rule 9(b) and under the PSLRA, Plaintiffs must "specify each statement alleged to have been misleading, the reason or reason why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed." 15 U.S.C. § 78u-4(b)(1). In a Section 18 claim, as brought here, to plead that an audit opinion is false and misleading, plaintiffs must generally allege either (1) that the auditor did not believe its audit opinions were true at the time they were made, or (2) that it did not have a reasonable basis for its audit opinions. *See Kelley*, 2008 U.S. Dist. LEXIS 100319 at *41 (aff'd by *Kelley*, 384 Fed. Appx. 570).

Because assertions of GAAS and GAAP compliance are statements of opinion, "Plaintiffs must allege subjective falsity, that [the auditor] did not believe, or had no reasonable basis to believe, that it complied with GAAS and that [the Company] complied with GAAP." *Buttonwood Tree Value Partners, LP v. Sweeney*, 2012 U.S. Dist. LEXIS 80118, *5 (C.D. Cal. June 7, 2012). In other words, "where a plaintiff challenges an opinion statement under the securities law, the plaintiff must allege with particularity that the defendant believed his or her opinion was false." *Id.* "An auditor's report is a statement of professional opinion, not fact." *Id; Deephaven Private Placement Trading Ltd., v. Grant Thornton & Co.*, 454 F.3d 1168, 1174 (10th Cir. 2006); *see also SEC v. Arthur Young & Co.*, 590 F.2d 785, 788-89 (9th Cir. 1979) ("an accountant is not a guarantor of the reports he prepares").

Plaintiffs fail to allege that Hansen, in early 2008, "did not believe its audit opinions were true" and fail to allege that Hansen had "no reasonable basis for its audit opinions" at that time. Plaintiffs' only factual allegations are that the underlying financial statements did not comply

with GAAP and that Hansen's audit violated GAAS. Plaintiffs simply do not, and cannot allege, with particularity, that these opinions of GAAS and GAAP compliance were false or lacked a reasonable basis. Indeed, Plaintiffs' allegations regarding these opinions of compliance are based upon Plaintiffs' information and belief. In other words, Plaintiffs merely make assumptions based on disclosures that occurred more than three years after the Hansen opinions.

As Plaintiffs' allegations are based upon "information and belief," the PSLRA's standard for pleading falsity is particularly stringent and Plaintiffs must allege "with particularity all facts on which that belief is formed." 15 U.S.C. § 78u–4(b)(1)(B); *Reese v. BP Exploration (Alaska) Inc.*, 643 F.3d 681, 690 (9th Cir. 2011). Plaintiffs "must provide, in great detail, all the relevant facts forming the basis of [their] belief." *In re Silicon Graphics Inc. Sec. Litig.*, 183 F.3d 970, 985 (9th Cir. 1999) (superseded by statute on other grounds) "It is not sufficient for a plaintiff's pleadings to set forth a belief that certain unspecified sources will reveal, after appropriate discovery, facts that will validate [their] claim." *Id.* Such "fishing expeditions" are improper.

*ii. ShengdaTech's Alleged GAAP Violations are Insufficient to Demonstrate a Misstatement by Hansen*

Under Section 18, it is not a false statement to issue a clean audit opinion for financial statements that do not comply with GAAP. "Outside auditors may not be held liable under § 18(a) for misstatements in the company's financial statements that were certified by the auditor." *Kelley*, 2008 U.S. Dist. LEXIS 100319, *40 (aff'd by *Kelly v. Rambus, Inc.*, 384 Fed. Appx. 570 (9th Cir. 2010)). Outside auditors are not liable for such statements under § 18(a) because:

> [A]uditors do not 'certify' a company's financial statements in the sense that they 'guarantee' or 'insure' them. Nor do they, by virtue of auditing a company's financial statements, somehow make, own or adopt the assertions contained therein.

*Id.* at *40-41 (*citing Deephaven*, 454 F.3d at 1174; *see also Arthur Young*, 590 F.2d at 788).

Recently, a California District Court confirmed, with respect to audit misrepresentations generally, that assertions of both GAAS and GAAP compliance "are matters of opinion, because both GAAS and GAAP are a collection of broad standards that are 'couched in rather general and in some cases inherently subjective terms." *Buttonwood,* U.S. Dist. LEXIS 80118, *6-*7.

