CAMPBELL & WILLIAMS
Donald J. Campbell
Nevada Bar # 1216
J. Colby Williams
Nevada Bar # 5549
700 S. Seventh Street
Las Vegas, NV 89101
Telephone: (702) 382-5222
Facsimile: (702) 382-0540
Email: djc@campbellandwilliams.com
jcw@campbellandwilliams.com

BINGHAM MCCUTCHEN LLP
Edward S. Kim (*Admitted Pro Hac Vice*)
(CA Bar #192856)
Craig A. Taggart (*Admitted Pro Hac Vice*)
(CA Bar #239168)
600 Anton Boulevard
Suite 1800
Costa Mesa, California 92626-7653
Telephone: 714.830.0600
Facsimile: 714.830.0700
Email: edward.kim@bingham.com
craig.taggart@bingham.com

BINGHAM McCUTCHEN LLP
Geoffrey F. Aronow (*Admitted Pro Hac Vice*)
(DC Bar #362321)
2020 K Street NW
Washington, DC 20006-1806
Telephone: (202) 373-6000
Facsimile: (202) 373-6001
Email: geoffrey.aronow@bingham.com

Attorneys for Defendant
KPMG HK

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| OAKTREE CAPITAL MANAGEMENT, L.P., on behalf of its managed funds and accounts, LAZARD ASSET MANAGEMENT LLC, on behalf of its managed funds and accounts, ANGELO, GORDON & CO., L.P., on behalf of one of its managed funds, ZAZOVE ASSOCIATES LLC, on behalf of certain of its managed funds and accounts, CNH PARTNERS, LLC, on behalf of its managed funds, ADVENT CAPITAL MANAGEMENT, LLC, on behalf of one of its managed funds, AQR CAPITAL MANAGEMENT, LLC, on behalf of its managed funds, HFR CA LAZARD RATHMORE MASTER TRUST, | Case No. 12-CV-00956-JCM-(GWF)<br><br>**KPMG HK'S MOTION TO DISMISS AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' CONSOLIDATED AMENDED COMPLAINT**<br><br>Judge: The Honorable James C. Mahan |

and DELAWARE PUBLIC EMPLOYEES' RETIREMENT SYSTEM,

Plaintiffs,

v.

KPMG, KPMG INTERNATIONAL COOPERATIVE, KPMG LLP, HANSEN, BARNETT & MAXWELL, P.C., and MORGAN STANLEY & CO.,

Defendants.

## TABLE OF CONTENTS

**Page**


MEMORANDUM OF POINTS AND AUTHORITIES ..... 2

I. INTRODUCTION ..... 2

II. SUMMARY OF PROCEEDINGS AND ALLEGATIONS ..... 4

- A. ShengdaTech Issues 6.0% and 6.5% Notes ..... 5
- B. KPMG HK Discovers Discrepancies and Unexplained Issues During The Audit of the Company's 2010 Financial Statements and Withdraws as the Company's Auditor ..... 6
- C. Plaintiffs Initiate This Lawsuit, Attempt to Circumvent The Statutory Discovery Stay and Amend Their Complaints ..... 8

III. CERTAIN PLAINTIFFS' FAILURE TO PLEAD VALID ASSIGNMENTS OF CLAIMS DEPRIVES THEM OF STANDING TO BRING SUIT ON BEHALF OF THEIR CLIENTS AND THE FUNDS THEY MANAGE ..... 10

- A. Plaintiffs Lack Standing to Sue on Behalf of Funds They Manage ..... 10
- B. Plaintiffs Lack Standing to Sue on the Claims that are Purportedly Assigned Because They Fail to Plead Valid Assignments ..... 12

IV. PLAINTIFF DPERS' SECTION 18 CLAIMS ARE BARRED BY THE STATUTE OF LIMITATIONS ..... 13

V. PLAINTIFFS FAIL TO STATE A CLAIM FOR VIOLATION OF SECTION 18 OF THE EXCHANGE ACT AGAINST KPMG HK ..... 14

- A. Plaintiffs Fail to Plead Falsity Sufficiently ..... 15
  1. Plaintiffs' Information and Belief Allegations are Deficient ..... 19
  2. Plaintiffs Fail to Allege Facts Establishing that KPMG HK Failed to Comply with GAAS ..... 21
  3. Plaintiffs Fail to Allege Any Actionable GAAP Violations in ShengdaTech's 2008 and 2009 Financial Statements ..... 25
  4. Plaintiffs Fail to Allege Facts Establishing that KPMG HK's Internal Controls Opinion Was False ..... 27
  5. Plaintiffs Fail to Allege Facts Establishing that KPMG HK's Audit Opinions Were Subjectively False ..... 29
- B. Plaintiffs Fail to Plead Reliance Sufficiently ..... 30
- C. Plaintiffs Fail to Plead Loss Causation Sufficiently ..... 32

VI. THE COURT SHOULD DISMISS PLAINTIFFS' STATE LAW CLAIMS FOR LACK OF JURISDICTION IF IT DISMISSES THE SECTION 18 CLAIMS ..... 34

VII. PLAINTIFFS FAIL TO STATE A CLAIM FOR VIOLATIONS OF CONNECTICUT'S SECURITIES ACT ..... 34

- A. Plaintiffs Fail to Plead a Primary Violation ..... 35
- B. Plaintiffs Fail to Allege that KPMG HK Materially Assisted Any Sale of Securities ..... 35

**TABLE OF CONTENTS**
(continued)

**Page**

VIII. PLAINTIFFS' NEGLIGENT MISREPRESENTATION CLAIM SHOULD BE DISMISSED .......... 36
A. Plaintiffs' Claims Should Be Dismissed to the Extent They are Based on Assigned Claims .......... 37
B. Plaintiffs Fail to Allege that KPMG HK Owed It Any Duty .......... 37
C. Plaintiffs Fail to Allege that KPMG HK Did Not Exercise Reasonable Care .......... 38
D. Plaintiffs Fail to Allege an Untrue Statement, Reliance and Causation .......... 39
IX. CONCLUSION .......... 39

## TABLE OF AUTHORITIES

**Page(s)**

**FEDERAL CASES**

*Alaska Elec. Pension Fund v. Adecco S.A.*, 434 F. Supp. 2d 815 (S.D. Cal. 2006) ........ 27

*Amorosa v. Ernst & Young LLP*, 682 F. Supp. 2d 351 (S.D.N.Y. 2010) ........ 33

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ........ 15, 31

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ........ 15, 31

*Belmont Holdings Corp. v. SunTrust Banks, Inc.*, 1:09-CV-1185-WSD, 2012 WL 4096146 (N.D. Ga. Aug. 28, 2012) ........ 19, 30

*Buttonwood Tree Value Partners, LP v. Sweeney*, SACV 10-00537-CJC, 2012 WL 2086607 (C.D. Cal. June 7, 2012) ........ 29

*Buttonwood Tree Value Partners, LP v. Sweeney*, SACV10-00537-CJC, 2012 WL 6644397 (C.D. Cal. Dec. 10, 2012) ........ 30

*Capital Ventures Int'l v. Network Commerce, Inc.*, C02-0682L, 2006 WL 681033 (W.D. Wash. Mar. 16, 2006) ........ 23

*Carlsbad Technology, Inc. v. HIF Bio, Inc.*, 556 U.S. 635 (2009) ........ 34

*Copper Sands Homeowners Ass'n. Inc. v. Copper Sands Realty, LLC*, 2:10-CV-00510-GMN, 2012 WL 987996 (D. Nev. Mar. 20, 2012) ........ 37

*D.E.&J Ltd. P'ship v. Conaway*, 284 F. Supp. 2d 719 (E.D. Mich. 2003) ........ 21, 23

*Deephaven Private Placement Trading, Ltd. v. Grant Thornton & Co.*, 454 F.3d 1168 (10th Cir. 2006) ........ passim

*Denney v. Deutsche Bank AG*, 443 F.3d 253 (2d Cir. 2006) ........ 34

*Dobina v. Weatherford Int'l Ltd.*, 11 CIV. 1646 LAK, 2012 WL 5458148 (S.D.N.Y. Nov. 7, 2012) ........ 17

**TABLE OF AUTHORITIES**
(continued)

**Page**

*Dronsejko v. Thornton*,
632 F.3d 658 (10th Cir. 2011) .......... 17

*Edward J. Goodman Life Income Trust v. Jabil Circuit, Inc.*,
595 F. Supp. 2d 1253 (M.D. Fla. 2009) .......... 18, 21, 25, 28

*Halpern v. Lightyear Network Solutions, Inc.*,
2:12-CV-340 JCM RJJ, 2012 WL 4482680 (D. Nev. Sept. 26, 2012) (Mahan, J.) .......... 15, 34

*Hildes v. Andersen*,
08-CV-0008-BEN RBB, 2010 WL 4811975 (S.D. Cal. Nov. 8, 2010) .......... 34

*IM Partners v. Debit Direct Ltd.*,
394 F. Supp. 2d 503 (D. Conn. 2005) .......... 35

*In re A-Power Energy Generation Sys. Ltd. Sec. Litig.*,
MDL 11-2302-GW CWX, 2012 WL 1983341 (C.D. Cal. May 31, 2012) .......... 24

*In re AgriBioTech, Inc.*,
319 B.R. 207 (D. Nev. 2004) .......... 37

*In re AOL Time Warner, Inc. Sec. Litig.*,
503 F. Supp. 2d 666 (S.D.N.Y. 2007) .......... 33

*In re Brooms*,
447 B.R. 258 (B.A.P. 9th Cir. 2011) .......... 12

*In re Century Aluminum Co. Sec. Litig.*,
11-15599, 2013 WL 11887 (9th Cir. Jan. 2, 2013) .......... 31

*In re Charles Schwab Corp. Sec. Litig.*,
257 F.R.D. 534 (N.D. Cal. 2009) .......... 26

*In re China Valves Tech. Sec. Litig.*,
11 CIV. 0796 LAK, 2012 WL 4039852 (S.D.N.Y. Sept. 12, 2012) .......... 25

*In re Dell Inc., Sec. Litig.*,
591 F. Supp. 2d 877 (W.D. Tex. 2008) .......... 21, 22

*In re Hutchinson Tech., Inc. Sec. Litig.*,
536 F.3d 952 (8th Cir. 2008) .......... 27

*In re Ikon Office Solutions, Inc.*,
277 F.3d 658 (3d Cir. 2002) .......... 17

**TABLE OF AUTHORITIES**
(continued)

**Page**

*In re L & L Energy, Inc. Sec. Litig.*,
2012 WL 6012787 (W.D. Wash. Dec. 3, 2012) .......... 24, 34

*In re Lehman Bros Sec. & Erisa Litig.*,
799 F. Supp. 2d 258 (S.D.N.Y. 2011) .......... 19, 30

*In re Longtop Fin. Techs., Ltd. Sec. Litig.*,
No. 11 Civ. 3658, 2012 WL 5512176 (S.D.N.Y. Nov. 14, 2012) .......... passim

*In re Marsh & Mclennan Companies, Inc. Securities Litigation*,
501 F. Supp. 2d 452 (S.D.N.Y. 2006) .......... 32

*In re McKesson HBOC, Inc. Sec. Litig.*,
126 F. Supp. 2d 1248 (N.D. Cal. 2000) .......... 29

*In re Milestone Scientific Sec. Litig.*,
103 F. Supp. 2d 425 (D.N.J. 2000) .......... 26

*In re Party City Sec. Litig.*,
147 F. Supp. 2d 282 (D.N.J. 2001) .......... 20

*In Re PEC Solutions Sec. Litig.*,
03-CV-331, 2004 WL 1854202 (E.D. Va. May 25, 2004) .......... 27

*In re Redback Networks, Inc. Sec. Litig.*,
329 F. App'x 715 (9th Cir. 2009) .......... 32

*In re Saxton, Inc. Sec. Litig.*,
Case No. CV-S-00-1521-JCM (RJJ), at *3 (D. Nev. April 5, 2002) .......... 39

*In re Silicon Graphics Inc. Sec. Litig.*,
183 F.3d 970 (9th Cir. 1999) .......... 20

*In re SLM Corp. Sec. Litig.*,
258 F.R.D. 112 (S.D.N.Y. 2009) .......... 11

*In re SmarTalk Teleservices Sec., Inc. Litig.*,
124 F. Supp. 2d 505 (S.D. Ohio 2000) .......... 23

*In re. Supreme Specialties, Inc., Sec. Litig.*,
438 F.3d 256 (3d Cir. 2006) .......... 31

*South Ferry LP v. Killinger*,
542 F.3d 776 (9th Cir. 2008) .......... 20

**TABLE OF AUTHORITIES**
(continued)

**Page**

*Indiana Elec. Workers' Pension Trust Fund IBEW v. Shaw Group, Inc.*, 537 F.3d 527 (5th Cir. 2008) ... 27

*Int'l Fund Mgmt. S.A. v. Citigroup Inc.*, 822 F. Supp. 2d 368 (S.D.N.Y. 2011) ... 31

*Janbay v. Canadian Solar, Inc.*, 10 CIV. 4430 RWS, 2012 WL 1080306 (S.D.N.Y. Mar. 30, 2012) ... 28

*Kelley v. Rambus, Inc.*, C 07-1238JFHRL, 2008 WL 5170598 (N.D. Cal. Dec. 9, 2008) ... 15, 30

*Kelley v. Rambus, Inc.*, No. C 07-01238 JF, 2008 WL 1766942 (N.D. Cal. April 17, 2008) ... 39

*Lindner Dividend Fund, Inc. v. Ernst & Young*, 880 F. Supp. 49 (D. Mass. 1995) ... 23

*Merck & Co., Inc. v. Reynolds*, 130 S.Ct. 1784 (2010) ... 13

*Metzler Inv. GMBH v. Corinthian Colleges, Inc.*, 540 F.3d 1049 (9th Cir. 2008) ... 32