The Tenth Circuit's decision in *Deephaven* is also particularly helpful in understanding the roles of auditors and the subsequent pleading requirements for a Section 18 claim. *Deephaven*, 454 F.3d at 1174. In *Deephaven*, the court examined the actual audit report submitted by the defendant auditor and noted that it can be separated into three sections, an introduction, a scope paragraph and finally, a conclusion paragraph setting forth the auditor's opinion. As the *Deephaven* court explained,

> The opinion paragraph, as the term suggests, is stated as an opinion of Grant Thornton rather than a statement of absolute fact or a guarantee. Moreover, the phrase "in our opinion" indicates that there may be some information risk associated with the 1999 financial statements, even though the statements have been audited.
>
> Investors conveniently attempt to read Grant Thornton's opinion that the 1999 financial statements present Daw's financial position fairly in conformity with GAAP as an isolated statement of material fact. That is, Investors attempt to characterize it as a categorical statement separate from its stated basis. The audit report does not, however, allow for such a cropped reading. To the contrary, the audit report must be read in its entirety. When so read, it is readily apparent that the introductory paragraph tethers Grant Thornton's opinion to its stated basis: Grant Thornton's factual assertion that its audits were performed in accordance with GAAS and therefore provide an adequate basis for its opinion. It is against this backdrop that we must assess whether the SAC satisfies the PSLRA's statement-reason-and-basis requirements.

The *Deephaven* court then explained that:

> … Because Grant Thornton's opinion is couched in terms of a stated basis, a claim that the former is false or misleading must necessarily specify the reason or reasons why in terms of the latter. Such a showing would, for example, specify how (1) Grant Thornton did not actually form its opinion regarding the 1999

> financial statements based on its audits; or (2) it did not have a reasonable basis for its opinion because it did not plan and perform its audits of the 1999 financial statements in accordance with GAAS.

Plaintiffs do not attempt to allege that Hansen did not believe its opinion, in March 2008, that ShengdaTech's 2007 financial statements complied with GAAP. Instead, Plaintiffs attempt to plead, utilizing conclusory allegations based on hindsight, that Hansen had no reasonable basis for that opinion. AC ¶¶ 119, 123 (Plaintiffs' allegations that Hansen lacked a reasonable basis for its March 14, 2008 opinion). Beyond boilerplate language and unrelated allegations pertaining to the Company's 2010 Financial Statements, the Amended Complaint fails to allege facts, which if true, would cause one to conclude that Hansen had no reasonable basis for its opinion that the underlying financial statements comply with GAAP.

*iii. Plaintiffs' Assertions of GAAS Violations are Insufficient to Demonstrate a Misstatement by Hansen*

As with purported GAAP violations, Plaintiffs must allege that Hansen did not believe, or had no reasonable basis to believe, its audit complied with GAAS. *Buttonwood*, 2012 U.S. Dist. LEXIS 80118, *5. Here, Plaintiffs' specific allegations of GAAS violations are insufficient. Plaintiffs merely allege that "the Auditor Defendants" non-compliance with GAAS left them without a reasonable basis upon which to form an opinion concerning whether the Company's financial statements were fairly presented in accordance with GAAP." AC ¶ 123. Plaintiffs allege that Hansen did not have a reasonable basis for its opinion because of the "material weaknesses" disclosed by KPMG HK in 2009 and because "ShengdaTech was later revealed to have misstated" its financial information. AC ¶¶ 119, 123. As to Hansen, the Complaint includes conclusory allegations that Hansen had no reasonable basis for its opinion on its own GAAS compliance because of alleged failures to verify assets and send confirmations. AC ¶¶ 104-110.

Plaintiffs do not, and cannot, allege with requisite particularity that Hansen lacked a reasonable basis for its opinion on March 14, 2008. Plaintiffs merely assume that Hansen had no reasonable basis for its opinion that its audit complied with GAAS because of events that occurred years after Hansen's audit. Plaintiffs rely on these assumptions but Plaintiffs' assumption that Hansen failed to verify assets in 2007 is either based upon nothing or the alleged discrepancies disclosed well after Hansen's audit regarding financial statements prepared years after Hansen's audit.