*Monaco v. Bear Stearns Companies, Inc.*, CV 09-05438 SJO JCX, 2011 WL 4059801 (C.D. Cal. Sept. 12, 2011) ... 14

*MVP Asset Mgmt. (USA) LLC v. Vestbirk*, 2:10-CV-02483-GEB, 2011 WL 1457424 (E.D. Cal. Apr. 14, 2011) ... 11, 12

*MVP Asset Mgmt. (USA) LLC v. Vestbirk*, 2:10-CV-02483-GEB, 2012 WL 33043 (E.D. Cal. Jan. 6, 2012) ... 12

*Nordica USA, Inc. v. Deloitte & Touche, LLP*, 839 F. Supp. 1082 (D. Vt. 1993) ... 38

*Rubke v. Capital Bancorp Ltd*, 551 F.3d 1156 (9th Cir. 2009) ... 30

*S. Ferry LP No. 2 v. Killinger*, 271 F.R.D. 653 (W.D. Wash. 2011) ... 11

*Schlottmann v. Nevada ex rel. Bd. of Regents of Nevada Sys. of Higher Educ.*, 2:12-CV-00692-JCM, 2012 WL 3135637 (D. Nev. Aug. 1, 2012) ... 8, 9, 21

**TABLE OF AUTHORITIES**
(continued)

**Page**


*SG Cowen Sec. Corp. v. U.S. Dist. Ct. for N. Dist. of CA*,
189 F.3d 909 (9th Cir. 1999)........................................................................................ 20

*Stichting Pensioenfonds ABP v. Countrywide Fin. Corp.*,
802 F. Supp. 2d 1125 (C.D. Cal. 2011) ......................................................................... 13

*Tabor v. Bodisen Biotech, Inc.*,
579 F. Supp. 2d 438 (S.D.N.Y. 2008).......................................................................... 28

*Tene v. BAC Home Loan Servicing LP*,
2:11-CV-01095-KJD, 2012 WL 222920 (D. Nev. Jan. 25, 2012)................................. 36

*U.S. ex rel. Pervez v. Beth Israel Medical Center*,
736 F. Supp. 2d 804 (S.D.N.Y. 2010)...................................................................... 21, 23

*Virginia Bankshares, Inc. v. Sandberg*,
501 U.S. 1083 (1991) ................................................................................................... 29

*W.R. Huff Asset Mgmt. Co., LLC v. Deloitte & Touche LLP*,
549 F.3d 100 (2d Cir. 2008)......................................................................................... 11

*White v. Lee*,
227 F.3d 1214 (9th Cir. 2000)....................................................................................... 11

**STATE CASES**

*Bily v. Arthur Young & Co.*,
3 Cal. 4th 370, 834 P.2d 745 (1992) ....................................................... 17, 37, 38, 39

*Connecticut Nat. Bank v. Giacomi*,
242 Conn. 17, 699 A.2d 101 (Conn. 1997)............................................................. 35, 36

*Grant Thornton LLP v. Prospect High Income Fund*,
314 S.W.3d 913 (Tex. 2010)......................................................................................... 37

*In re Washington Mut., Inc. Sec., Derivative, & ERISA Litig.*,
No. 2:08-md-01919-MJP, 2010 WL 1734848 (W.D. Wash. April 28, 2010) ................. 31, 37

*Nycal Corp. v. KPMG Peat Marwick LLP*,
426 Mass. 491, 688 N.E.2d 1368 (Mass. 1998)...................................................... 37, 38

**FEDERAL STATUTES**

15 U.S.C. § 78r(c) ............................................................................................................ 13

15 U.S.C. § 78u–4(b)(1)(B) ............................................................................................. 20

## TABLE OF AUTHORITIES
(continued)

**Page**

28 U.S.C. § 1658(b)(1) ........ 13

**OTHER STATUTES**

Conn. Gen. Stat. § 36b–29 ........ 10, 34, 35

**RULES**

FRCP 9(b) ........ passim

FRCP 17(a) ........ 11, 12

**REGULATIONS**

FASB Statement of Concept No. 1 ........ 26

**OTHER AUTHORITIES**

Restatement (Second) Contracts § 324 (1981) ........ 13

Restatement (Second) of Torts § 552 ........ 37

Defendant KPMG, a Hong Kong partnership ("KPMG HK"), by and through its attorneys, Campbell & Williams and Bingham McCutchen LLP, hereby submits this memorandum of points and authorities and moves this Court pursuant to Federal Rules of Civil Procedure ("FRCP") 8, 9(b), and 12(b)(1) & (6) for an order dismissing the claims asserted against KPMG HK in Plaintiffs' Consolidated Amended Complaint ("Amended Complaint"). The Court should dismiss all claims against KPMG HK in the Amended Complaint because:

1. Plaintiffs fail to allege facts sufficient to establish that they have standing to sue on behalf of the funds they manage and the clients that have allegedly assigned claims to them.

2. Plaintiff Delaware Public Employees' Retirement System's claims under Section 18 of the Securities Exchange Act of 1934 are barred by the applicable statute of limitations.

3. Plaintiffs fail to plead a claim under Section 18 of the Securities Exchange Act of 1934 with sufficient particularity to satisfy the Private Securities Litigation Reform Act of 1995 ("PSLRA") or FRCP 8(a) and 9(b). Specifically, Plaintiffs fail to plead falsity, reliance and loss causation.

4. Plaintiffs' negligent misrepresentation claim and Connecticut Uniform Securities Act claim should be dismissed because the Court should decline to exercise supplemental jurisdiction over them if it dismisses Plaintiffs' Section 18 claims.

5. Plaintiffs fail to plead a claim of negligent misrepresentation sufficiently to satisfy either FRCP 8(a) or the heightened pleading requirements of FRCP 9(b) because Plaintiffs fail to allege facts that give rise to a duty on the part of KPMG HK to Plaintiffs, and they do not plead falsity, reliance, proximate causation, or that KPMG HK did not have a reasonable basis for its audit opinions.

6. Plaintiffs fail to plead a claim under the Connecticut Uniform Securities Act because they do not allege facts sufficient to satisfy FRCP 8(a), or the heightened pleading standard of FRCP 9(b). Plaintiffs do not plead a primary violation, and they do not allege facts sufficient to establish that KPMG HK "materially assisted" the alleged sales of the securities.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. INTRODUCTION

Plaintiffs' Amended Complaint marks Plaintiffs' second attempt to plead a viable claim against KPMG HK. Plaintiffs recognized, in the face of KPMG HK's motions to dismiss, that their initial complaints fell woefully short of the mark. Plaintiffs then sought to rewrite their allegations via a new, consolidated complaint. While they have tried to enhance it with a number of additional paragraphs discussing the auditing issues in the case, Plaintiffs' Amended Complaint still fails as a matter of law because it continues to rely wholly on conclusory and speculative assertions without alleging the essential facts necessary to sustain the purported claims against KPMG HK.

Plaintiffs are asset management companies and investment advisory firms that seek to recover their clients' investment losses from their purchases of debt securities in the form of 6.0% and 6.5% Notes issued by ShengdaTech, Inc. ("ShengdaTech" or the "Company"). After ShengdaTech filed for Chapter 11 bankruptcy protection, Plaintiffs filed this action targeting ShengdaTech's independent auditors, KPMG HK and Hansen Barnett & Maxwell, and the underwriter, Morgan Stanley, for the 6.5% Notes, which was a private debt offering to institutional investors.[1] KPMG HK audited the Company's 2008 and 2009 financial statements, and it issued audit opinions on those financial statements. Plaintiffs assert two claims against KPMG HK under Section 18 of the Securities Exchange Act of 1934 and two state law claims. As demonstrated below, each of Plaintiffs' claims fail because the Amended Complaint does not plead facts sufficient to show that KPMG HK's audit opinions were false at the time those opinions were issued on March 31, 2009 and March 15, 2010.

Plaintiffs' claims against KPMG HK are premised on the factually erroneous and legally infirm assertion that KPMG HK, as ShengdaTech's independent auditor, certified or guaranteed the accuracy of ShengdaTech's financial statements and is liable *ipso facto* if errors are later discovered in the financial statements. This misapprehends the function that auditors perform and

---

[1] Plaintiffs have also named as defendants KPMG LLP ("KPMG US") and KPMG International Cooperative ("KPMG International") asserting control person liability and secondary liability claims against those entities.

mischaracterizes the statements that an auditor makes in an audit report. "[A]uditors do not 'certify' a company's financial statements in the sense that they 'guarantee' or 'insure' them." *Deephaven Private Placement Trading, Ltd. v. Grant Thornton & Co.*, 454 F.3d 1168, 1174 (10th Cir. 2006). Instead, auditors perform certain audit procedures and "tests" in accordance with the standards of the Public Company Accounting Oversight Board -- also referred to as U.S. "GAAS," standing for Generally Accepted Auditing Standards -- and based on those procedures, express an opinion as to whether the financial statements present fairly the financial position of the Company in conformity with Generally Accepted Accounting Principles ("GAAP"). Thus, to plead that KPMG HK's audit opinions were false at the time they were issued, Plaintiffs must allege facts, not conclusions, sufficient to establish that KPMG HK did not conduct its audits in accordance with GAAS and, therefore, did not have a reasonable basis for its opinion that the Company's financial statements present fairly the financial position of the Company in conformity with GAAP.

In this case, Plaintiffs' claims fail as a matter of law because Plaintiffs still do not plead sufficient facts about the audit procedures KPMG HK allegedly performed or did not perform. Plaintiffs merely assert circular, speculative allegations and sweeping conclusions on "information and belief" about what KPMG HK "may have done" or "should have done" during its audits. They also attempt to obfuscate the absence of facts with bare recitations of accounting rules and auditing standards and simply assert that those rules were violated without any adequate foundation. Based on that inadequate foundation, Plaintiffs also make the conclusory assertion that KPMG HK did not conduct a GAAS audit and did not have a reasonable basis for expressing its opinions. Plaintiffs' allegations fall well-short of the strict requirements for pleading falsity under the PSLRA, which was designed to prevent this specific type of speculative pleading. Plaintiffs simply have not met their burden to support their Section 18 claims against KPMG HK.

Plaintiffs' Section 18 claims fail for additional reasons. Plaintiffs fail to plead the necessary facts establishing that they relied on KPMG HK's audit opinions. Unlike Section 10(b) claims, Section 18 requires actual "eye ball" reliance by each of the Plaintiffs. Plaintiffs fail to plead sufficient facts establishing their actual reliance on the statements contained in KPMG

HK's audit reports. Instead, they seek to rely on generalized allegations as to what the Plaintiffs as a group relied upon, which fails to satisfy the strict requirements for pleading reliance for Section 18 claims under FRCP 9(b) and the PSLRA.

Plaintiffs' Section 18 claims are also defective because they fail to plead loss causation adequately. Plaintiffs do not allege any facts establishing that the revelation of the truth of any alleged KPMG HK misstatement affected the price of the ShengdaTech Notes that Plaintiffs purchased. Moreover, Plaintiff Delaware Public Employees' Retirement System's Section 18 claims are barred by the statute of limitations.

Plaintiffs' state law claims fare no better. First, they should be dismissed on jurisdictional grounds if the Court concludes the Section 18 claims fail. Second, Plaintiffs' Connecticut Uniform Securities Act claim fails because Plaintiffs have not pleaded a primary violation, and Plaintiffs fail to allege sufficient facts establishing that KPMG HK "materially assisted" the sale of any of the ShengdaTech Notes. Third, Plaintiffs' negligent misrepresentation claim also fails because Plaintiffs fail to allege that (1) KPMG HK owed any duty to Plaintiffs; (2) KPMG HK made a material misstatement; (3) KPMG HK did not have a reasonable basis for its audit opinions; (4) they relied on KPMG HK's alleged misstatement in purchasing the ShengdaTech Notes and (5) the revelation of the truth of KPMG HK's 2008 and 2009 audit opinions proximately caused Plaintiffs' losses.

For those reasons and as demonstrated below, KPMG HK respectfully requests that the Court dismiss Plaintiffs' claims against KPMG HK in their entirety.

## II. SUMMARY OF PROCEEDINGS AND ALLEGATIONS

Plaintiffs' Amended Complaint is brought by nine separate plaintiffs, consisting of (1) seven investment managers that manage funds and accounts, (2) HFR CA Lazard Rathmore Master Trust, and (3) Delaware Public Employees' Retirement System ("DPERS"). Am. Comp. ¶ 1. The investment managers bring claims on behalf of 46 separate clients, consisting of investment funds they manage and clients "on whose behalf it purchased Notes during the Loss Period and from whom it has received valid assignments of claims pertaining to the Notes." Am. Compl. ¶¶ 1, 18-26. Plaintiffs' Amended Complaint asserts claims against five separate

defendants relating to alleged purchases of ShengdaTech's 6.0% and 6.5% Notes in the initial offerings and in the secondary market. Am. Compl. ¶ 1.

**A. ShengdaTech Issues 6.0% and 6.5% Notes**

ShengdaTech is a Nevada corporation with its principal place of business in China. Am. Compl. ¶ 34. In early 2008, ShengdaTech issued its 6.0% Notes Offering to qualified institutional buyers, which was conducted pursuant to the 6.0% Notes Offering Memorandum. Am. Compl. ¶ 39. Defendant Hansen, Barnett & Maxwell, P.C. ("Hansen") served as ShengdaTech's independent auditor in 2007, and it issued an opinion on ShengdaTech's 2007 financial statements and allegedly consented to the inclusion of its audit opinion in the 6.0% Notes Offering Memorandum. Am. Compl. ¶¶ 32, 77. There is no allegation that KPMG HK performed any work in connection with ShengdaTech's 2007 financial statements or had anything to do with the 6.0% Notes Offering.[2] Am. Compl. ¶ 39.

KPMG HK became ShengdaTech's independent auditor in 2008, and it issued its first audit opinion on ShengdaTech's 2008 financial statements on March 31, 2009, which was contained in ShengdaTech's 2008 10-K filed on April 1, 2009. Am. Compl. ¶ 29. KPMG HK also issued an audit report on ShengdaTech's 2009 financial statements on March 15, 2010, contained in ShengdaTech's 2009 10-K filed on March 15, 2010. Am. Compl. ¶¶ 83-84.