Plaintiffs must allege facts actually pertaining to the 2007 audit. For example, to establish an auditor's lack of a reasonable basis, a plaintiff could allege "red flags" that would have alerted an auditor that its opinion lacked a reasonable basis for its opinion when made. *See Kelley*, 2008 U.S. Dist. LEXIS 100319, *43 (*aff'd by Kelley*, 384 Fed. Appx. 570). In *Kelley*, a decision affirmed by the Court of Appeals for the Ninth Circuit, the plaintiffs brought a Section 18 claim against an auditor, PricewaterhouseCoopers, for its role as the outside auditor of Rambus, Inc., an entity that allegedly engaged in and concealed and extensive pattern of options backdating. *Kelley*, 2008 U.S. Dist. LEXIS 100319, *43. The Court found that the auditor potentially could not have had a reasonable basis for its opinion based upon "the combination of red flags and the sheer magnitude of the ultimate restatement of [the company]'s 2006 10-K." There, plaintiffs had alleged red flags and a restatement actually pertaining to the time period relevant to the auditor's opinion. Here, Plaintiffs allege nothing that would have alerted Hansen that its audit lacked a reasonable basis. Instead, Plaintiffs "guess" that Hansen must have failed to verify assets because of issues that arose in 2011.

Furthermore, in a futile effort to establish one "red flag," Plaintiffs assert that the alleged GAAS violations are particularly "egregious" because Hansen, in 2007, should have been on "heightened alert to the possibility of fraud" because ShengdaTech was a Chinese company that

accessed the U.S. markets by virtue of a reverse merger. *See* AC ¶ 111. This contention is mistaken and has already been rejected by recent decisions involving audits of Chinese companies prior to 2011. In *In re Advanced Battery Technologies*, the Court found that the mere fact that a Chinese company went public by virtue of a reverse merger transaction does not constitute a "red flag" for auditors between 2007 and 2009. *Advanced Battery Technologies*, 2012 U.S. Dist. LEXIS 123757, *58. The Court found that the complaint had "no allegation that it was industry standard to view reverse mergers, particularly those involving China-based operations, with skepticism from 2007-2009, the only dates relevant to [the auditor]." *Id.* The Court continued: "Rather, there were, and still are, completely legitimate reasons for a small company to access the equity markets through a reverse merger, e.g., to avoid the legal fees associated with a conventional IPO." *Id.* Here, like *Advanced Battery*, the Amended Complaint alleges that Chinese reverse mergers only came under scrutiny in 2011, more than three years after Hansen's audit. *See* AC ¶¶ 93-96 (citing scrutiny in "recent months," "June 2011" and "November 2011"). As such, the alleged GAAS violations are not "particularly egregious" and remain wholly insufficient to allege a false and misleading statement under Section 18.

Just as in *Deephaven* and *Buttonwood*, nowhere in the Amended Complaint are there any allegations that Hansen misstated its opinions on GAAP and GAAS compliance. Furthermore, Plaintiffs have not alleged specific facts indicating that Hansen did not have a reasonable basis for its opinions. Although Plaintiffs insert boilerplate language that Hansen did not conduct its audit in accordance with PCAOB standards such that the auditors lacked a reasonable basis to form an opinion (AC ¶ 123), they do not allege any facts, which if true, would cause one to conclude that Hansen had no reasonable basis for its opinion that the underlying financial statements complied with GAAP and that the audit complied with GAAS. Absent the requisite factual allegations, the Amended Complaint is deficient. Therefore, Plaintiffs' Section 18 claims should be dismissed.

**D. The Complaint Fails to Set Forth Facts Supporting Actual Reliance**

A Section 18 claimant must allege *actual* reliance on the relevant misstatements or omissions in purchasing or selling a security, and may not allege constructive or presumed reliance. *Howard v. Everex Sys., Inc.*, 228 F.3d 1057, 1065 (9th Cir. 2000); *Kelley*, 2008 U.S. Dist. LEXIS 100319, *48. The standard for pleading actual reliance in a Section 18 claim is demanding. "Conclusory assertions of reliance are insufficient, and plaintiffs must plead facts probative of their actual reliance on any specific false statement in the filings at issue." *Kelley*, 2008 U.S. Dist. LEXIS 100319, *48 (*citing In re Suprema Specialties, Inc. Sec. Litig.*, 438 F.3d 256, 284 (3d Cir. 2006)). "Statements to the effect that plaintiffs 'received, reviewed, actually read, and relied upon' certain financial documents, or 'actually read and relied upon [them] in making their decisions to invest in [company] common stock,' are inadequate." *Id*; *see also In re Washington Mut., Inc. Sec., Derivative & ERISA Litig.*, 2010 U.S. Dist. LEXIS 41773, *33 (W.D. Wash. April 28, 2010). Reliance cannot be presumed for a Section 18 claim. *Id.* Merely alleging to have read Forms 10-K and auditor certifications is insufficient. *Washington Mut.*, U.S. Dist. LEXIS 41173, *33. Plaintiffs must allege which specific documents they read, when they read them and how what they read impacted their decision to purchase or retain the Notes at issue. *Id.* Section 18 plaintiffs must also affirmatively allege that such reliance occurred "when he bought or sold the security at issue" and provide the accompanying factual allegations. *Id.* (*citing Ravenswood Inv. Co. v. Bishop Capital Corp.*, 374 F. Supp. 2d 1055, 1064 (D. Wy. 2005)).