In its audit report on ShengdaTech's 2008 financial statements, KPMG HK reported that it had identified material weaknesses in ShengdaTech's internal controls over financial reporting. Request for Judicial Notice ("RJN") Ex. A, p. 54. KPMG HK stated that a material weakness was a "deficiency, or a combination of deficiencies, in internal control over financial reporting, such that there is a reasonable possibility that a material misstatement of the company's annual or interim financial statements will not be prevented or detected on a timely basis." *Id.* After

---

[2] Plaintiffs mistakenly allege that "KPMG HK expressly consented to the inclusion of their audit reports for each of the relevant years in ShengdaTech's 6.0% Notes Offering Memorandum . . . ." Am. Compl. ¶ 102. This allegation appears to be a drafting error since the 6.0% Notes offering took place before KPMG HK was appointed ShengdaTech's independent auditor in November 2008 and before its audits on the Company's 2008 and 2009 financial statements. Consistent with the facts, Plaintiffs elsewhere allege that only ShengdaTech's 2007 financial statements and Hansen's 2007 audit report were incorporated into the 6.0% Offering Memorandum. Am. Compl. ¶ 39.

KPMG HK so reported on the weakness in the internal controls over financial reporting, ShengdaTech disclosed in its quarterly 10-Q filings throughout 2009 that it was taking steps to remediate the internal control deficiencies identified by KPMG HK. In a filing made on March 15, 2010, ShengdaTech reported that it had remediated those internal control deficiencies. RJN Ex. B, p. 52. In its audit report on ShengdaTech's 2009 financial statements, KPMG HK stated that: "In our opinion, ShengdaTech, Inc. maintained, in all material respects, effective internal control over financial reporting as of December 31, 2009 . . . ." Am. Compl. ¶ 85.

On December 10, 2010, ShengdaTech announced that it had entered into a purchase agreement with Morgan Stanley relating to an offering of $130,000,000 of the 6.5% Notes. Am. Compl. ¶ 40. Morgan Stanley underwrote the 6.5% Notes Offering pursuant to the 6.5% Notes Offering Memorandum, which incorporated ShengdaTech's 2007, 2008 and 2009 financial statements. Am. Compl. ¶ 41.

Plaintiffs allege that Hansen consented to the inclusion of its 2007 audit opinion, and that KPMG HK consented to the inclusion of its 2008 and 2009 audit opinions in the 6.5% Notes Offering Memorandum. Contrary to Plaintiffs' assertion, the 6.5% Notes Offering Memorandum does not contain any consent from KPMG HK, and Plaintiffs cite no factual basis for their assertion that KPMG HK gave such consent. RJN Ex. C. Plaintiffs also allege that the 6.5% Notes Offering Memorandum included unaudited 2010 financial information, "which the investing public, including Plaintiffs, understood to have been reviewed by Morgan Stanley as the lead underwriter of the 6.5% Notes Offering . . . ." Am. Compl. ¶ 43.

### B. KPMG HK Discovers Discrepancies and Unexplained Issues During The Audit of the Company's 2010 Financial Statements and Withdraws as the Company's Auditor

The Amended Complaint states that KPMG HK identified discrepancies and unexplained issues during its audit of the Company's 2010 financial statements and brought the issues to the attention of ShengdaTech's audit committee. Am. Compl. ¶ 46. Specifically, on March 15, 2011, ShengdaTech announced that KPMG HK discovered "'potentially serious discrepancies and unexplained issues relating to the Company's and its subsidiaries' financial records'" during its

2010 audit work. *Id*. Plaintiffs allege that the issues that "KPMG identified included the existence of undisclosed related party transactions and the inability to confirm sales amounts, sales terms, and outstanding balances." *Id*.

Plaintiffs allege that ShengdaTech appointed a Special Committee, and that facts relating to the Special Committee's investigation that have been released show that ShengdaTech's management "falsified evidence" and was engaged in a detailed fraud. Am. Compl. ¶¶ 63-65. The fraud included (1) having "specific persons at the banks" where ShengdaTech held accounts that were allegedly complicit with the alleged fraud, and (2) creating falsified copies of certificates of deposit that were held by ShengdaTech subsidiary Faith Bloom. *Id.*

On April 29, 2011, ShengdaTech "issued a press release disclosing NASDAQ's April 20, 2011 decision to delist ShengdaTech's shares." Am. Compl. ¶ 49. On May 5, 2011, "ShengdaTech filed another Form 8-K with the SEC in which it announced that KPMG had resigned, effective April 29, 2011." Am. Compl. ¶ 51. KPMG, as disclosed in this 8-K, had "informed the Company on April 19, 2011 that ShengdaTech's senior management had not taken timely and appropriate remedial action with respect to the discrepancies and issues KPMG had identified in the course of its 2010 audit . . . ." Am. Compl. ¶ 48. ShengdaTech's May 5, 2011 Form 8-K also stated, among other things, that ShengdaTech was "informed by KPMG" that "disclosures should be made and action should be taken to prevent future reliance on their previously issued audit reports related to the consolidated balance sheets of ShengdaTech, Inc . . . as of December 31, 2008 and 2009." Am. Compl. ¶ 52. KPMG HK had not completed its audit work or issued an audit opinion on ShengdaTech's 2010 financial statements prior to its resignation.

Plaintiffs allege that on June 9, 2011, ShengdaTech announced that it would be defaulting on its obligations to the holders of the 6.0% Notes. Am. Compl. ¶ 54. Further, on June 15, 2011, ShengdaTech became obligated to pay interest on the 6.5% Notes in an amount of $4.4 million, but has not paid any portion of the interest. Am. Compl. ¶ 55. On August 19, 2011, ShengdaTech filed for bankruptcy protection in the United States District Court for the District of Nevada. Am. Compl. ¶ 57. The order confirming the Debtor's Plan of Reorganization was

entered on October 2, 2012, and the Debtor's assets have been transferred to the Liquidating Trust. RJN Ex. D.

### C. Plaintiffs Initiate This Lawsuit, Attempt to Circumvent The Statutory Discovery Stay and Amend Their Complaints

On March 12, 2012, KPMG HK entered into a tolling agreement with Oaktree Capital Management, L.P., Lazard Asset Management, LLC, Angelo, Gordon & Co., L.P., Zazove Associates, LLC, CNH Partners, LLC, Advent Capital Management, LLC, AQR Management, LLC, and HFR CA Lazard Rathmore Master Trust ("Oaktree Plaintiffs"). RJN Ex. E. DPERS was not a party to the Tolling Agreement. *Id*. The law firm of Grant & Eisenhofer P.A. executed the Tolling Agreement on behalf of the Oaktree Plaintiffs named above, and DPERS is not identified in the signature block or anywhere else in the Tolling Agreement as an entity that Grant & Eisenhofer represented.

Plaintiffs filed their original complaints on June 6, 2012, alleging state and federal securities fraud claims against Hansen, Morgan Stanley, KPMG HK, KPMG US, and KPMG International. One complaint was filed by the Oaktree Plaintiffs, consisting of each of the same parties that were expressly identified in the Tolling Agreement. RJN Ex. F. These parties were represented by Grant & Eisenhofer, the same attorneys who signed the Tolling Agreement. DPERS filed a separate complaint on the same day and was represented by the Deputy Attorneys General for the State of Delaware. RJN Ex. G. Grant & Eisenhofer was not identified as counsel for DPERS in the DPERS Complaint. *Id*. Shortly after the filing of the respective complaints, the parties reached separate stipulations setting forth the briefing schedule for the Defendants' motions to dismiss the complaints in the respective actions.

As this Court has recognized, the PSLRA was enacted to ensure that "complaints 'stand or fall based on the actual knowledge of the plaintiffs rather than information produced by the defendants after the action has been filed.'" *Schlottmann v. Nevada ex rel. Bd. of Regents of Nevada Sys. of Higher Educ*., 2:12-CV-00692-JCM, 2012 WL 3135637, at *3 (D. Nev. Aug. 1, 2012) (citation omitted). To that end, the PSLRA heightens the pleading standard for securities fraud claims and implements a discovery stay pending the resolution of motions to dismiss to

prevent plaintiffs from filing premature or baseless lawsuits in the hope of using discovery to obtain evidence of securities law violations. *Id*.

Despite the PSLRA discovery stay, on July 18, 2012, Plaintiffs in the Oaktree matter served document requests on all Defendants seeking documents in support of the claims alleged in the complaint, including document requests to KPMG HK seeking: "All documents relating to, referring to, or concerning your audits and/or reviews of ShengdaTech's financial statements, including all audit workpapers." RJN, Ex. H. Defendants objected to Plaintiffs' document requests on the grounds that discovery was premature under the PSLRA.

KPMG HK filed its motions to dismiss the Oaktree Plaintiffs' complaint and DPERS' complaint on September 5, 2012 and September 18, 2012, respectively. KPMG HK's motions to dismiss identified numerous deficiencies in the original complaints, including Plaintiffs' failure to identify the relevant GAAP and GAAS provisions that were allegedly violated and Plaintiffs' failure to allege any facts regarding the audit procedures performed, or not performed, by KPMG HK and the basis for its audit opinions.

Plaintiffs in the Oaktree matter attempted to circumvent the PSLRA's discovery stay a second time by seeking discovery in the ShengdaTech Bankruptcy action via a subpoena on the debtor, ShengdaTech, demanding the production of, among other things, "[a]ll documents regarding KPMG's audits and/or reviews of ShengdaTech's financial statements . . . ." RJN Ex. I. Bankruptcy Judge Beesley recognized Plaintiffs' attempt to make an end-run around the PSLRA in this case and quashed the subpoena. Judge Beesley explained: "To require the production of the subpoenaed documents and the 2004 exam to go forward would be in violation of the spirit of the Private Securities Litigation Reform Act ('PSLRA')." RJN Ex. J.

Unable to obtain documents prematurely and with their oppositions to Defendants' motions becoming due, the Oaktree Plaintiffs and DPERS requested that Defendants stipulate to allow them to amend their complaints "to address certain arguments made by Defendants" and to consolidate the two actions. Dkt. No. 119. KPMG HK and the other Defendants consented, and the Court granted the stipulation to amend and consolidate on November 16, 2012. *Id*.

Plaintiffs' Amended Complaint has failed to address the vast majority of the issues that

were raised in the previous motions to dismiss and fails to "address certain arguments made by Defendants" contrary to the their representations to the Court as it being one of the main reasons for amending their original complaints.

Plaintiffs' Amended and consolidated Complaint again asserts claims against three separate KPMG entities: KPMG HK, KPMG International and KPMG US. Am. Compl. ¶¶ 28-30. KPMG HK is a Hong Kong Partnership organized under Hong Kong law. KPMG LLP is a United States limited liability partnership, and KPMG International is a Swiss entity with which the member firms of the KPMG network of independent firms are affiliated.

Plaintiffs assert four claims against KPMG HK in the Amended Complaint: (1) Plaintiffs' second claim asserts a violation of Section 18 of the Exchange Act for alleged false statements in ShengdaTech's 2008 10-K; (2) Plaintiffs' third claim asserts a violation of Section 18 of the Exchange Act for alleged false statements in ShengdaTech's 2009 10-K and 2009 10-K/A; (3) Plaintiffs' sixth claim is for negligent misrepresentation for alleged false statements in the 6.5% Notes Offering Memorandum; and (4) Plaintiffs' tenth claim is for violation of Connecticut Uniform Securities Act section 36b-29(a) for alleged false statements in the 6.5% Notes Offering Memorandum.

## ARGUMENT

### III. CERTAIN PLAINTIFFS' FAILURE TO PLEAD VALID ASSIGNMENTS OF CLAIMS DEPRIVES THEM OF STANDING TO BRING SUIT ON BEHALF OF THEIR CLIENTS AND THE FUNDS THEY MANAGE

#### A. Plaintiffs Lack Standing to Sue on Behalf of Funds They Manage

Certain of the Plaintiffs are asset management companies and investment advisors that purport to assert claims on behalf of approximately 20 unidentified "investment funds" that they "manage[]" and for which they allegedly "purchased Notes during the Loss Period." *See* Am. Compl. ¶¶ 18-24. Those Plaintiffs are Oaktree Capital Management, Lazard Asset Management, Angelo Gordon & Co., Zazove Associates, CNH Partners, Advent Capital Management, and AQR Capital Management. Those Plaintiffs' claims should be dismissed to the extent they seek to recover for funds that they manage because Plaintiffs have failed to allege that those claims

have been assigned to them by the unidentified funds, which necessarily means that they lack standing to assert those claims on behalf of those funds.

"[A]n investment adviser cannot pursue claims on behalf of its clients because it has not suffered an injury in fact." *S. Ferry LP No. 2 v. Killinger*, 271 F.R.D. 653, 658 (W.D. Wash. 2011) (citing *W.R. Huff Asset Mgmt. Co., LLC v. Deloitte & Touche LLP*, 549 F.3d 100, 110–11 (2d Cir. 2008)). Following *Huff*, numerous courts have concluded that investment managers without valid assignments lack standing. *See, e.g., MVP Asset Mgmt. (USA) LLC v. Vestbirk,* 2:10-CV-02483-GEB, 2011 WL 1457424, at *1-2 (E.D. Cal. Apr. 14, 2011) (investment manager lacked standing to bring suit); *In re SLM Corp. Sec. Litig*., 258 F.R.D. 112, 116 (S.D.N.Y. 2009) (investment advisor of funds lacked standing to bring suit).