Plaintiffs do not come close to meeting these standards. In each of the Section 18 claims, Plaintiffs merely allege that they "read and relied upon" the financial statements contained in ShengdaTech's 2007 10-K/A and the 2007 Audit Opinion. AC ¶¶ 138, 147, 156. These allegations are precisely the bare allegations that have been rejected as inadequate. Plaintiffs provide no factual allegations regarding what was relied upon in the audit opinions, how those

opinions were false and how their reliance led them to the purchase. Plaintiffs also fail to affirmatively allege that such reliance occurred when the Notes was bought or sold. Plaintiffs merely rely on the improper conclusory assertion that they "read and relied upon" the 2007 Audit Opinion. As has been held previously, boilerplate allegations of reliance will not be sufficient to state a Section 18 claim.

## E. Plaintiffs' Allegations of Loss Causation are Insufficient as Against Hansen

To allege loss causation, a plaintiff must "demonstrate a causal connection between the deceptive acts that form the basis for the claim…and the injury suffered by the plaintiff." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055-56 (9th Cir. 2008); *In re Redback Networks, Inc. Sec. Litig.*, 329 F. App'x 715, 717 (9th Cir. 2009) (affirming dismissal of Section 18 claim for failure to plead loss causation); *see* 15 U.S.C. § 78u-4(b)(4) (in private actions under this title, plaintiff must prove loss causation -- "that the act or omission of the defendant alleged to violate this title caused the loss for which the plaintiff seeks to recover damages").

Plaintiffs must set forth particular allegations as to "what the relevant economic loss might be," and "what the causal connection might be" between the fraud alleged and the economic losses actually suffered. *Dura Pharmaceuticals, Inc. v. Broudo*, 544 U.S. 336, 342, 347 (2005). The misrepresentation "need not be the sole reason for the decline in value of the securities, but it must be a 'substantial cause.'" *In re Gilead*, 536 F.3d at 1055-56. Plaintiffs must allege that "the practices that the plaintiff contends are fraudulent were revealed to the market and caused the resulting losses." *Meltzer Inv. GMBH v. Corinthian Colleges, Inc.*, 540 F.3d 1049, 1063 (9th Cir. 2008). With respect to auditor liability, the plaintiff must plead "that the market reacted negatively to some disclosure correcting the falsity" of the auditor's statements, and "not simply the underlying fraud." *Amorosa v. Ernst & Young, LLP*, 682 F.Supp.2d 351, 363 (S.D.N.Y.

2010). While a court assumes that the facts in a complaint are true, it is not required to indulge "unwarranted inferences in order save a complaint from dismissal." *In re Syntex Corp. Sec. Litig.*, 95 F.3d 922, 926 (9th Cir. 1996) ("[C]onclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss for failure to state a claim.").

Here, Plaintiffs are asking the Court to infer that the drop in stock price after the March 15, 2011 disclosure must mean that the 2007 Audit Report, filed three years before the disclosure, caused the fall in value of the Notes. Although these claims involve the Company's Notes rather than its stock price, Plaintiffs apparently plead loss causation through a drop in stock price accompanying certain disclosures. However, nothing in the disclosures implicates or relate to Hansen or its audits.

The March 15, 2011 disclosure, as alleged in the Complaint, revealed the fact that the Company established a Special Committee to investigate "potentially serious discrepancies" uncovered by KPMG in conducting its 2010 audit. Nothing therein called into question Hansen's audit report from years prior. Thus, no drop in securities price triggered by this announcement could be logically or legally traced back to any representation by Hansen. In a futile effort to correct this deficiency in their Original Complaint, Plaintiffs merely refer to the March 15, 2011 disclosure as a "revelation" regarding ShengdaTech's financial statements for the years 2007 through 2009. AC ¶ 132. This is still insufficient. The disclosure did not reveal anything about the 2007 financial statements. The disclosure explicitly refers only to KPMG's ongoing audit of the 2010 financial statements. It cannot logically follow that a disclosure pertaining to the 2010 financial statements automatically implicates every audit since the Company's inception.