*MVP Asset Mgmt*. is particularly instructive. There, an investment manager brought claims on behalf of a fund that it managed, arguing that it had unrestricted decision-making authority to control all investments and litigation relating to the fund. The court dismissed the claims for lack of standing. Although the investment manager argued that the claims had been assigned to it, the court said there were no such allegations in the Complaint. The court held that the investment manager's "'status as both an attorney-in-fact for litigation purposes and an investment advisor with unfettered discretion over its client['s] investment decisions does not confer on [the investment manager] Article III standing to sue in a representative capacity on its client['s] behalf.'" *MVP Asset Mgmt*., 2011 WL 1457424, at *2 (citing *Huff*, 549 F.3d at 111).

Similar to the plaintiff in *MVP Asset Mgmt*., Plaintiffs here purport to bring claims on behalf of funds they manage but they have failed to allege that those funds assigned their claims to Plaintiffs. This deficiency, moreover, is not an easily curable pleading error because the lack of standing at the outset of the filing of the complaint requires that the claims on behalf of the funds be dismissed *with prejudice*. "While Rule 17(a) allows for the substitution of a real party in interest, a plaintiff must have 'Article III standing at the outset of the litigation.'" *In re SLM*, 258 F.R.D. at 115; *see also White v. Lee,* 227 F.3d 1214, 1243 (9th Cir. 2000) ("Standing is examined at 'the commencement of the litigation.'"). Because Plaintiffs do not allege that they were assigned these claims at the outset of the litigation, Plaintiffs' claims on behalf of the funds they

manage should be dismissed with prejudice.

### B. Plaintiffs Lack Standing to Sue on the Claims that are Purportedly Assigned Because They Fail to Plead Valid Assignments

In addition to Plaintiffs' claims on behalf of the funds they manage, Plaintiffs also purport to bring claims for certain clients "on whose behalf [they] purchased Notes during the Loss Period . . . ." *See* Am. Compl. ¶¶ 18-24. Although Plaintiffs allege that certain of those claims were assigned to them by their clients, Plaintiffs lack standing to pursue these claims because they fail to plead valid assignments.

"FRCP 17(a) . . . provides that every action must be prosecuted in the name of the real party in interest." *In re Brooms*, 447 B.R. 258, 264-65 (B.A.P. 9th Cir. 2011).[3] "[I]n an action involving an assignment, a court must ensure that the plaintiff-assignee is the real party in interest with regard to the particular claim involved by determining: (1) what has been assigned; and (2) whether a valid assignment has been made.'" *MVP Asset Mgmt. (USA) LLC v. Vestbirk*, 2:10-CV-02483-GEB, 2012 WL 33043, at *3 (E.D. Cal. Jan. 6, 2012) (citation omitted). "In order to determine whether a valid assignment has been made, a court must turn to the substantive state law governing the assignability of the action at issue." *In re Brooms*, 447 B.R. at 265.

*MVP Asset Mgmt*. leads to the result required here. There, the plaintiff brought claims based on alleged assignments it received from its clients, and the court found that the plaintiff failed to plead valid assignments. The court explained that the "bare allegation that [i]n February 2009, [Plaintiff] . . . caused [the investor] to enter into an agreement with [Plaintiff] under which [the investor] assigned its claims arising out of and relating to the . . . Fund . . . to [Plaintiff] for collection is insufficient to determine whether a valid assignment has been made." *MVP Asset Mgmt.*, 2012 WL 33043, at *3.

Here, Plaintiffs' assignment allegations are even more deficient than in *MVP Asset Mgmt*.

---

[3] "'This rule requires that the party who brings an action actually possess, under the substantive law, the right sought to be enforced. Such a requirement is in place to protect the defendant against a subsequent action by the party actually entitled to recover, and to insure generally that the judgment will have its proper effect as res judicata.'" *Id.* at 265 (quoting *United HealthCare Corp. v. Am. Trade Ins. Co., Ltd.*, 88 F.3d 563, 568-69 (8th Cir. 1996)).

Plaintiffs do not allege any facts regarding the purported assignments, but simply make the bare allegation that assignments were made. Plaintiffs do not identify the assignors, what claims were actually assigned, or when the assignments were made. Plaintiffs also allege no facts establishing that the assignors manifested an intention to transfer the alleged rights. Rest.2d Contracts § 324 (1981) ("It is essential . . . that the obligee manifest an intention to transfer the right to another person without further action or manifestation of intention by the obligee."). Plaintiffs' conclusory allegations of assignments are not sufficient.

## IV. PLAINTIFF DPERS' SECTION 18 CLAIMS ARE BARRED BY THE STATUTE OF LIMITATIONS

Plaintiff DPERS' claims under Section 18 fail because those claims are untimely. Section 18 provides that "[n]o action shall be maintained to enforce any liability created under this section unless brought within one year after the discovery of the facts constituting the cause of action and within three years after such cause of action accrued." 15 U.S.C. § 78r(c). The term "discovery" includes not only "a plaintiff's actual discovery of certain facts, but also to the facts that a reasonably diligent plaintiff would have discovered." *Merck & Co., Inc. v. Reynolds*, 130 S.Ct. 1784, 1793 (2010) (interpreting 28 U.S.C. § 1658(b)(1)). "A motion to dismiss is appropriate where the complaint, documents referred to therein, and public press reports yield no other plausible inference than that a reasonably diligent plaintiff should have discovered facts sufficient to state a claim . . . ." *Stichting Pensioenfonds ABP v. Countrywide Fin. Corp*., 802 F. Supp. 2d 1125, 1136 (C.D. Cal. 2011).

Here, Plaintiff DPERS in effect admits that it was on notice of its claims more than one-year before it filed its original Complaint on June 6, 2012. Plaintiffs allege that the truth of ShengdaTech's financial condition was revealed to the market on March 15, 2011. Am. Compl. ¶¶ 46-47, 130. Thus, Plaintiff DPERS was on the legally necessary notice regarding its claims to trigger the limitations period as of March 15, 2011, and certainly no later than May 5, 2011, upon the filing of ShengdaTech's Form 8-K disclosing the resignation of KPMG HK and the circumstances of the resignation. Am. Compl. ¶ 52. Indeed, the other Plaintiffs recognized this fact and sought and entered into a tolling agreement with KPMG HK (among others) on March

12, 2012, for just this reason. Since Plaintiff DPERS did not file its original Complaint until June 6, 2012, more than one-year after it was on notice, its claims are time-barred.

Plaintiff DPERS implicitly recognizes its limitations problem by trying to insert itself into the tolling agreement entered into with the other Plaintiffs; it alleges that it entered into "agreements with KPMG . . . whereby all statutes of limitations and repose for Plaintiffs' claims against KPMG . . . were tolled from March 15, 2012 through the termination of the agreements." Am. Compl. ¶ 133. It did not.

Although KPMG HK entered into a tolling agreement with the Oaktree Plaintiffs, DPERS was neither a party to nor named in the Tolling Agreement. *See* Section II, C., *supra*; RJN Ex. E. Further, the Oaktree Plaintiffs filed the original Oaktree Complaint regarding the funds and accounts that it alleged were covered in the Tolling Agreement, and DPERS was not listed in the Oaktree Plaintiffs' Certificate of Interested Parties as an entity with any interest in the Oaktree action. DPERS filed its action separately, has acted separately from the beginning of this matter and was not represented by Grant & Eisenhofer, the attorneys who executed the Tolling Agreement for the Oaktree Plaintiffs. While each of the other named plaintiffs is listed in the Tolling Agreement, DPERS is not. Moreover, the Tolling Agreement cannot be read to cover DPERS' claims since DPERS does not allege that it ever assigned its claims to Oaktree.

Thus, DPERS' Section 18 claims are time-barred and should be dismissed. *See Monaco v. Bear Stearns Companies, Inc.*, CV 09-05438 SJO JCX, 2011 WL 4059801, at *14 (C.D. Cal. Sept. 12, 2011) (dismissing claims on statute of limitations grounds and explaining: "Plaintiffs provide absolutely no legal support to find that a tolling agreement binds a party that is not named in the tolling agreement.").

## V. PLAINTIFFS FAIL TO STATE A CLAIM FOR VIOLATION OF SECTION 18 OF THE EXCHANGE ACT AGAINST KPMG HK

Plaintiffs assert two Section 18 claims against KPMG HK for alleged misstatements that KPMG HK made in (1) its 2008 audit opinion that was included in ShengdaTech's 2008 Form 10-K and (2) its 2009 audit opinion that was included in ShengdaTech's 2009 Forms 10-K and 10-K/A. To succeed with such claims, Plaintiffs must plead and prove that "(1) the defendant

made or caused to be made a statement of material fact that was false or misleading at the time and in light of the circumstances under which it was made, (2) the statement was contained in a document filed pursuant to the Exchange Act or any rule or regulation thereunder, (3) reliance on the false statement, and (4) resulting loss to the plaintiff." *Deephaven*, 454 F.3d at 1171.

Moreover, Plaintiffs' Section 18 claim must satisfy the PSLRA's heightened pleading standard and FRCP 9(b)'s particularity requirements. *See*, *e.g.*, *Id*. at 1172 (applying PSLRA to Section 18 claim); *Kelley v. Rambus, Inc.*, C 07-1238JFHRL, 2008 WL 5170598, at *2 (N.D. Cal. Dec. 9, 2008) (applying FRCP 9(b) to Section 18 claim), *aff'd*, 384 F. App'x 570 (9th Cir. 2010). Plaintiffs must also satisfy the "plausibility" standard established under *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). *See Halpern v. Lightyear Network Solutions, Inc*., 2:12-CV-340 JCM RJJ, 2012 WL 4482680, at *2 (D. Nev. Sept. 26, 2012) (Mahan, J.).

In assessing a complaint under *Twombly* and *Iqbal*, courts are to identify and disregard the non-factual, conclusory allegations and labels in the complaint that are "not entitled to the assumption of truth." *See Iqbal*, 556 U.S. at 664. After stripping the complaint of its conclusory allegations and labels, courts consider the "factual allegations in [the] complaint to determine if they plausibly suggest an entitlement to relief," which requires the complaint to allege facts creating inferences supporting the claim that are more plausible (more persuasive) than competing inferences, and a claim is *not* plausible when the conduct alleged is "compatible with . . . [and] more likely explained by, lawful . . . behavior." *Id*. at 680-81.

The Court should dismiss Plaintiffs' Section 18 claims because Plaintiffs (1) fail to allege sufficiently that KPMG HK made a material false statement in an Exchange Act filing; (2) fail to plead sufficiently reliance on any alleged KPMG HK misstatement; and (3) fail to plead loss causation adequately.

**A. Plaintiffs Fail to Plead Falsity Sufficiently**

Plaintiffs' Section 18 claims against KPMG HK fail because Plaintiffs do not sufficiently allege that KPMG HK made a material misstatement in its 2008 and 2009 audit reports. The only statements that KPMG HK made that are at issue in this case are those contained in its audit

opinions on ShengdaTech's 2008 and 2009 financial statements. KPMG HK stated that it had audited ShengdaTech's financial statements "in accordance with the standards of the Public Company Accounting Oversight Board (United States)," and that based on that work, KPMG HK's opinion was that the financial statements "present fairly, in all material respects, the financial position" of ShengdaTech under U.S. GAAP. Am. Compl. ¶¶ 80, 84. In addition, as discussed above, in the 2008 audit report, KPMG HK also identified material weaknesses and stated that ShengdaTech did not maintain effective internal control over financial reporting as of December 31, 2008. In its 2009 audit report, it issued a "clean" opinion with regard to ShengdaTech's internal controls. *See supra* pp. 5-6.

Plaintiffs' Section 18 claims are based on the false premise that if errors are subsequently identified in ShengdaTech's 2008 and 2009 financial statements, KPMG HK's audit opinions were necessarily misstatements. However, the subsequent discovery of irregularities during a later audit does not, *ipso facto*, support the conclusory allegation that the prior audit opinions were misstated at the time they were issued. Plaintiffs' reasoning misapprehends the purpose and scope of a financial statement audit and ignores the language, basis and scope of an audit opinion. It is indisputable that the auditor's opinion may be true even while the company's financial statements are misstated. The applicable auditing standards expressly state as much:

> Since the auditor's opinion on the financial statements or internal control over financial reporting is based on the concept of obtaining reasonable assurance, the auditor is not an insurer and his or her report does not constitute a guarantee. *Therefore, the subsequent discovery that either a material misstatement, whether from error or fraud, exists in the financial statements or a material weakness in internal control over financial reporting exists does not, in and of itself, evidence (a) failure to obtain reasonable assurance, (b) inadequate planning, performance, or judgment, (c) the absence of due professional care, or (d) a failure to comply with the standards of the Public Company Accounting Oversight Board (United States).*

AU § 230.13 *(Due Professional Care in the Performance of Work)* (emphasis added). This is particularly true where company management has engaged in fraud: "[B]ecause of the characteristics of fraud, a properly planned and performed audit may not detect a material misstatement." *Id* § 230.12; *see also* AU § 316.12 *(Consideration of Fraud in a Financial Statement Audit)* ("even a properly planned and performed audit may not detect a material

misstatement resulting from fraud. . . .”).

The courts have so recognized. “An audit does not guarantee that a client’s accounts and financial statements are correct any more than a sanguine medical diagnosis guarantees well-being; indeed, even an audit conducted in strict accordance with professional standards countenances some degree of calibration for tolerable error which, on occasion, may result in a failure to detect a material omission or misstatement.” *In re Ikon Office Solutions, Inc.*, 277 F.3d 658, 673 (3d Cir. 2002) (citing AICPA General Standard No. 3). “An auditor is a watchdog, not a bloodhound. As a matter of commercial reality, audits are performed in a client-controlled environment.” *Bily v. Arthur Young & Co.*, 3 Cal. 4th 370, 399, 834 P.2d 745 (1992). “A company’s management—not the auditor—is responsible for the information contained in its financial statements and the propriety of its underlying accounting policies, including compliance with GAAP.” *Dronsejko v. Thornton*, 632 F.3d 658, 663 (10th Cir. 2011).