Similarly, the April 29, 2011 8-k filed by the Company did not mention anything having to do with Hansen or its audit. In fact, the filing and related press release identified ongoing issues concerning cooperation of management and late filings as the cause of the stock's delisting.

Again, no drop in securities price attributable to this filing or press release could relate in any way to anything Hansen did or said in connection with its 2007 year audit.

The May 5, 2011 disclosures are also unconnected to anything relating to Hansen's audit. Those disclosures detail management's continuing refusal to cooperate with the investigation, KPMG's resignation as auditors and KPMG's concerns about the company's 2010 financial statements. There is no mention of the Hansen audit report or the time period covered by that audit report. KPMG also withdrew its prior audit opinions because it found that management's conduct in 2011 caused KPMG to doubt the veracity of representations of management made previously to KPMG. Thus, KPMG withdrew all of its audit opinions for ShengdaTech. Again, nothing in this or any of the disclosures in 2011 or 2012 mentioned anything about Hansen or its audit period.

Plaintiffs must allege that the relevant corrective disclosure disclosed something about a defendant causing a loss. At minimum, Plaintiffs have clearly failed to allege that the 2007 Audit Report was a "substantial cause" for the decline in value. The disclosures occurred several years and multiple audit opinions after the 2007 Audit Report and Plaintiffs do not allege that the corrective disclosures specifically corrected any misstatement by Hansen regarding the Company's financial condition in 2007.

The Supreme Court has found that the loss causation requirement is designed "not to provide investors with broad insurance against market losses, but to protect them against those losses that misrepresentations actually cause." *Dura Pharms*., 544 U.S. at 345. It is contrary to the objectives of federal securities laws to allow Plaintiffs to allege causation as to everyone ever related to ShengdaTech.

As Plaintiffs fail to allege loss causation, their Section 18 claims must be dismissed.

**POINT II**

**PLAINTIFFS' STATE LAW CLAIMS MUST BE DISMISSED**

**A. The Court Should Decline to Exercise Supplemental Jurisdiction**

Plaintiffs assert subject matter jurisdiction based on a federal question, not diversity. AC ¶ 15. If the Court dismisses the federal claim against Hansen, as it should for the reasons set forth above, the Court should follow routine practice in such cases and decline to exercise supplemental jurisdiction over the state law claims. *See, e.g.,* 28 U.S.C. § 1367(c)(3). However, to the extent that this Court is inclined to assess the State Law claims, it will find that each of the State Law claims lack merit.

**B. The Common Law Negligent Misrepresentation Claims against Hansen Should Be Dismissed**

*i. Choice of Law - Utah Law Should Apply*

The Complaint is silent as to what state's common law should apply to this claim, however there are two clear possibilities: Nevada (the venue) or Utah (the state in which Hansen conducted its audits). A federal court in conducting a choice of law analysis utilizes the forum state's choice of law rules. Nevada has adopted the Restatement (Second) of Conflict of Laws as the relevant authority for choice-of-law jurisprudence in tort cases and the most significant relationship test of section 6 of the Second Restatement governs a choice-of-law analysis, unless another, more specific section applies. *Dictor v. Creative Mgmt. Servs., LLC*, 223 P.3d 332, 334 (2010). When there is no directive on choice of law, the relevant factors include: (a) the needs of the interstate and international systems; (b) the relevant policies of the forum; (c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue; (d) the protection of justified expectations; (e) the basic policies underlying the particular field of law; (f) certainty, predictability and uniformity of result; and (g) ease in the

determination and application of the law to be applied. *Id.* The Supreme Court of Nevada has determined that additional comments in the Second Restatement support the position that the law of the state where the parties are domiciled, rather than the local law of the state of conduct and injury, may be applied to determine whether one party is immune from tort liability. *Id.* at 336.

The Hansen audit was conducted primarily in Utah. Hansen's accountants are regulated by the State of Utah. Hansen's accountants have to maintain continuing professional education requirements in accordance with the rules set forth by the State of Utah. As Utah based accountants, they would expect that Utah law would apply to their conduct. Because the claim arises from conduct that occurred, for the most part, in Utah, Utah law should apply. Moreover, it is in the best interests of the state of Utah to regulate the professionals licensed to practice in their state.