The auditor conducts an audit on the financial statements, which, as KPMG HK’s audit opinions explain, “includes examining, on a ***test basis***, evidence supporting the amounts and disclosures in the financial statements.” Am. Compl. ¶ 91 (emphasis added). As the courts have recognized, an auditor’s “opinion letter makes clear that its audit operates on a ‘test basis’ and therefore did not analyze every single transaction. Thus, [the] allegation that [the auditor] failed to uncover the error is insufficient to allege that the audit was improperly conducted.” *Dobina v. Weatherford Int'l Ltd.*, 11 CIV. 1646 LAK, 2012 WL 5458148, at *14 n.146 (S.D.N.Y. Nov. 7, 2012) (granting auditor’s motion to dismiss).

In affirming the dismissal of a Section 18 claim against an auditor based on allegations similar to those made by Plaintiffs in this case, the court in *Deephaven* explained the nature of an audit opinion and debunked the misapprehension that misstated financial statements necessarily mean that the auditor has made a misrepresentation in its audit opinion. First, the court observed: “Investors start with the supposition that when an auditor ‘certifies’ a company’s financial statements, which subsequently prove to contain a materially false or misleading statement, the auditor’s certification is itself a false and misleading statement within the meaning of Section 18(a).” *Deephaven*, 454 F.3d at 1173. The court explained why this supposition is misplaced:

> [A]uditors do not "certify" a company's financial statements in the sense that they "guarantee" or "insure" them. [Citations omitted] Nor do they, by virtue of auditing a company's financial statements, somehow make, own or adopt the assertions contained therein. Rather, the end product of an audit is the audit report, which usually contains three concomitant paragraphs: the introduction, the scope and the opinion. A brief overview of these paragraphs, namely the first two, elucidates the relevant context in which [an auditor] rendered its unqualified opinion . . . .

*Id*. at 1174. The court then analyzed the three parts of a standard audit report and explained why the plaintiffs' interpretation of the language, scope and effect of the audit report was mistaken:

> Investors conveniently attempt to read Grant Thornton's opinion that the 1999 financial statements present Daw's financial position fairly in conformity with GAAP as an isolated statement of material fact. That is, Investors attempt to characterize it as a categorical statement separate from its stated basis. The audit report does not, however, allow for such a cropped reading. To the contrary, the audit report must be read in its entirety. When so read, it is readily apparent that the introductory paragraph tethers Grant Thornton's opinion to its stated basis: Grant Thornton's factual assertion that its audits were performed in accordance with GAAS and therefore provide an adequate basis for its opinion. It is against this backdrop that we must assess whether the [Complaint] satisfies the PSLRA's statement-reason-and basis requirements.

*Id.* at 1175-76. Thus, the Court concluded:

> The opinion paragraph, as the term suggests, is stated as an opinion of [the auditor] rather than a statement of absolute fact or a guarantee. . . . Because an [auditor's] opinion is couched in terms of a stated basis, a claim that the former is false or misleading must necessarily specify the reason or reasons why in terms of the latter. Such a showing would, for example, specify how (1) [an auditor] did not actually form its opinion regarding the [] financial statements based on its audits; or (2) it did not have a reasonable basis for its opinion because it did not plan and perform its audits of the [] financial statements in accordance with GAAS.

*Id*. at 1175-76.

Many other courts have recognized this critical aspect of the audit opinion and have held that to plead the objective falsity of an audit opinion, a plaintiff must plead both (1) a GAAP violation in the financial statements, and (2) that the audit did not comply with GAAS. *See, e.g.*, *Edward J. Goodman Life Income Trust v. Jabil Circuit, Inc.*, 595 F. Supp. 2d 1253, 1282 (M.D. Fla. 2009) *aff'd*, 594 F.3d 783 (11th Cir. 2010) (because an auditor's GAAP opinion is based on its GAAS audit, "[a]bsent sufficient allegations of GAAS violations, the plaintiffs' claim . . . fails"). Further, as explained in detail below, because an audit opinion is a statement of opinion,

"[a] plaintiff in a securities fraud action who asserts claims against an accountant based on the accountant's audit opinions is required to allege, with particularity, that the opinions issued were subjectively false—that is that the accountants did not actually believe their opinions when they were issued." *Belmont Holdings Corp. v. SunTrust Banks, Inc*., 1:09-CV-1185-WSD, 2012 WL 4096146, at *15 (N.D. Ga. Aug. 28, 2012); *In re Lehman Bros Sec. & Erisa Litig.*, 799 F. Supp. 2d 258, 303 (S.D.N.Y. 2011) (same).

The *In re Longtop* court similarly recognized these requirements for pleading a misrepresentation in audit opinions when the court recently rejected the argument Plaintiffs are making where, as here, the financial statements of a company with significant foreign operations were alleged to be fraudulently misstated and the plaintiffs that had purchased securities of the company sought recovery from the auditor who had issued opinions on the financial statements over several years. *In re Longtop Fin. Techs., Ltd. Sec. Litig.*, No. 11 Civ. 3658, 2012 WL 5512176, at *10 (S.D.N.Y. Nov. 14, 2012) (dismissing complaint against auditors). The court explicitly "adopted [the] sensible approach" set forth in *In re Lehman Bros* and held that the plaintiffs must "allege facts that, if true, would permit a conclusion that [the auditor] either did not in fact hold that opinion or knew that it had no reasonable basis for it." *Id*. Using that standard, the court held that, "Lead Plaintiffs failed to plead a material misstatement." *Id*. Applying here the same "sensible approach" produces the same sensible conclusion: Plaintiffs have failed to plead a misstatement.

As demonstrated below, Plaintiffs fail to plead falsity for four independent reasons: (1) they fail to identify any sources for their "information and belief" allegations; (2) they fail to allege facts sufficient to establish that KPMG HK failed to comply with GAAS; (3) they fail to plead adequately any actionable GAAP or internal control violations; and (4) they fail to allege that KPMG HK did not actually believe its audit opinions.

**1. <u>Plaintiffs' Information and Belief Allegations are Deficient</u>**

Plaintiffs acknowledge in their Amended Complaint that the only matters upon which they have personal knowledge are their own acts, and that all other allegations are on "information and belief." Am. Compl. ¶ 1. Where, as here, Plaintiffs' allegations against KPMG HK are based

entirely on "information and belief," the standard for pleading falsity is particularly demanding. Plaintiffs must allege "with particularity all facts on which that belief is formed." 15 U.S.C. § 78u–4(b)(1)(B). "This means [P]laintiff must provide, in great detail, all the relevant facts forming the basis of her belief." *In re Silicon Graphics Inc. Sec. Litig.*, 183 F.3d 970, 985 (9th Cir. 1999) *abrogated on other grounds as stated in South Ferry LP v. Killinger*, 542 F.3d 776, 784 (9th Cir. 2008); *In re Party City Sec. Litig.*, 147 F. Supp. 2d 282, 304 (D.N.J. 2001) ("The plain language of the PSLRA dictates that plaintiffs pleading on information and belief set forth each and every event, circumstance, confidential informant, employee or others who supply data which leads to the drafting of the complaint.").

Here, Plaintiffs' allegations against KPMG HK are admittedly made entirely on "information and belief." However, none of the purported sources of information identified by Plaintiffs contain any information at all about the actual audit procedures performed by KPMG HK or the basis of the audit opinions expressed by KPMG HK. *See* Am. Compl. ¶ 1. For example, Plaintiffs identify no witnesses with knowledge of KPMG HK's audits or the accounting function at ShengdaTech. Nor do they point to any documents in support of their allegations against KPMG HK. To gloss over this glaring deficiency, Plaintiffs assert that the facts supporting the allegations are known only to the Defendants, and they state that "Plaintiffs believe that further substantial evidentiary support will exist for the allegations in this Complaint after a reasonable opportunity for discovery." Am. Compl. ¶ 1.

Plaintiffs' admitted fishing expedition is precisely the type of situation that the PSLRA was designed to prevent. The Ninth Circuit has made clear that "[i]t is not sufficient for a plaintiff's pleadings to set forth a belief that certain unspecified sources will reveal, after appropriate discovery, facts that will validate her claim." *Silicon Graphics*, 183 F.3d at 985. The PSLRA requires plaintiffs to base complaints on their own knowledge rather than using "shot in the dark" allegations and hoping discovery will uncover supporting evidence. *SG Cowen Sec. Corp. v. U.S. Dist. Ct. for N. Dist. of CA*, 189 F.3d 909, 912 (9th Cir. 1999). The PSLRA was designed, in fact, to ensure that "complaints 'stand or fall based on the actual knowledge of the plaintiffs rather than information produced by the defendants after the action has been filed.'"

*Schlottmann*, 2012 WL 3135637, at *3.

In contravention of the PSLRA, Plaintiffs have attempted to plead GAAP and GAAS violations by making sweeping conclusions without any facts or evidence about what KPMG HK did and did not do during its audits based on the hope that they will discover facts and evidence in support of their claims through future discovery. This violates the PSLRA and is an abuse of the judicial process. Plaintiffs' claims against KPMG HK should be dismissed on this ground alone.

### 2. <u>Plaintiffs Fail to Allege Facts Establishing that KPMG HK Failed to Comply with GAAS</u>

As discussed above, to support their assertion that KPMG HK's audit opinions were false at the time they were stated, Plaintiffs must allege sufficient facts demonstrating that KPMG HK failed to comply with GAAS during its audits of ShengdaTech's 2008 and 2009 financial statements. *See, e.g.*, *Edward J. Goodman*, 595 F. Supp. 2d at 1282; *Deephaven*, 454 F.3d at 1175-76. Plaintiffs' GAAS allegations, however, consist of nothing more than unsupported conclusions and speculation on "information and belief." Plaintiffs do not plead any facts regarding what procedures KPMG HK did or did not perform during its audits, what information KPMG HK did or did not consider, or how KPMG HK's actual audit was deficient.

Plaintiffs' deficient and conclusory allegations mirror those found deficient by other courts: "Plaintiffs simply make the bare assertion [the auditor] violated GAAS rules, but without a shred of evidence about what [the auditor's] procedures or audits actually entailed, how the procedures specifically violated the standards, or that the alleged violations were purposeful or negligent." *In re Dell Inc., Sec. Litig.*, 591 F. Supp. 2d 877, 903 (W.D. Tex. 2008); *D.E.&J Ltd. P'ship v. Conaway*, 284 F. Supp. 2d 719, 741 (E.D. Mich. 2003) (dismissing claims and explaining that "nowhere does the Complaint specify the 'who, what, when, where and how' of any purported GAAS [generally accepted auditing standards] violations") *aff'd sub nom. D.E.&J. Ltd. P'ship v. Conaway*, 133 F. App'x 994 (6th Cir. 2005).

The absence of such basic factual allegations renders Plaintiffs' claim deficient as a matter of law. *See, e.g., U.S. ex rel. Pervez v. Beth Israel Medical Center*, 736 F. Supp. 2d 804, 812-13 (S.D.N.Y. 2010) (falsity not pled because the plaintiff "alleges nothing at all with respect to how

[the auditor] did or did not perform the audits, except to make the bare assertion that the results in and of themselves show that [the auditor] must not have [performed the audit in conformity with professional standards]."); *In re Dell*, 591 F. Supp. 2d at 903; *In re Longtop*, 2012 WL 5512176, at *10 (no misstatement pled where plaintiffs pled "[n]o facts" to show that auditor "was aware, or should have been aware, of wrongdoing").

Unable to plead any facts regarding what KPMG HK's audits actually entailed, Plaintiffs resort to two tactics to plead a GAAS violation. Plaintiffs' first tactic is to make sweeping, unsupported conclusions on information and belief regarding what KPMG HK failed to do during its audits. *See, e.g.*, Am. Compl. ¶¶ 104, 108, 110, 111 and 117. In fact, the entirety of Plaintiffs' GAAS allegations are formulaic citations to GAAS standards followed by conclusory statements on information and belief that KPMG HK did not comply with those standards. *See, e.g.*, Am. Compl. ¶¶ 103-104, 107-110, 115-117. Plaintiffs' failure to allege facts supporting their conclusory GAAS allegations render such allegations insufficient as a matter of law.

Plaintiffs' conclusory statements also fail to comply with the PSLRA's requirements for pleading allegations on "information and belief" as discussed above. Plaintiffs fail to reveal a single source that supports any of the conclusions made on "information and belief" regarding what KPMG HK did and did not do during its audits. Plaintiffs' unsupported, conclusory allegations do not meet the pleading standard for making allegations on "information and belief" and should not be considered.

Plaintiffs' second tactic to plead a GAAS violation in the absence of facts consists of asserting speculative, circular "should have" and "would have" allegations against KPMG HK. *See, e.g.*, Am. Compl. ¶¶ 108-09, 111-14, 120-22, 127. For instance, without alleging any facts or sources regarding what KPMG HK actually did and did not do during its audits, Plaintiffs repeatedly allege that certain information "should have" shaped KPMG HK's audit (¶ 120) and that KPMG HK "should have" performed various procedures such as "starkly question the Company's management" (¶ 122). Plaintiffs then allege that "if" or "had" KPMG HK performed certain procedures it "would have" discovered the fraud, and therefore KPMG HK must not have performed those procedures. Am. Compl. ¶¶ 65, 108, 109, 112-14. Courts, however, specifically

reject this particular type of speculative, circular pleading against auditors. *See, e.g., Lindner Dividend Fund, Inc. v. Ernst & Young*, 880 F. Supp. 49, 58-59 (D. Mass. 1995) ("would have" allegations held insufficient to state Section 18 claim); *Pervez*, 736 F. Supp. 2d at 813 (falsity not pled where plaintiffs merely made "the bare assertion that the results in and of themselves show that [the auditor] must not have [performed the audit in conformity with professional standards]."').[4] Such "would have" and "should have" allegations are not factual allegations at all, and they are insufficient as a matter of law. *See, e.g., Capital Ventures Int'l v. Network Commerce, Inc.*, C02-0682L, 2006 WL 681033, at *1 (W.D. Wash. Mar. 16, 2006) ("Congress enacted the PSLRA in large part because it was concerned that securities plaintiffs were filing suit based on nothing more than (1) speculation that the company 'must have' engaged in foul play and (2) the faint hope that the liberal rules of discovery would turn up some supporting evidence.") (citations omitted).