The only connection to Nevada is that ShengdaTech, a non-party, is a Nevada Corporation, that Plaintiffs chose this venue and that one of the eight Plaintiffs, Zazove Associates LLP, is located in Nevada. *See* AC ¶¶ 17-26 (the remaining seven Plaintiffs are located in California, New York, Connecticut, Delaware and Bermuda). At no time did the Hansen accountants contemplate that their conduct would be governed by Nevada law. Indeed, if an accountant had to be concerned about being sued under any state's law simply because it conducted an audit, the cost to the audit community to ensure compliance would be prohibitive.

Therefore, Utah state law should apply to the common law claim.

*ii. Causes of Action*

As against Hansen, Plaintiffs have brought two causes of action for common law negligent misrepresentation. First, Plaintiff CNH Partners LLC has brought a claim for its purchase of 6.0% Notes in the May 2008 6.0% Notes Offering. AC ¶¶ 169-177. CNH is the only

party who purchased these Notes from the 6.0% Notes Offering. AC ¶ 22. A Connecticut entity, CNH has also brought a claim under Connecticut Securities Law. Second, Plaintiffs have brought a claim for negligent misrepresentation relating to the purchase of 6.5% Notes in the December 2010 6.5% Notes Offering. AC ¶¶ 178-188.

*iii. Plaintiff Fails to Allege Privity*

In Utah, to prevail under a claim for negligent misrepresentation, a plaintiff must demonstrate the existence of a duty running between the parties. *Smith v. Frandsen*, 94 F.3d 919, 923 (Utah 2004). *Smith v. Frandsen*, 94 F.3d 919, 923 (Utah 2004); *Aclys Int'l v. Equifax*, 438 Fed. Appx. 689 (10th Cir. 2011). The question of whether a duty exists is a question of law and involves the examination of the legal relationships between the parties. *Davencourt at Pilgrims Landing Homeowners, Ass'n*, 221 P.3d 234, 244 (Utah 2009).

In 2000, Utah enacted the Accountancy Practice Act, which provides:

> A licensee, a CPA firm registered under this chapter, and any employee, partner, member, officer, or shareholder of a licensee or CPA firm *are not liable to persons with whom they are not in privity of contract* for civil damages resulting from acts, omissions, decisions, or other conduct in connection with professional services performed by that person, except for:
>
> > (1) acts, omissions, decisions, or conduct that constitute fraud or intentional misrepresentations; or
> >
> > (2) other acts, omissions, decisions, or conduct, if the person performing the professional services:
> >
> > > (a) knew that a *primary intent* of the client was for the professional services to benefit or influence the *particular* person seeking to establish liability; and
> > >
> > > (b) identified in writing to the client that the professional services performed on behalf of the client were intended to be relied upon by the particular person seeking to establish liability.

Utah Code Ann. § 58-26a-602 (2012) (emphasis added); *see also In re No. 1 International, Inc.*, 2010 U.S. Dist. LEXIS 84323 (D. Utah 2010).

Plaintiffs do not, and cannot, allege that they were in privity of contract with Hansen and it is clear that neither exception applies. First, Plaintiffs have brought a negligent misrepresentation claim, which clearly does not constitute fraud or intentional misrepresentations. Second, with respect to the second exception, Plaintiffs have not, and cannot, allege that (a) ShengdaTech's *primary* intent was for the professional services to benefit or influence these particular purchasers of the notes and (b) Hansen "identified in writing" that the 2007 Audit Opinion was intended to be relied upon by specific purchasers of future notes. As the Plaintiffs are not in privity of contract with Hansen and the relationship is not in accordance with the Utah Accountancy Practice Act, the negligent misrepresentation claims are improper.

Plaintiffs have apparently drafted the Complaint around the "foreseeability" standard that has been superseded by the more stringent "contractual privity" standard set forth in the Accountancy Practice Act. Regardless, even under that standard, Plaintiffs were not foreseeable. Prior to the enactment of the Act, Utah courts found that accountants may only be held liable for negligent misrepresentation to its client and reasonably foreseeable third parties and is not liable an "unlimited class of third parties, i.e., purchasers of client's stock." *Milliner v. Elmer Fox & Co.*, 529 P.2d 806, 808 (Utah 1974). "A future purchaser of shares of stock of a corporation, however, belongs to an unlimited class of equity holders who could not be reasonably foreseen as a third party who would be expected to rely on a financial statement prepared by an accountant for the corporation." *Milliner*, 529 P.2d at 808.