To similar effect, Plaintiffs' allegations that KPMG HK told ShengdaTech that actions should be taken to prevent "future reliance on [KPMG HK's] previously issued audit reports" does not constitute evidence that its audit opinions on the 2008 and 2009 financial statements were false at the time those opinions were issued. The fact that later events may cause the auditors to question the premises of their earlier issued audit opinions, such as questions that arise later about management integrity, does not refute the adequacy of the audit work performed years earlier. KPMG HK's discovery of discrepancies and unexplained errors in connection with its subsequent audit of the Company's 2010 financial statements does not *ipso facto* mean that KPMG HK did not conduct GAAS audits on the 2008 and 2009 financial statements and that it did not have a reasonable basis at those times, to express its opinions. Without that missing link, the allegations are not plausible, let alone in compliance with the requirements of the PSLRA and

---

[4] *See also In re SmarTalk Teleservices Sec., Inc. Litig.*, 124 F. Supp. 2d 505, 517 (S.D. Ohio 2000) (holding allegations insufficient and explaining: "the Plaintiffs plead that because errors were committed, Defendants must have violated the procedures set up to catch such errors and had they not violated these procedures, they would have caught the errors. These allegations fail under the PSLRA as overly general and speculative."); *D.E.&J*, 284 F. Supp. 2d at 741 (dismissing claims against auditor and holding that "[a]ll that Plaintiffs have done is recite a list of general GAAS requirements, and then assert, without any factual support, that because Kmart's financial statements were allegedly incorrect, PwC 'must have' violated those requirements.").

FRCP 9(b). *See In re Longtop*, 2012 WL 5512176, at *3, 10 (plaintiffs failed to allege a misstatement against auditors where auditors sent letter "urging" the company to inform "the public not to place reliance on [auditor's] earlier audit reports . . .").

Similarly, Plaintiffs also assert that ShengdaTech's SEC filings were inconsistent with ShengdaTech's subsidiaries' filings with the Chinese Administration of Industry and Commerce ("AIC"), that "[t]he results ShengdaTech reported to the AIC so materially diverged from what was reported to the SEC as to constitute the proverbial 'two sets of books,'" that these unidentified discrepancies "were sufficiently large that they cannot be 'explained away' as the result of differences between reporting standards between the AIC and the SEC," and that "[h]ad KPMG HK reviewed these AIC filing, it would have readily noted these material discrepancies." Am. Compl. ¶ 113. These allegations are also insufficient.

Notably absent is an allegation of anything in GAAS that required review of those statutory filings, nor is there any allegation that any copies of these statements provided or available to KPMG HK disclosed the discrepancies. Plaintiffs fail to identify the basic necessary facts to compare the AIC and the SEC filings and simply make a sweeping, conclusory statement with regard to the differences between financial documents filed with the AIC and GAAP compliant financial statements filed with the SEC.[5] Plaintiffs do not attach the AIC filings, nor do they even allege the dates of the AIC filings or any facts establishing that filings were available to KPMG HK during the audits of ShengdaTech's 2008 and 2009 financial statements. *See In re L & L Energy*, 2012 WL 6012787, at *3 ("Plaintiff did not attach any of the SAIC or SEC filings to his complaint, making it virtually impossible to determine whether the comparisons he draws are apples-to-apples.").

As other courts have determined, "when a securities fraud claim is based on discrepancies

[5]*See In re A-Power Energy Generation Sys. Ltd. Sec. Litig*., MDL 11-2302-GW CWX, 2012 WL 1983341, *8 (C.D. Cal. May 31, 2012) (holding AIC allegations insufficient where plaintiffs failed to allege "that compliance with PRC's GAAP is even required when filing with the SAIC or that A–Power's subsidiaries prepared their filings in compliance with GAAP."); *In re L & L Energy, Inc. Sec. Litig*., 2012 WL 6012787, at *4 (W.D. Wash. Dec. 3, 2012) (holding falsity not pled from alleged discrepancies between AIC and SEC filings because, among other things, reporting periods varied, inputs were different, and there were no allegations that subsidiaries' financial statements were audited or followed same accounting principles).

between AIC and SEC filings, the plaintiff must allege at least some facts to support that (1) the SEC figures, and not the AIC filings, are false, and (2) any variation is not attributable to variations in reporting rules or accounting standards." *In re China Valves Tech. Sec. Litig.*, 11 CIV. 0796 LAK, 2012 WL 4039852, at *6 (S.D.N.Y. Sept. 12, 2012); *see also Katz v. China Century Dragon Media, Inc.*, LA CV11-02769 JAK, 2011 WL 6047093, at *4 (C.D. Cal. Nov. 30, 2011) (holding AIC allegations insufficient where no allegations that same accounting standards applied and numbers came from same underlying financial data). Plaintiffs allege no such facts in the Amended Complaint.

**3. <u>Plaintiffs Fail to Allege Any Actionable GAAP Violations in ShengdaTech's 2008 and 2009 Financial Statements</u>**

In its audit reports on ShengdaTech's 2008 and 2009 financial statements, KPMG HK stated that it had audited ShengdaTech's financial statements in accordance with the standards of the PCAOB and that based on that work, KPMG HK's opinion was that the financial statements "present fairly, in all material respects, the financial position" of ShengdaTech under U.S. GAAP. Am. Compl. ¶¶ 80, 84. Because an auditor's GAAP opinion is based on its GAAS audit, "[a]bsent sufficient allegations of GAAS violations, the plaintiffs' claim . . . fails." *Edward J. Goodman*, 595 F. Supp. 2d at 1282. Here, Plaintiffs' failure to allege sufficient facts showing that KPMG HK did not conduct a GAAS audit (as demonstrated above) necessarily means that Plaintiffs have failed to sufficiently allege the falsity of KPMG HK's opinions that the Company's financial statements presented the financial condition of the Company in conformity with GAAP. *Deephaven*, 454 F.3d at 1175-76.

Plaintiffs' assertion that KPMG HK's GAAP opinion was false also fails for another fundamental reason. Plaintiffs fail to identify any GAAP rules that were allegedly violated. Plaintiffs assert that the "GAAP principles" that were applicable to ShengdaTech's financial statements that were allegedly violated were FASB Statements of Financial Accounting Concepts Nos. 1 and 2. Am. Compl. ¶ 74. However, the purported "GAAP principles" identified by Plaintiffs that were allegedly violated are not GAAP rules at all, and they are not part of the Financial Accounting Standards Board ("FASB") Accounting Standards Codification, which is

the source of authoritative GAAP. In fact, FASB Statement of Concept No. 1 (upon which Plaintiffs rely) states (emphasis added):

> Concepts Statements are **not** part of the FASB Accounting Standards Codification, which is the source of authoritative GAAP recognized by the FASB to be applied by nongovernmental entities . . . Unlike a Statement of Financial Accounting Standards, a Statement of Financial Accounting Concepts does **not** establish generally accepted accounting principles.

Because Statement of Concepts do not constitute GAAP rules, courts have expressly found that Statement of Concepts (including the very same Statement of Concepts Nos. 1 and 2 upon which Plaintiffs claims rely) cannot form the basis of a GAAP violation. *See In re Charles Schwab Corp. Sec. Litig.*, 257 F.R.D. 534, 561-62 (N.D. Cal. 2009) (holding that failure to follow FASB Statement of Concepts Nos. 1 and 2 does not support a claim for an alleged GAAP violation because Statement of Concepts does not establish generally accepted accounting principles). Thus, Plaintiffs' claims fail for the simple reason that they have not identified any actionable GAAP rules that were violated.

There is good reason why the Statement of Concepts relied upon by Plaintiffs are not part of GAAP. Mischaracterizing those generalized concepts as GAAP rules, as Plaintiffs do here, presents an effort to simply restate alleged GAAS audit failures as allegations of GAAP rule violations. Whereas GAAP consist of the conventions and rules that define accepted accounting practices and provide guidance as to how the financial data are to be assembled into financial statements, GAAS provides guidance to auditors as to the procedures that should be used in verifying the accuracy of data included in financial statements. Auditors perform audit procedures in accordance with GAAS to provide a basis to form and render an opinion as to whether the company's financial statements fairly present the company's financial position in accordance with GAAP. Here, there are no facts alleging a misapplication of such GAAP rules, say by misclassifying assets or recognizing revenue prematurely.

Finally, Plaintiffs' GAAP allegations are also defective for a third reason, because they are wholly conclusory. *See In re Milestone Scientific Sec. Litig.*, 103 F. Supp. 2d 425, 474 (D.N.J. 2000) ("[T]he mere assertion that the Defendants violated various provisions of GAAP, without providing any specific factual support, cannot meet the pleading requirements under the

PSLRA."); *In Re PEC Solutions Sec. Litig*., 03-CV-331, 2004 WL 1854202, at *12 (E.D. Va. May 25, 2004) ("Given that Plaintiffs do not provide sufficiently particular information regarding how PEC's financial statements violated GAAP, Plaintiffs' claims based upon allegations of accounting fraud must be dismissed."), *aff'd sub nom. In re PEC Solutions, Inc. Sec. Litig*., 418 F.3d 379 (4th Cir. 2005).

Plaintiffs merely recite certain financial figures reported in the 2008 and 2009 financial statements, including those for "cash," "total assets," "net sales," and "net income," and make the conclusory assertion that those numbers are overstated. Am. Compl. ¶¶ 79, 83. This is entirely insufficient under FRCP 9(b) and the PSLRA. *See In re Hutchinson Tech., Inc. Sec. Litig.*, 536 F.3d 952, 959 (8th Cir. 2008) ("NECA's allegations that earnings were overstated fail under the PSLRA because they are either bare allegations or allegations supported by anecdotal information about specific customers with no historical context.").[6]

Thus, for a variety of reasons, Plaintiffs fail to allege facts sufficient to establish that KPMG HK's GAAP opinion was false at the time it was issued.

**4. <u>Plaintiffs Fail to Allege Facts Establishing that KPMG HK's Internal Controls Opinion Was False</u>**

Plaintiffs also assert that KPMG HK's opinion expressed on the effectiveness of ShengdaTech's internal control over financial reporting in 2009 was false at the time that opinion was expressed. However, Plaintiffs' internal controls allegations fail for the same reasons that their GAAP and GAAS claims fail. As with their GAAP and GAAS claims, Plaintiffs do not allege the facts necessary to show that KPMG HK's internal control opinion was false at the time it was made.

First, Plaintiffs' claim with regard to the report on internal controls is based on the false premise that KPMG HK certified or guaranteed the effectiveness of ShengdaTech's internal

[6] *See also Alaska Elec. Pension Fund v. Adecco S.A.*, 434 F. Supp. 2d 815, 823 (S.D. Cal. 2006) (allegations insufficient where no "details" regarding "when and to what level" allowances for loan loss reserves were incorrect) *aff'd sub nom. In re Adecco S.A. Sec. Litig.*, 256 F. App'x 74 (9th Cir. 2007); *Indiana Elec. Workers' Pension Trust Fund IBEW v. Shaw Group, Inc.*, 537 F.3d 527, 536 (5th Cir. 2008) (allegations insufficient where plaintiffs made "no attempt to estimate by how much the earnings were inflated" and gave "no standard of comparison to what the correct numbers would have been").

controls over financial reporting, and, therefore, KPMG HK's opinion must be false if internal control deficiencies are subsequently identified. Am. Compl. ¶ 92. As with its GAAP claim, this misapprehends the auditor's role and mischaracterizes the statements made by the auditor in its internal controls opinion.

KPMG HK expressly stated in its 2009 internal control report that it conducted its audit in accordance with the standards of the PCAOB to obtain reasonable assurance about whether the Company maintained effective control over financial reporting. KPMG HK then expressed its opinion that based on the procedures it performed, it believed that the Company maintained effective control over financial reporting. Thus, it is clear that KPMG HK did not guarantee that ShengdaTech maintained effective control over financial reporting, and as discussed in detail above, KPMG HK is not liable as a matter of course if deficiencies are identified in subsequent audits. *See Edward J. Goodman*, 595 F. Supp. 2d at 1282 (dismissing complaint against auditor where the complaint failed "to allege particularized facts" showing that the auditor "failed to obtain an understanding of [the company's] internal controls).

In fact, Plaintiffs' assertion that ShengdaTech's internal controls over financial reporting were defective in 2009 is based entirely on their conclusory and defective allegations that ShengdaTech's financial statements violated GAAP. *See Janbay v. Canadian Solar, Inc.*, 10 CIV. 4430 RWS, 2012 WL 1080306, at *8 (S.D.N.Y. Mar. 30, 2012) ("Plaintiffs have failed to allege specific facts concerning the purportedly deficient internal controls, including how they were deficient, when and why."). But as the opinion expressly warned: "Because of its inherent limitations, internal control over financial reporting may not prevent or detect misstatements." RJN Ex. B, p 54. In any event, as demonstrated above, Plaintiffs have not alleged sufficient facts establishing that KPMG HK's GAAP opinions were false at the time those opinions were expressed. In the absence of a GAAP violation, an auditor's opinions on the sufficiency of the Company's internal control over financial reporting are immaterial as a matter of law. *See, e.g., Tabor v. Bodisen Biotech, Inc.*, 579 F. Supp. 2d 438, 454 (S.D.N.Y. 2008) (granting auditor defendants' motion to dismiss finding that internal controls opinion was not actionable without a materially false statement in the company's financial statements).

Plaintiffs' conclusory allegations do not come close to satisfying the applicable pleading standards. Plaintiffs do not specifically identify what internal controls were defective, or how they were defective. Nor do they allege any facts at all regarding KPMG HK's audit of the internal controls, or how or why the opinion KPMG HK reached and expressed based on its audit procedures was false at the time it was stated. Thus, Plaintiffs fail to allege sufficiently that KPMG HK's internal controls opinion was false at the time it was expressed.