Here, Plaintiffs merely allege that the purchasers were foreseeable because the auditors knew their Notes Offering memoranda "would be disseminated to a limited group of *potential*

purchasers." AC ¶¶ 172-173, 182- 183 (emphasis added). In the Amended Complaint, Plaintiffs add the detail that the offerings were only open to "qualified institutional buyers." AC ¶ 183. The mere fact that "potential" purchasers are an unknown group clearly does not satisfy the foreseeability standard. Utah courts, prior to the enactment of the Accountancy Practice Act, were clear that purchasers, even if foreseeable as a "group," are nevertheless an unlimited field and that accountants do not owe a duty to such an unlimited group. *Id.* The purchasers of the Notes were *potential* purchasers and the exact kind of future purchaser that belongs to an unlimited class and may not bring a negligence based claim against Utah accountants.

Regardless, the foreseeability standard has been superseded by the more stringent requirement of contractual privity in the Accountancy Practice Act. As Plaintiffs do not allege contractual privity, their fifth and sixth Claims for Relief must be dismissed.

In the Amended Complaint, Plaintiffs also allege that the auditors owed a "special duty" to plaintiffs as they were "potential investors." AC ¶ 102. Although it is unclear whether Plaintiffs believe this "special duty" creates privity, there is no support for such a "special duty" under Utah law, Nevada law or any other state's law Plaintiffs may seek to utilize.

Additionally, and separately requiring dismissal, the negligent misrepresentation claim is premised on an allegation of reasonable reliance by the Plaintiffs. As discussed above, once the KPMG Internal Controls Report was filed which, according to Plaintiffs, raised "serious questions about the rigor Hansen applied auditing the Company's financial statements," no future investor can legitimately claim to have reasonably relied upon the Hansen report. Therefore, any purchaser who purchased notes after April 1, 2009 (the date of the KPMG report), can not state a claim for negligent misrepresentation. Because the 6.5% Notes were not offered until late 2010, any negligent misrepresentation claim brought by purchasers of those notes is not supported by the facts alleged and should be dismissed.

**D. The Claim under Section 36b-29 of the Connecticut Securities Law and Business Opportunity Investment Act Should Be Dismissed**

Plaintiffs CNH Partners LLC and AQR Capital Management, the Connecticut-based Plaintiffs, have brought a claim under Section 36b-29 of the Connecticut Uniform Securities Law. Section 36b-29 attaches liability to any person who "offers or sells or materially assists any person who offers or sells a security by means of any untrue statement of a material fact or any omission to state a material fact necessary in order to make the statements made." Conn. Gen. Stat. § 36b-29(a). This claim must be pled with particularity under FRCP 9(b). *See IM Partners v. Debit Direct Ltd.*, 394 F.Supp.2d 503, 518 (D. Conn. 2005). The Connecticut Plaintiffs' claims are time-barred and fail to allege the necessary primary violation and material assistance.

*i. Connecticut Plaintiffs' Claim under Section 36b-29 is Time-barred*

Under Conn. Gen. Stat. § 36b-29, no person may bring an action "more than two years after the date of the contract of sale or of the contract for investment advisory services, except that with respect to actions arising out of intentional misrepresentation or fraud in the purchase or sale of securities, no person may bring an action more than two years from the date when the misrepresentation or fraud is discovered or in the exercise of reasonable care should have been discovered, except that no such action may be brought more than five years from the date of such misrepresentation or fraud." Conn. Gen. Stat. § 36b-29(f).

Plaintiffs are alleging that Hansen materially assisted ShengdaTech's fraud in the sale of securities (or Notes). Again, Plaintiffs had inquiry notice of a potential claim on April 1, 2009, almost three years before the statute of limitations was tolled on March 15, 2012. As such, the statute of limitations under Section 36b-29 ran on April 1, 2011, almost a year prior to the operative filing date.

To the extent that Plaintiffs will argue that this is not a claim based on fraud, then they would have only 2 years from their purchase of the securities at issue to bring suit. Or put conversely, any purchase made prior to March 14, 2010 is time barred.

*ii. Plaintiffs Fail to Allege a Primary Violation*

Plaintiffs allege that Hansen materially assisted ShengdaTech in selling the 6.0% and 6.5% Notes. However, Plaintiffs have failed to allege a primary violation, a prerequisite to any claim of material assistance. *See Conn. Nat'l Bank v. Giacomi*, 242 Conn. 17, 46 (1997). Plaintiffs fail to allege a primary violation against any seller of ShengdaTech's 6.0% and 6.5% Notes in either the sale of the Notes Offerings or the purchases made on the secondary market. As such, this claim should be dismissed. At the very least, the Court should dismiss the claim to the extent it is based on purchases on the secondary market because Hansen cannot be said to have materially assisted unidentified secondary market sellers.