### 5. <u>Plaintiffs Fail to Allege Facts Establishing that KPMG HK's Audit Opinions Were Subjectively False</u>

Even if Plaintiffs had alleged facts sufficient to establish that ShengdaTech's financial statements violated GAAP and that KPMG HK did not comply with GAAS, Plaintiffs' claims would still be defective because they fail to allege facts establishing that KPMG HK did not believe its audit opinions on ShengdaTech's 2008 and 2009 financial statements.

> [B]oth the [auditor's] GAAS assertion and GAAP assertions are matters of opinion, because both GAAS and GAAP are a collection of broad standards that are "couched in rather general and in some cases inherently subjective terms . . . requir[ing] for example, that the auditor plan the audit engagement properly, use 'due professional care," exercise "professional skepticism," and "assess the risk of material misstatement due to fraud all matters as to which reasonable professionals planning or conducting an audit reasonably and frequently could disagree."

*Buttonwood Tree Value Partners, LP v. Sweeney*, SACV 10-00537-CJC, 2012 WL 2086607, at *2 (C.D. Cal. June 7, 2012) (quoting *In re Lehman Bros*, 799 F. Supp. 2d at 301); *In re Longtop Fin.*, 2012 WL 5512176, at *10 (same).

In *Virginia Bankshares, Inc. v. Sandberg*, 501 U.S. 1083, 1092-96 (1991), the United States Supreme Court concluded that a statement of opinion must be *both* objectively and subjectively false. "The teaching of *Virginia Bankshares* is that an opinion is only false if the speaker does not in fact hold that opinion." *In re McKesson HBOC, Inc. Sec. Litig.*, 126 F. Supp. 2d 1248, 1265 (N.D. Cal. 2000). Because audit opinions are "matters of opinion," several cases applying the United States Supreme Court's opinion in *Virginia Bankshares* have held that "[a] plaintiff in a securities fraud action who asserts claims against an accountant based on the accountant's audit opinions is required to allege, with particularity, that the opinions issued were subjectively false—that is that the accountants did not actually believe their opinions when they

were issued." *Belmont Holdings*, 2012 WL 4096146, at *15; *Buttonwood Tree Value Partners, LP v. Sweeney*, SACV10-00537-CJC, 2012 WL 6644397, at *6 (C.D. Cal. Dec. 10, 2012) (dismissing claims against auditor because complaint was "completely devoid of any substantive allegation demonstrating that [the auditor] did not genuinely believe its opinions to be accurate when they were issued.").[7] Indeed, the Ninth Circuit Court of Appeals has specifically held statements of opinion can give rise to liability "only if the complaint alleges with particularity that the statements were both objectively and subjectively false or misleading." *Rubke v. Capital Bancorp Ltd*, 551 F.3d 1156, 1162 (9th Cir. 2009).

Plaintiffs do not allege that KPMG HK did not actually hold its audit opinions, or that it knew that it did not have a reasonable basis for them at the time they were issued. Thus, the Court should dismiss Plaintiffs' Section 18 claims for this reason as well.

**B. Plaintiffs Fail to Plead Reliance Sufficiently**

Plaintiffs' Section 18 claims also fail because they fail to plead sufficiently reliance on KPMG HK's 2008 and 2009 audit opinions. Unlike fraud claims under Section 10(b) of the Securities Exchange Act, "[a] § 18 claimant must allege actual reliance on the relevant misstatements or omissions in purchasing or selling a security, and may not allege constructive or presumed reliance." *Kelley*, 2008 WL 5170598, at *14. Plaintiffs must be able to plead actual, "eyeball" reliance on the particular statement at issue, in this case, KPMG HK's 2008 and 2009 audit opinions. "Conclusory assertions of reliance are insufficient, and plaintiffs must plead facts probative of their actual reliance on any specific false statement in the filings at issue." *Id.* (citation omitted).

This requires more than just broad allegations of reliance on particular documents. As the *Kelley* court explained: "Statements to the effect that plaintiffs 'received, reviewed, actually read, and relied upon' certain financial documents, or 'actually read and relied upon them in making their decisions to invest in [company] common stock,' are inadequate." *Id.* (citations omitted).

---

[7] *Accord In re Lehman Bros*, 799 F. Supp. 2d at 303 ("[T]he complaint must . . . set forth facts sufficient to warrant a finding that the auditor did not actually hold the opinion it expressed or that it *knew* that it had no reasonable basis for holding it.") (emphasis added); *In re Longtop Fin.*, 2012 WL 5512176, at *10 (discussed *supra* p. 19, adopting same "sensible approach").

Simply stating that Plaintiffs reviewed the audit opinion is not enough. As a court found in dismissing a claim against auditors based on a similar assertion of reliance on an audit opinion, "Plaintiffs only suggest that they read the Forms 10-K and Deloitte's certifications, without expressly alleging which documents they read, when they read them or how they impacted their decision to purchase or retain WaMu debt securities." *In re Washington Mut., Inc. Sec., Derivative, & ERISA Litig*., No. 2:08-md-01919-MJP, 2010 WL 1734848, at *6 (W.D. Wash. April 28, 2010).[8]

Plaintiffs do not come close to meeting this exacting standard for pleading reliance on KPMG HK's audit opinions. Plaintiffs allege no facts regarding their actual reliance, but merely state in conclusory fashion that they read and relied on KPMG HK's audit opinions. *See* Am. Compl. ¶¶ 3, 8, 14, 44, 71, 106, 147-49, 156-58. Plaintiffs allege no facts regarding when they read the opinions, who read the opinions or how those opinions affected their decisions to purchase the ShengdaTech Notes. These omissions are particularly glaring where the Plaintiffs are not individuals, but entities that can act and make decisions through the actions of many different individuals. Such perfunctory allegations are precisely what the courts have rejected previously as inadequate. *In re Century Aluminum Co. Sec. Litig.*, 11-15599, 2013 WL 11887, at *2 (9th Cir. Jan. 2, 2013) (holding that "conclusory allegation" that was "devoid of factual content" was not sufficient to plead plausible claim under *Iqbal* and *Twombly*).[9]

Plaintiffs' failure to plead facts regarding each of the purchases is even more problematic here, where Plaintiffs are attempting to bring claims on behalf of at least 46 clients, some of which allegedly assigned claims to them. Plaintiffs do not even identify the clients that

[8] *Accord In re. Supreme Specialties, Inc., Sec. Litig.*, 438 F.3d 256, 284 (3d Cir. 2006) (holding general allegations that plaintiffs relied on documents they reviewed were insufficient because plaintiffs failed "to plead facts probative of their actual reliance on any specific false statements contained in those filings"); *see also Int'l Fund Mgmt. S.A. v. Citigroup Inc.*, 822 F. Supp. 2d 368, 386 (S.D.N.Y. 2011) (dismissing Section 18 claims because the plaintiffs' reliance allegations were "conclusory" and lacked "supporting factual matter indicating *how* plaintiffs relied on the alleged misrepresentations.") (emphasis added).

[9] Plaintiffs' conclusory allegation that they relied on KPMG HK's audit opinions on the 2008 and 2009 financial statements are even more deficient since Plaintiffs allege that there was new and more recent, **unaudited** financial information included in the 6.5% Notes Offering Memorandum, "which the investing public, including Plaintiffs, understood to have been reviewed by Morgan Stanley . . . ." Am. Compl. ¶ 43.

allegedly assigned claims to them, and they allege no facts regarding when any of the purchases that their clients made took place or what information the clients considered in deciding to purchase the ShengdaTech Notes. In fact, despite bringing claims on behalf of 46 clients, Plaintiffs' reliance allegations group all of the funds and assignors together as "Plaintiffs" without any individualized facts regarding the alleged reliance by individual purchasers on the audit opinions. Plaintiffs have not specified the clients who may have purchased on the secondary market, when those purchases were made, or what information those that purchased on the secondary market may have relied upon.

Further, Plaintiffs actually concede that at least some of the actual purchasers never even read KPMG HK's audit opinions before they purchased the ShengdaTech Notes, but merely had their investment advisors read them. *See, e.g.*, Am. Compl. ¶¶ 139, 148, 157, 187. This is not sufficient. "Plaintiffs must allege that they personally read specific actionable misstatements in MMC filings covered by Section 18, and then purchased or sold securities in reliance on those misstatements." *In re Marsh & Mclennan Companies, Inc. Securities Litigation*, 501 F. Supp. 2d 452, 493 (S.D.N.Y. 2006) (dismissing Section 18 claim). Even if Plaintiffs could plead reliance through the investment managers, Plaintiffs fail to allege that the specific investment manager who read KPMG HK's audit reports is the same person who made the decision to purchase the Notes and that he or she relied on KPMG HK's statements to make the purchases at issue.[10]

### C. Plaintiffs Fail to Plead Loss Causation Sufficiently

Plaintiffs' Section 18 claims also fail because Plaintiffs have not adequately pleaded loss causation. *See, e.g.*, *In re Redback Networks, Inc. Sec. Litig.*, 329 F. App'x 715, 717 (9th Cir. 2009) (affirming dismissal of Section 18 claim for failure to plead loss causation). To plead loss causation, Plaintiffs must allege that "the practices that the plaintiff[s] contend[] are fraudulent were revealed to the market and caused the resulting losses." *Metzler Inv. GMBH v. Corinthian*

[10] Plaintiffs' lack of factual allegations supporting their reliance is particularly problematic in light of the fact that Plaintiffs purport to bring claims against KPMG HK based on alleged purchases of the 6.0% Notes. Am. Compl. ¶¶ 144-61 However, that offering took place before March 31, 2009 when KPMG HK issued its first audit opinion on ShengdaTech's 2008 financial statements. Am. Compl. ¶ 39. Of course, KPMG HK cannot be liable for any purchases that took place before it issued that opinion precisely because Plaintiffs could not have relied on any KPMG HK statement in making those purchases.

*Colleges, Inc.*, 540 F.3d 1049, 1063 (9th Cir. 2008). "[I]n cases where, as here, a plaintiff seeks to hold a[n] . . . auditor responsible for primary violations of the securities laws, the plaintiff must plead [and prove] that the market reacted negatively to some disclosure correcting the falsity in the . . . auditor's statements (and not simply the underlying fraud)." *Amorosa v. Ernst & Young LLP*, 682 F. Supp. 2d 351, 363 (S.D.N.Y. 2010) (citation omitted); *see also In re AOL Time Warner, Inc. Sec. Litig.*, 503 F. Supp. 2d 666, 679-80 (S.D.N.Y. 2007) (corrective disclosure allegations insufficient where "they do not reveal to the market the falsity of the prior E&Y audit opinions.") (citation omitted).

Plaintiffs fail to so plead loss causation here. Plaintiffs allege only that the market learned of potential financial discrepancies and unexplained errors that KPMG HK discovered during its audit work on ShengdaTech's 2010 financial statements, which audit was never completed. Plaintiffs allege no facts establishing that the market understood these revelations as also revealing that KPMG HK's audit opinions on the Company's 2008 or 2009 financial statements were not true as of the date those opinions were issued. Furthermore, even if such a leap were pleaded, Plaintiffs fail to plead facts making a temporal link between any revelation of the alleged falsity in KPMG HK's 2008 and 2009 audit opinions and the decline in value of the Notes. Plaintiffs allege that they purchased the Notes "at or near par, and in many cases above par value." Am. Compl. ¶ 131. Plaintiffs then make the conclusory statement that "[t]he Notes fell precipitously in response to the revelations of the financial irregularities at ShengdaTech." *Id.*

Applying the loss causation pleading standards to the impact of KPMG HK's actual statements, presumably the relevant inquiry is the impact of ShengdaTech's Form 8-K, filed on May 5, 2011, which reported that KPMG HK had informed it that "disclosures should be made and action should be taken to prevent future reliance on their previously issued audit reports related to [ShengdaTech's financial statements]." Am. Compl. ¶ 52. The Amended Complaint does not set forth facts, such as securities prices, showing that this disclosure had an impact on the debt securities Plaintiffs held. Plaintiffs allege no facts regarding any drop in prices for the 6.0% Notes, and the allegations regarding the 6.5% Notes are insufficient. Specifically, Plaintiffs allege that "[a]fter trading at or above $96 during the two weeks ended March 11, 2011, the 6.5%

Notes fell to a price of approximately $82 the following week." Am. Compl. ¶ 131. But Plaintiffs allege no facts regarding the specific dates the Notes allegedly dropped in value, why they dropped in value on those dates, and they identify no source for these allegations. *See In re L & L Energy*, 2012 WL 6012787, at *3 (loss causation not pled for certain statements because "Plaintiff has not . . . linked most of these statements to a drop in share price, either because there was no corrective disclosure or because there was no significant drop in share price following a disclosure."). Plaintiffs' allegations are insufficient to establish loss causation.[11]

## VI. THE COURT SHOULD DISMISS PLAINTIFFS' STATE LAW CLAIMS FOR LACK OF JURISDICTION IF IT DISMISSES THE SECTION 18 CLAIMS

Plaintiffs' only federal claims against KPMG HK are their Section 18 claims. Because Plaintiffs fail to plead facts sufficient to state these Exchange Act claims against KPMG HK, the Court should decline to exercise supplemental jurisdiction over Plaintiffs' state law claims.

"A district court's decision whether to exercise that jurisdiction after dismissing every claim over which it had original jurisdiction is purely discretionary." *Carlsbad Technology, Inc. v. HIF Bio, Inc*., 556 U.S. 635, 639 (2009) (citing 28 U.S.C. § 1367(c)). However, courts generally decline to exercise jurisdiction over pending state claims under such circumstances as the Court faces here. *See Halpern*, 2012 WL 4482680, at *3 (Mahan, J.) (declining to exercise supplemental jurisdiction after dismissing federal securities claims). Indeed, "[a] district court usually should decline the exercise of supplemental jurisdiction when all federal claims have been dismissed at the pleading stage." *Denney v. Deutsche Bank AG*, 443 F.3d 253, 266 (2d Cir. 2006) (citations omitted). Here, the Court should decline to exercise supplemental jurisdiction over Plaintiffs' state law claims since the sole basis for federal jurisdiction in this case against KPMG HK is Plaintiffs' deficient Section 18 claims.