*iii. Plaintiffs Fail to Allege "Material Assistance"*

To be liable under Section 36b-29, Plaintiffs must allege that Hansen "materially assisted" ShengdaTech's alleged fraud. In 1997, the Connecticut Supreme Court clarified the relevant standard for what constitutes "material assistance" under the statute. *Giacomi*, 242 Conn. at 47; *see also Farlander v. Mitchell*, 2007 Conn. Super. LEXIS 1721, *9 (Conn. Sup. Ct. 2007). The Court found that (under the Former Section 36-498(a)(2)):

> In order for conduct to violate this section as "material assistance," to which we refer as aiding and abetting, it must also be proven that the aider or abettor materially assisted the primary violator: (1) in the offer or sale; and (2) in the violation by which the primary violator accomplished the offer or sale. In addition to the foregoing elements of proof, the buyer must also meet a burden of production concerning the issue of whether the aider and abettor knew or should have known of the untruth or omission.

The *Giacomi* court also quotes the U.S. Supreme Court in *Kungys v. United States* for the proposition that "aid is material if it has a natural tendency to influence, or was capable of influencing, the decision of the purchaser." *Giacomi*, 242 Conn. 17, 53.

The initial burden is on the buyer to show that alleged aider and abettor knew or should have known of the untruth or omission. *Id.* The Connecticut Supreme Court cited what they found to be a "desire on the part of the legislature to provide some additional protection to those persons alleged to be aiders and abettors, namely, that the plaintiff will have to produce some evidence relevant to the aider and abettor's knowledge of the untruth or omission before that issue gets to the fact finder." *Id.* at fn. 34. "A simple pleading of knowledge will not suffice." *Id.*

Plaintiffs fail to allege facts establishing material assistance and that Hansen knew or should have known of the alleged misrepresentations and omissions. Plaintiffs allege that "Hansen and KPMG materially assisted ShengdaTech in selling the 6.5% Notes." *See* AC ¶ 215. To support their allegation of material assistance, Plaintiffs note that the auditors' role as outside auditors assumed "special importance" because "ShengdaTech accessed the United States capital markets via a 'reverse merger' transaction, a process that allowed ShengdaTech to sell its securities publicly without undergoing the due diligence typically performed by underwriters in advance of an initial public stock offering…". *See* AC ¶ 215. Again, the mere fact that a Chinese company entered the U.S. market via a "reverse merger" does not establish that it was "industry standard to view reverse mergers, particularly those involving China-based operations, with skepticism from 2007-2009." *Advanced Battery*, 2012 U.S. Dist. LEXIS 123757, *58.

Further, if entering the market through a reverse merger should have raised Hansen's skepticism, then it should also have raised these professional investment advisors' skepticism. They cannot on the one hand claim that it was well known that Chinese companies entering U.S. markets via a reverse merger were potentially committing fraud such that Hansen should have

viewed it as a red flag, while at the same time having the exact same knowledge of the China-based reverse merger claimed that they had no reason to suspect potential fraud. It is either a red flag for all or for none. Fortunately for Plaintiffs' liability carriers, courts have already determined that it was not a red flag. *See In re Advanced Battery*, supra.

Moreover, such "special importance" does not imply that an auditor "materially assisted" in a fraud. Plaintiffs assert no facts of aiding and abetting a fraud beyond the fact that Hansen had once prepared an audit report that was included in an offering three years in the future. Finally, Plaintiffs note, in a conclusory assertion that Hansen "should have known" that the Company's financial statements were materially false and misleading. AC ¶ 216. Such a bare and unsupported allegation is insufficient. *Giacomi*, 242 Conn. at 47, fn. 34 (burden is on plaintiff to allege facts supporting knowledge and a simple pleading of knowledge will not suffice).

As such, Plaintiffs' tenth Claim for Relief must be dismissed as to Hansen.

## CONCLUSION

For all the foregoing reasons, defendant Hansen respectfully requests the Court to dismiss all of the claims as against Hansen in their entirety, and with prejudice.

Dated: January 7, 2013

Respectfully submitted,

WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER LLP

By: */s/ David S. Kahn*
David S. Kahn
300 South 4th Street
Las Vegas, NV 89101

Peter J. Larkin
William J. Kelly
Benjamin A. Tulis
Admitted *Pro Hac Vice*
3 Gannett Drive
White Plains, NY 10604