## VII. PLAINTIFFS FAIL TO STATE A CLAIM FOR VIOLATIONS OF CONNECTICUT'S SECURITIES ACT

The Connecticut Uniform Securities Act ("CUSA"), Section 36b-29(a) provides, in

[11] In any event, Plaintiffs do not, and cannot, plead loss causation against KPMG HK for purchases of Notes that took place before KPMG HK issued its first audit opinion. *See Hildes v. Andersen*, 08-CV-0008-BEN RBB, 2010 WL 4811975, at *2 (S.D. Cal. Nov. 8, 2010) ("The Ninth Circuit has recognized that the acquisition of stock before the date of the alleged misrepresentation bars a plaintiff from asserting reliance or causation under Section 10(b).").

relevant part:

> (a) Any person who . . . (2) offers or sells or materially assists any person who offers or sells a security by means of any untrue statement of material fact or any omission to state a material fact necessary in order to make the statements made, in light of the circumstances under which they are made, not misleading, who knew or in the exercise of reasonable care should have known of the untruth or omission, the buyer not knowing of the untruth or omission, and who does not sustain the burden of proof that he did not know, and in the exercise of reasonable care could not have known, of the untruth or omission is liable to the person buying the security . . . .

Conn. Gen. Stat. § 36b–29. Plaintiffs' CUSA claims must be pled with particularity under FRCP 9(b*). See IM Partners v. Debit Direct Ltd.*, 394 F. Supp. 2d 503, 518 (D. Conn. 2005) (applying FRCP 9(b) because the CUSA claims based on misrepresentations and omissions "sound in fraud"). Plaintiffs fail to plead sufficiently either the necessary primary violation or that KPMG HK materially assisted a sale of securities.

**A. Plaintiffs Fail to Plead a Primary Violation**

Plaintiffs allege that KPMG HK "materially assisted ShengdaTech in selling the 6.5% Notes . . . ." Am. Compl. ¶ 215. However, in order to plead a claim for material assistance under the relevant provisions of CUSA, Plaintiffs must first allege a primary violation relating to each of the purchases. *See Connecticut Nat. Bank v. Giacomi*, 242 Conn. 17, 46, 699 A.2d 101, 118 (Conn. 1997) (holding that in order for a plaintiff to properly plead a claim for material assistance, "[f]irst there must be a primary violator").

Plaintiffs do not name ShengdaTech as a defendant, and they do not even allege any facts regarding the purchases that were made on the secondary market, including from whom those purchases were made, or when those purchases took place. Without identifying the secondary market sellers, Plaintiffs cannot possibly plead that KPMG HK materially assisted those sellers in the sale of the securities on the secondary market. Therefore, the Court should dismiss Plaintiffs' CUSA claim.

**B. Plaintiffs Fail to Allege that KPMG HK Materially Assisted Any Sale of Securities**

"In order for conduct to violate this section as 'material assistance,' to which we refer as aiding and abetting, it must also be proven that the aider or abettor materially assisted the primary

violator: (1) in the offer or sale; and (2) in the violation by which the primary violator accomplished the offer or sale." *Giacomi*, 699 A.2d at 118. Plaintiffs fail to allege facts establishing that KPMG HK materially assisted the securities sales. Plaintiffs do not allege that KPMG HK marketed the Notes to the Plaintiffs, provided any advice, information or documents to Plaintiffs to induce their purchases, participated in meetings with Plaintiffs, prepared any portion of the Offering Memorandum, had a financial interest in the offerings of the Notes, played a managerial role at ShengdaTech or otherwise offered or sponsored the sales of the Notes. Indeed, Plaintiffs do not even allege facts establishing that KPMG HK consented to the use of its audits opinions in the 6.5% Notes Offering Memorandum.[12] Nor can Plaintiffs assert that KPMG HK's audit opinions were incorporated into the 6.0% Notes Offering Memorandum, which was issued in 2008 before KPMG HK had even conducted any audits of ShengdaTech. Am. Compl. ¶ 39. Without such allegations, there is no basis to assert a claim of material assistance.

## VIII. PLAINTIFFS' NEGLIGENT MISREPRESENTATION CLAIM SHOULD BE DISMISSED

To support a claim of negligent misrepresentation, a plaintiff must plead that: (1) "a false representation was made," (2) "the representation was made in the course of a defendant's business or that the defendant had a pecuniary interest in the action," (3) "the representation was for the guidance of others in their business transactions," (4) "the plaintiff justifiably relied on a defendant's representation," (5) "this reliance resulted in pecuniary loss to the relying party" and (6) "the defendant did not exercise reasonable care or competence in obtaining or communicating the information." *Story-McPherson v. Bank of Am*., N.A., 2:11-CV-01470-KJD, 2012 WL 2000693, at *3 (D. Nev. June 5, 2012). "Claims of intentional and negligent misrepresentation must be pled with particularity pursuant to Fed.R.Civ.P. 9(b)." *Tene v. BAC Home Loan Servicing LP*, 2:11-CV-01095-KJD, 2012 WL 222920, at *3 (D. Nev. Jan. 25, 2012). In several different respects, Plaintiffs' pleading of negligent misrepresentation falls short.

---

[12] Plaintiffs allege that KPMG HK consented to the inclusion of its 2008 and 2009 audit opinions in the 6.5% Notes Offering Memorandum, but the 6.5% Notes Offering Memorandum does not contain any Consent from KPMG HK, and Plaintiffs cite no factual basis for their assertion that KPMG HK gave such consent. RJN Ex. C.

**A. Plaintiffs' Claims Should Be Dismissed to the Extent They are Based on Assigned Claims**

Plaintiffs' negligent misrepresentation claims that are based on assignments of interests to Plaintiffs are defective as a matter of law. *See, e.g.*, Am. Compl. ¶¶ 18-24. Nevada law prohibits the assignment of negligent misrepresentation claims. *See In re AgriBioTech, Inc.*, 319 B.R. 207, 210 (D. Nev. 2004) ("Nevada law prohibits the assignment of fraud and negligent misrepresentation claims").

**B. Plaintiffs Fail to Allege that KPMG HK Owed It Any Duty**

In determining liability for negligent misrepresentation, Nevada has adopted the Restatement (Second) of Torts § 552. *See Copper Sands Homeowners Ass'n. Inc. v. Copper Sands Realty, LLC*, 2:10-CV-00510-GMN, 2012 WL 987996, at *3 (D. Nev. Mar. 20, 2012) ("Nevada has adopted Restatement (Second) of Torts § 552."). Section 552 limits liability to losses suffered "(a) by the person or one of a limited group of persons for whose benefit and guidance he intends to supply the information or knows that the recipient intends to supply it; and (b) through reliance upon it in a transaction that he intends the information to influence or knows that the recipient so intends or in a substantially similar transaction." Restatement (Second) of Torts § 552(2) (1977) (emphasis added).

Courts applying Restatement (Second) of Torts § 552 have held repeatedly that an auditor retained to conduct an annual audit and furnish an audit opinion has no duty to the general investing public for claims of negligent misrepresentation. "[A]n auditor retained to conduct an annual audit and to furnish an opinion for no particular purpose generally undertakes no duty to third parties." *Bily*, 3 Cal. 4th at 393, 834 P.2d at 758; *see also Washington Mut*., 2010 WL 1734848, at *7 (citing *Bily*, and holding that an auditor was not liable to investors where its audit statement is merely disseminated by the company to the general investing public); *Grant Thornton LLP v. Prospect High Income Fund*, 314 S.W.3d 913, 919 (Tex. 2010) (citing *Bily* application of the Restatement rule on auditor liability and holding that fund that purchased bonds was outside the auditor's scope of liability for negligent misrepresentation to a third party); *Nycal Corp. v. KPMG Peat Marwick LLP*, 426 Mass. 491, 498, 688 N.E.2d 1368, 1372-73 (Mass. 1998)

(dismissing negligent misrepresentation claim against auditors).

Liability against an auditor may only be imposed when the auditor "undertakes to supply information to a third party whom [the auditor] knows is likely to rely on it in a transaction that has sufficiently specific economic parameters to permit [the auditor] to assess the risk of moving forward." *Bily*, 3 Cal. 4th at 409, 834 P.2d at 769. Further, an auditor's "liability is fixed by the accountants' particular knowledge at the moment the audit [report] is published." *Nycal*, 426 Mass at 498, 834 P.2d at 1372. An accounting firm cannot be made liable for its audit opinion by events occurring after the issuance of the opinion without express further action by the firm to acknowledge and consent to that later use.

Plaintiffs allege that KPMG HK (1) "consented" to the incorporation of its audit opinions in the 6.5% Notes Offering Memorandum and (2) "knew and intended that potential purchasers who received the 6.5% Offering Memorandum would rely on its contents . . . ." Am. Compl. ¶ 182. Plaintiffs plead no facts in support of either of these conclusory assertions. Plaintiffs have not alleged with particularity that KPMG HK signed any such consent statement, and no such statement appears in the Offering Memorandum. RJN Ex. C. Nor do Plaintiffs otherwise assert any facts that support the conclusion that KPMG HK provided express consent to the inclusion of its earlier audit opinions in the 6.5% Offering Memorandum. Further, Plaintiffs do not allege any facts supporting their allegation that KPMG HK knew and intended that potential purchasers of the 6.5% Notes rely on its audit opinions.[13]

### C. Plaintiffs Fail to Allege that KPMG HK Did Not Exercise Reasonable Care

Plaintiffs also fail to allege that KPMG HK "did not exercise reasonable care or

---

[13] Allegations that simply assert that an auditor was aware of the later transaction, and was aware that, in connection with that transaction, the client was choosing to include earlier-issued financial statements, are not sufficient. *See Nordica USA, Inc. v. Deloitte & Touche, LLP*, 839 F. Supp. 1082, 1090-91 (D. Vt. 1993) (no duty to plaintiffs where, at some time after the audit opinions were issued, auditor was notified that its reports would be provided by its client to potential shareholders in the client). As the *Nordica* court recognized, "[i]f accountants, when notified years after an audit that past financial statements are being forwarded to third parties, could be held liable to those third parties, accountant's liability would be virtually unlimited." *Id.* at 1090. The court further noted: "Under plaintiffs' reading, a client could contract for audit services and forward the documents to unlimited numbers of third parties years later. The accountant would then be liable to all the third parties if the client, years after the audit, let the accountant know of the third party involvement." *Id.* at 1090 n.12.

competence in obtaining or communicating the information." *Story-McPherson*, 2012 WL 2000693, at *3; *Bily*, 3 Cal. 4th at 407, 834 P.2d at 768. As explained above, KPMG HK issued its opinions after completing its audits. Plaintiffs, however, do not allege any facts establishing that KPMG HK did not comply with GAAS in conducting its audit work, or otherwise failed to conduct its audits with reasonable care.

### D. Plaintiffs Fail to Allege an Untrue Statement, Reliance and Causation

For the reasons set forth above, *see supra* pp. 15-34, Plaintiffs also fail to plead that KPMG HK made an untrue statement of material fact, that they relied on KPMG HK's audit opinions in purchasing ShengdaTech's 6.5% Notes, or that the revelation of the impropriety by the Company impacting on KPMG HK's 2008 and 2009 audit opinions caused the losses that they allegedly incurred in 2011.[14]

## IX. CONCLUSION

Despite two attempts, Plaintiffs have not alleged sufficient facts to support their claims against KPMG HK, and it is now clear that those claims are based on unsupported and speculative conclusions. For the foregoing reasons, KPMG HK respectfully requests that Plaintiffs' claims against KPMG HK be dismissed with prejudice. *See In re Saxton, Inc. Sec. Litig.*, Case No. CV-S-00-1521-JCM (RJJ), at *3 (D. Nev. April 5, 2002) (Mahan, J.) (denying plaintiffs' request for leave to amend against auditor where plaintiffs "failed to offer particular facts to support their claims or to identify additional facts of which they are aware that are not pled in the Amended Complaint."), *aff'd in part*, 156 F. App'x 917, 920 (9th Cir. 2005).

[14] Federal courts apply federal loss causation principles to state common law fraud and negligent misrepresentation claims. *See, e.g.*, *Kelley v. Rambus, Inc.*, No. C 07-01238 JF, 2008 WL 1766942, at *2 (N.D. Cal. April 17, 2008) (holding that loss causation is an element of California common law fraud claim and applying federal loss causation case law to such claim).

DATED: January 7, 2013

CAMPBELL & WILLIAMS

By: *s/Donald J. Campbell*
Donald J. Campbell (Nevada Bar # 1216)
djc@campbellandwilliams.com
J. Colby Williams (Nevada Bar # 5549)
jcw@campbellandwilliams.com
700 S. Seventh Street
Las Vegas, NV 89101
(702) 382-5222

BINGHAM MCCUTCHEN LLP
Edward S. Kim
(*Admitted Pro Hac Vice)*
edward.kim@bingham.com
Craig A. Taggart
(*Admitted Pro Hac Vice*)
craig.taggart@bingham.com
600 Anton Boulevard, 18th Floor
Costa Mesa, CA 92626-1924
(714) 830-0622

BINGHAM MCCUTCHEN LLP
Geoffrey F. Aronow
(*Admitted Pro Hac Vice*)
geoffrey.aronow@bingham.com
2020 K Street NW
Washington, DC 20006-1806
(202) 373-6000

Attorneys for Defendant KPMG HK

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that the foregoing **KPMG HK'S MOTION TO DISMISS AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' CONSOLIDATED AMENDED COMPLAINT** was served on the 7th day of January 2013 via the Court's CM/ECF electronic filing system addressed to all parties on the e-service list.

**__/s/ *Donald J. Campbell*__________________**
An employee of Campbell & Williams