CAMPBELL & WILLIAMS
Donald J. Campbell
Nevada Bar # 1216
J. Colby Williams
Nevada Bar # 5549
700 S. Seventh Street
Las Vegas, NV 89101
Telephone: (702) 382-5222
Facsimile: (702) 382-0540
Email: djc@campbellandwilliams.com
jcw@campbellandwilliams.com

BINGHAM MCCUTCHEN LLP
Jeffrey Q. Smith (Admitted *Pro Hac Vice*)
(NY Bar #1376961)
399 Park Avenue
New York, New York 10022-4689
Telephone: 212.705.7000
Facsimile: 212.752.5378
Email: jq.smith@bingham.com

BINGHAM MCCUTCHEN LLP
Edward S. Kim (*Admitted Pro Hac Vice*)
(CA Bar #192856)
Craig A. Taggart (*Admitted Pro Hac Vice*)
(CA Bar #239168)
600 Anton Boulevard
Suite 1800
Costa Mesa, California 92626-7653
Telephone: 714.830.0600
Facsimile: 714.830.0700
Email: edward.kim@bingham.com
craig.taggart@bingham.com

Attorneys for Defendant
KPMG HK

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

OAKTREE CAPITAL MANAGEMENT, L.P., on behalf of its managed funds and accounts, LAZARD ASSET MANAGEMENT LLC, on behalf of its managed funds and accounts, ANGELO, GORDON & CO., L.P., on behalf of one of its managed funds, ZAZOVE ASSOCIATES LLC, on behalf of certain of its managed funds and accounts, CNH PARTNERS, LLC, on behalf of its managed funds, ADVENT CAPITAL MANAGEMENT, LLC, on behalf of one of its managed funds, AQR CAPITAL MANAGEMENT, LLC, on behalf of its managed funds, HFR CA LAZARD RATHMORE MASTER TRUST,

Case No. 12-CV-00956-JCM-(GWF)

**KPMG HK'S REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' CONSOLIDATED AMENDED COMPLAINT**

Judge: The Honorable James C. Mahan

and DELAWARE PUBLIC EMPLOYEES' RETIREMENT SYSTEM,

Plaintiffs,

v.

KPMG, KPMG INTERNATIONAL COOPERATIVE, KPMG LLP, HANSEN, BARNETT & MAXWELL, P.C., and MORGAN STANLEY & CO.,

Defendants.

# TABLE OF CONTENTS


**Page**

I. INTRODUCTION .......... 1

II. PLAINTIFFS LACK STANDING TO BRING CLAIMS IN A REPRESENTATIVE CAPACITY ON BEHALF OF THEIR CLIENTS AND MANAGED FUNDS .......... 3

A. Plaintiffs Admit That They Did Not Plead Or Obtain Assignments For The Managed Funds .......... 3

B. Plaintiffs Also Failed To Plead Valid Assignments For The Individual Clients Who Allegedly Assigned Their Claims .......... 4

III. PLAINTIFFS' SECTION 18 CLAIMS SHOULD BE DISMISSED .......... 6

A. Plaintiffs Fail To Rebut KPMG HK's Showing That The Section 18 Claims Do Not Comply With The PSLRA And FRCP 9(b) .......... 6

B. Plaintiffs Fail To Plead Falsity Against KPMG HK .......... 7

1. Plaintiffs Do Not Properly Plead that KPMG HK's Audit Opinions Were False .......... 7

2. Plaintiffs Fail Properly to Plead Subjective Falsity .......... 12

C. Plaintiffs Fail To Plead Reliance .......... 13

D. Plaintiffs Fail Properly To Plead Loss Causation .......... 14

E. The Statute Of Limitations Bars DPERS' Section 18 Claim .......... 16

IV. PLAINTIFFS' NEGLIGENT MISREPRESENTATION CLAIM SHOULD BE DISMISSED .......... 17

A. Negligent Misrepresentation Claims Cannot Be Assigned .......... 17

B. Plaintiffs Fail To Plead Facts Establishing That KPMG HK Owed Them Any Duty .......... 17

V. PLAINTIFFS' CONNECTICUT UNIFORM SECURITIES ACT CLAIM SHOULD BE DISMISSED .......... 19

VI. CONCLUSION .......... 20

## TABLE OF AUTHORITIES

Page(s)

**CASES**

*Amorosa v. Ernst & Young LLP*,
682 F. Supp. 2d 351 (S.D.N.Y. 2010) ........ 14

*Anahuac Mgmt. v. Mazer*,
2:09-CV-01590-MMD, 2013 WL 211080 (D. Nev. Jan. 18, 2013) ........ 17

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ........ 5

*Bily v. Arthur Young & Co.*,
3 Cal. 4th 370, 834 P.2d 745 (1992) ........ 18

*Bolt v. Merrimack Pharmaceuticals, Inc.*,
503 F.3d 913 (9th Cir. 2007) ........ 11

*Boykin v. Arthur Andersen & Co.*,
639 So. 2d 504 (Ala. 1994); 76 So. 3d 228 (Ala. 2011) ........ 19

*Buttonwood Tree Value Partners, LP v. Sweeney*,
SACV10-00537-CJC, 2012 WL 6644397 (C.D. Cal. Dec. 10, 2012) ........ 12, 13

*Capital Ventures Int'l v. Network Commerce, Inc.*,
C02-0682L, 2006 WL 681033 (W.D. Wash. Mar. 16, 2006) ........ 1

*Citizens State Bank v. Timm, Schmidt & Co., S.C.*,
335 N.W.2d 361 (1983) ........ 19

*Conn. Nat'l Bank v. Giacomi*,
699 A.2d 101 (1997) ........ 19

*Cortec Indus., Inc. v. Sum Holding L.P.*,
949 F.2d 42 (2d Cir. 1991) ........ 20

*Deephaven Private Placement Trading, Ltd. v. Grant Thornton & Co.*,
454 F.3d 1168 (10th Cir. 2006) ........ 10

*Duke v. Touche Ross & Co.*,
765 F. Supp. 69 (S.D.N.Y. 1991) ........ 19

*Edward J. Goodman Life Income Trust v. Jabil Circuit, Inc.*,
595 F. Supp. 2d 1253 (M.D. Fla. 2009) *aff'd* 594 F.3d 783 (11th Cir. 2010) ........ 10

*Employers-Teamsters Local Nos. 175 & 505 Pension Trust Fund v. Anchor Capital Advisors*,
498 F.3d 920 (9th Cir. 2007)........................................................................................ 3

*Glenbrook Capital Ltd. P'ship v. Kuo*,
C07-02377 JSW, 2009 WL 839289 (N.D. Cal. Mar. 30, 2009) ............................................. 7

*Gould v. Winstar Communications, Inc.*,
692 F.3d 148 (2d Cir. 2012)......................................................................................... 14

*Halpern v. Lightyear Network Solutions, Inc.*,
2:12-CV-340 JCM RJJ, 2012 WL 4482680 (D. Nev. Sept. 26, 2012) .................................. 17

*Hayes v. Arthur Young*,
34 F.3d 1072 (9th Cir. 1994)........................................................................................ 19

*Hufnagle v. Rino Int'l Corp.*,
CV 10-08695 DDP VBKX, 2013 WL 160223, at *2 (C.D. Cal. Jan. 14, 2013) .................... 12

*In re A-Power Energy Generation Sys. Ltd. Sec. Litig.*,
MDL 11-2302-GW CWX, 2012 WL 1983341 (C.D. Cal. May 31, 2012)............................... 9

*In re AgriBioTech, Inc.*,
319 B.R. 207 (D. Nev. 2004) ........................................................................................ 17

*In re Apple Computer Sec. Litig*,
886 F.2d 1109 (9th Cir. 1989)...................................................................................... 13

*In re Charles Schwab Corp. Sec. Litig.*,
257 F.R.D. 534 (N.D. Cal. 2009)........................................................................... 10, 11

*In re Consol. Meridian Funds*,
485 B.R. 604 (Bankr. W.D. Wash. 2013) ......................................................................... 5

*In re Enron Corp. Sec., Derivative & "ERISA" Litig.*,
540 F. Supp. 2d 800 (S.D. Tex. 2007) ............................................................................. 7

*In re Health Mgmt. Sys. Inc. Sec. Litig.*,
No. 97-1865, 1998 WL 283286 (S.D.N.Y. June 1, 1998) ..................................................... 7

*In re Immersion Corp. Sec. Litig.*,
C 09-4073 MMC, 2011 WL 6303389 (N.D. Cal. Dec. 16, 2011) ......................................... 15

*In re L & L Energy, Inc. Sec. Litig.*,
11-1423RSL, 2012 WL 6012787 (W.D. Wash. Dec. 3, 2012)........................................... 9, 16

*In re Longtop Fin. Technologies Ltd. Sec. Litig.*,
11 CIV. 3658, 2012 WL 5512176 (S.D.N.Y. Nov. 14, 2012) ............................................... 12

*In re Party City Sec. Litig.*,
147 F. Supp. 2d 282 (D.N.J. 2001) ........ 7

*In re Saxton, Inc. Sec. Litig.*,
Case No. CVS-00-1521-JCM (RJJ), at *3 (D. Nev. April 5, 2002) ........ 2

*In re Silicon Graphics Inc. Sec. Litig.*,
183 F.3d 970 (9th Cir. 1999) ........ 6, 20

*In re SLM Corp. Sec. Litig.*,
258 F.R.D. 112 (S.D.N.Y. 2009) ........ 4

*In re Washington Mut., Inc. Sec., Derivative & ERISA Litig.*,
2:08-MD-1919 MJP, 2010 WL 1734848 (W.D. Wash. Apr. 28, 2010) ........ 18

*Kohala Agric. v. Deloitte & Touche*,
949 P.2d 141 (Hawaii Ct. App. 1997) ........ 19

*Lane v. Page*,
581 F. Supp. 2d 1094 (D.N.M. 2008) ........ 13

*McGuire v. Dendreon Corp.*,
688 F. Supp. 2d 1239 (W.D. Wash. 2009) ........ 13

*Metyk v. KeyCorp*,
1:10 CV 2112, 2013 WL 331122 (N.D. Ohio Jan. 29, 2013) ........ 16

*Meyer v. Greene*,
12-11488, 2013 WL 656500 (11th Cir. Feb. 25, 2013) ........ 15

*Monaco v. Bear Stearns Companies, Inc.*,
CV 09-05438 SJO JCX, 2011 WL 4059801 (C.D. Cal. Sept. 12, 2011) ........ 16

*MVP Asset Mgmt. (USA) LLC v. Vestbirk*,
2:10-CV-02483-GEB, 2011 WL 1457424 (E.D. Cal. Apr. 14, 2011) ........ 3, 4

*MVP Asset Mgmt. (USA) LLC v. Vestbirk*,
2:10-CV-02483-GEB, 2012 WL 33043 (E.D. Cal. Jan. 6, 2012) ........ 5

*Nat'l Real Estate Opportunity Fund I, LP v. Kliment*,
CV-12-0301-PHX-DGC, 2012 WL 3264519 (D. Ariz. Aug. 9, 2012) ........ 5

*Nordica USA, Inc. v. Deloitte & Touche, LLP*,
839 F. Supp. 1082 (D. Vt. 1993) ........ 18

*Poptech, L.P. v. Stewardship Inv. Advisors, LLC*,
849 F. Supp. 2d 249 (D. Conn. 2012) ........ 20

*Prosky v. Clark*,
109 P. 793 (Nev. 1910) ........ 17

*Righthaven LLC v. Dr. Shezad Malik Law Firm P.C.*, 2:10-CV-0636-RLH-RJJ, 2010 WL 3522372 (D. Nev. Sept. 2, 2010) .................................. 5

*Righthaven LLC v. Newman*, 838 F. Supp. 2d 1071 (D. Nev. 2011) .................................................................... 4, 5

*Rubke v. Capitol Bancorp Ltd*, 551 F.3d 1156 (9th Cir. 2009)........................................................................... 7, 13

*Rumsfeld v. United Technologies Corp.*, 315 F.3d 1361 (Fed. Cir. 2003)........................................................................... 11

*S. Ferry LP No. 2 v. Killinger*, 271 F.R.D. 653 (W.D. Wash. 2011) ....................................................................... 3

*Sanctuary Surgical Ctr., Inc. v. Conn. Gen. Life Ins. Co.*, No. 11-80800-CV, 2012 WL 28263 (S.D. Fla. Jan. 5, 2012) ................................................ 5

*South Ferry LP, No. 2 v. Killinger*, 542 F.3d 776 (9th Cir. 2008)................................................................................. 7

*Virginia Bankshares, Inc. v. Sandberg*, 501 U.S. 1083 (1991)............................................................................................ 13

*W.R. Huff Asset Mgmt. Co., LLC v. Deloitte & Touche LLP*, 549 F.3d 100 (2d Cir. 2008)......................................................................... 3, 4

*White v. Lee*, 227 F.3d 1214 (9th Cir. 2000)............................................................................... 4

**OTHER AUTHORITIES**

AICPA's Statement on Auditing Standards No. 69 ........................................................ 11

FASB Statement of Concept No. 1 ............................................................................... 11

FASB Statement No. 168 ............................................................................................. 11

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I. INTRODUCTION

"Congress enacted the PSLRA in large part because it was concerned that securities plaintiffs were filing suit based on nothing more than (1) speculation that [a defendant] 'must have' engaged in foul play and (2) the faint hope that the liberal rules of discovery would turn up some supporting evidence." *Capital Ventures Int'l v. Network Commerce, Inc.*, C02-0682L, 2006 WL 681033, at *1 (W.D. Wash. Mar. 16, 2006). Plaintiffs concede that their Section 18 claims against KPMG HK are subject to the PSLRA's heightened pleading standards and that all of their allegations of wrongdoing against KPMG HK are pled solely on information and belief, which triggers particularly demanding pleading rules under the PSLRA.

Although Plaintiffs try to suggest otherwise, the broad categories of documents Plaintiffs reference to support their information and belief allegations contain no information whatsoever about the procedures KPMG HK performed during its audits, what documents it reviewed, or what information it considered in reaching its audit opinions. Because Plaintiffs obviously possess no facts regarding the actual audit work KPMG HK performed, Plaintiffs attempt to use hindsight and conjecture to spin a speculative and circular chain of inferences about what KPMG HK should have done, what it would have discovered and what accounting judgments it would have and should have reached. But, this style of pleading -- which uses speculation, labels and conclusions in place of facts -- is precisely the type of pleading the PSLRA prohibits.

Plaintiffs' speculation unravels quickly when subjected to even minimal scrutiny. For example, Plaintiffs rely heavily on their repeated assertion that "if" KPMG HK had verified ShengdaTech's assets, it would have learned that bank accounts that reportedly held over $73 million actually held only $50,000. But these purported bank balances do not relate to the 2008 and 2009 financial statements audited by KPMG HK, but instead refer to figures as of December 31, 2010 and thereafter. Despite the obvious factual disconnect, Plaintiffs repeatedly and improperly seek to use these alleged bank balances to support the conclusion that KPMG HK somehow failed to conduct a GAAS audit and did not verify ShengdaTech's assets during its audits of the 2008 and 2009 financial statements, which were conducted well before the time of

the balances mentioned by Plaintiffs.

Plaintiffs also have not identified any actual GAAP rules that were allegedly violated. Indeed, Plaintiffs mistakenly rely on an outdated version of the GAAP hierarchy that does not even apply to the audits at issue in this case. Under the GAAP rules that apply to this case, which were instituted in November 2008, the FASB Statement of Concepts cited by Plaintiffs are not recognized as part of the GAAP hierarchy and, as the more recent authority recognizes, the purported violation of those concepts cannot form the basis of a GAAP claim. *See* Mot. at 25-27.

Plaintiffs also lack standing to assert their claims in a representative capacity because they did not receive valid assignments of those claims. For the managed funds, Plaintiffs admit they did not plead any such assignments in the Amended Complaint, and they acknowledge in their Opposition that only one of the seven Plaintiffs actually obtained assignments from the investment funds they manage. As for their individual clients, Plaintiffs ask the Court to accept the bare legal conclusion that valid assignments were made without pleading basic facts such as who made the assignments, what claims were assigned and when. Plaintiffs' conclusory allegations that valid assignments were made are legally insufficient.

No doubt appreciating these and other fatal legal deficiencies discussed more fully below, Plaintiffs ask for yet another chance to plead a viable claim. But, Plaintiffs have already been given two chances to plead their claims, and they have not demonstrated that there is any reason to believe they will ever be able to plead proper claims against KPMG HK. Because Plaintiffs clearly do not know what KPMG HK did in conducting the relevant audits, Plaintiffs seem to believe it is permissible to just guess about what must have happened and hope that liberal rules of discovery will somehow reveal facts to support their claims. But, this is exactly the type of approach that the PSLRA was intended to eliminate. Because Plaintiffs have already been given two opportunities to plead their claims and have still not identified any additional facts that could be pleaded to satisfy the rigorous pleading standards of the PSLRA, their claims against KPMG HK should be dismissed with prejudice at this time. *See In re Saxton, Inc. Sec. Litig.*, Case No. CVS-00-1521-JCM (RJJ), at *3 (D. Nev. April 5, 2002) (Mahan, J.) (denying plaintiffs' request for leave to amend against auditor where plaintiffs "failed to offer particular facts to support their

claims or to identify additional facts of which they are aware that are not pled in the Amended Complaint."), *aff'd in part*, 156 F. App'x 917, 920 (9th Cir. 2005).

## II. PLAINTIFFS LACK STANDING TO BRING CLAIMS IN A REPRESENTATIVE CAPACITY ON BEHALF OF THEIR CLIENTS AND MANAGED FUNDS

### A. Plaintiffs Admit That They Did Not Plead Or Obtain Assignments For The Managed Funds

In its Motion, KPMG HK demonstrated that Plaintiffs lack standing to assert claims in a representative capacity on behalf of the investment funds which purchased ShengdaTech Notes because they failed to obtain assignments of those claims from the real parties in interest -- the managed funds. Mot. at 10-12. In their Opposition, Plaintiffs admit that the claims belong to the managed funds and that those claims were not assigned to the named Plaintiffs: "[**T]he Managed Funds' claims, though being pursued through their investment managers, are not alleged to have been assigned**." Opp. at 45 n.52 (emphasis added). This admission confirms that Plaintiffs lack standing to prosecute these claims because investment managers who pursue claims in a representative capacity on behalf of the funds they manage must first obtain valid assignment of those claims because the real parties in interest are the managed funds. *See W.R. Huff Asset Mgmt. Co., LLC v. Deloitte & Touche LLP*, 549 F.3d 100, 110-11 (2d Cir. 2008); *S. Ferry LP No. 2 v. Killinger*, 271 F.R.D. 653, 658 (W.D. Wash. 2011); *MVP Asset Mgmt. (USA) LLC v. Vestbirk*, 2:10-CV-02483-GEB, 2011 WL 1457424, at *1-2 (E.D. Cal. Apr. 14, 2011).

Plaintiffs elect not to address any of these authorities, which are directly on point. Instead, Plaintiffs argue that fund managers have "automatic" standing to pursue claims in a representative capacity on behalf of funds they manage, neglecting to cite even a single case to support their position.[1] Plaintiffs' fallback position is that one of the Plaintiffs (Zazove) actually obtained assignments from two of the funds it managed. Opp. at 11 n.13. This allegation is not

[1] Plaintiffs cite *Employers-Teamsters Local Nos. 175 & 505 Pension Trust Fund v. Anchor Capital Advisors*, 498 F.3d 920, 922 n.1 (9th Cir. 2007) for the proposition that the Ninth Circuit has supposedly **not ruled** on the issue of whether investment managers lack standing to sue on behalf of their clients. Opp. at 8. But, *Anchor Capital Advisors* was decided before *W.R. Huff*. Numerous district courts in the Ninth Circuit have since adopted the reasoning of *W.R. Huff*, which requires assignments under these circumstances. *See, e.g.*, *S. Ferry LP No. 2*, 271 F.R.D. at 658 (applying *W.R. Huff*); *MVP*, 2011 WL 1457424, at *1-2 (same).

contained in Plaintiffs' Amended Complaint and cannot be considered on this motion. The argument also begs the question why one of the Plaintiffs obtained assignments from the funds it managed if such assignments were unnecessary, as Plaintiffs argue.

Plaintiffs also argue (again without any legal support) that there is "no good cause" to require them to obtain assignments from the managed funds and that any such requirement would be "circular" because they would be assigning claims to themselves. Opp. at 11. This argument conveniently but mistakenly ignores the fact that the managed funds are separate entities that are separately identified in Plaintiffs' Certificate of Interested Parties filed in this action as entities that have a monetary interest in the outcome of this case. This argument was also rejected in *W.R. Huff* and *MVP*, where the investment managers even had a power-of-attorney, but "did not have an ownership stake in any claims its clients might pursue against defendants." *W.R. Huff*, 549 F.3d at 109; *MVP*, 2011 WL 1457424, at *2.

As their final fallback position, Plaintiffs argue that they should be allowed to amend their pleading yet again to obtain and plead valid assignments. However, Plaintiffs' admission that they did not receive valid assignments from eighteen of the twenty managed funds before filing this action is a substantive defect that deprives the named Plaintiffs of standing at the outset of the case and requires dismissal of the claims with prejudice. *See Righthaven LLC v. Newman*, 838 F. Supp. 2d 1071, 1075 (D. Nev. 2011) (Mahan, J.) (amendments to assignments did not create standing "because '[t]he existence of federal jurisdiction ordinarily depends on the facts *as they exist when the complaint was filed.*'").[2]

**B. <u>Plaintiffs Also Failed To Plead Valid Assignments For The Individual Clients Who Allegedly Assigned Their Claims</u>**

Plaintiffs also assert claims in a representative capacity on behalf of certain individual clients whose accounts Plaintiffs managed. In doing so, Plaintiffs allege the conclusion that they obtained valid assignments, but never plead any facts regarding who assigned the claims to

---

[2] *See also White v. Lee*, 227 F.3d 1214, 1243 (9th Cir. 2000) ("Standing is examined at 'the commencement of the litigation.'"); *In re SLM Corp. Sec. Litig.*, 258 F.R.D. 112, 115 (S.D.N.Y. 2009) ("While Rule 17(a) allows for the substitution of a real party in interest, a plaintiff must have 'Article III standing at the outset of the litigation.'").

whom, what claims were assigned and when this supposedly happened. As a matter of law, Plaintiffs are required to allege specific facts regarding the alleged assignment of claims. *See MVP Asset Mgmt. (USA) LLC v. Vestbirk*, 2:10-CV-02483-GEB, 2012 WL 33043, at *3 (E.D. Cal. Jan. 6, 2012) (bare allegations that assignments were made are insufficient to plead the existence of valid assignment of claims); *see also Sanctuary Surgical Ctr., Inc. v. Conn. Gen. Life Ins. Co*., No. 11-80800-CV, 2012 WL 28263, at *3 (S.D. Fla. Jan. 5, 2012) (same). It is undisputed that Plaintiffs have not done so.

Plaintiffs argue that "[n]umerous courts have held that there is no such pleading requirement, and that the allegation of a valid assignment must be accepted as true for purposes of a motion to dismiss." Opp. at 9. However, none of the cases Plaintiffs cite support their assertion, and none of those cases even address whether the plaintiffs pleaded sufficient facts regarding an assignment.[3] The suggestion that conclusory assignment allegations must be accepted as true also contradicts the well-established rule that courts are not required to accept the truth of legal conclusions. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions."); *see also Righthaven*, 838 F. Supp. 2d at 1075 (Mahan, J.) (analyzing sufficiency of assignment at pleading stage).

Plaintiffs admit that the Amended Complaint does not identify the individuals who allegedly assigned their claims to Plaintiffs but argue that "examples" of the assignors can be identified through Plaintiffs' Certificate of Interested Parties, which Plaintiffs filed under seal. Opp. at 7 n.4. Vague references to unspecified "examples" in a document that is not part of the Amended Complaint cannot be used to supplement the missing facts in their pleading. For the same reasons, the Court should disregard Plaintiffs' improper attempt to supplement the missing

---

[3] Plaintiffs' cases address whether certain claims could be assigned at all, and whether the written assignment must be attached to the complaint. *See In re Consol. Meridian Funds*, 485 B.R. 604, 610-12 (Bankr. W.D. Wash. 2013) (discussing **whether the claims could be assigned** rather than evaluating the existence of an assignment); *Righthaven LLC v. Dr. Shezad Malik Law Firm P.C.*, 2:10-CV-0636-RLH-RJJ, 2010 WL 3522372, *2 (D. Nev. Sept. 2, 2010) (addressing **whether an assignment must be attached to a complaint**); *Nat'l Real Estate Opportunity Fund I, LP v. Kliment*, CV-12-0301-PHX-DGC, 2012 WL 3264519, *3 (D. Ariz. Aug. 9, 2012) (challenging **validity of assignment** and addressing **whether assignment must be attached to complaint** ).

allegations in their Amended Complaint by attaching three redacted "examples" of the twenty-six assignments that were allegedly made.[4]

## III. PLAINTIFFS' SECTION 18 CLAIMS SHOULD BE DISMISSED

### A. Plaintiffs Fail To Rebut KPMG HK's Showing That The Section 18 Claims Do Not Comply With The PSLRA And FRCP 9(b)

Plaintiffs concede that the PSLRA applies to their Section 18 claim. Opp. at 14-15. Plaintiffs also acknowledge that the only matters upon which they have personal knowledge are their own acts, and that all other allegations, including all the allegations asserted against KPMG HK, are made on information and belief. Am. Compl. ¶ 1. This necessarily means Plaintiffs must "specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed.'" Opp. at 14-15 (quoting 15 U.S.C. § 78u–4(b)(1)(B)).

Plaintiffs claim they satisfied the PSLRA standard by referencing six broad categories of documents identified in paragraph 1 of the Amended Complaint, which allegedly form the basis of their information and belief allegations against KPMG HK. Opp. at 24. Those include unspecified SEC filings and ShengdaTech press releases, offering memoranda for the 6.0% and 6.5% Notes offerings, unspecified filings in ShengdaTech's bankruptcy proceeding and unspecified news articles. Am. Compl. ¶ 1. That is the entirety of Plaintiffs' effort to satisfy the rigorous standard under the PSLRA, and it falls well short of what the law requires.

The Ninth Circuit and numerous other courts have held that vague references to broad categories of documents in the opening paragraph of a complaint are insufficient to comply with the PSLRA's requirements for pleading allegations on information and belief. *See, e.g., In re Silicon Graphics Inc. Sec. Litig.*, 183 F.3d 970, 984 (9th Cir. 1999) ("boilerplate" paragraph insufficient to satisfy PSLRA's "information and belief" requirement), *abrogated on other*

---

[4] Plaintiffs argue, without any support, that they need not plead assignments because they wish to keep the assignors' names confidential. Plaintiffs assert in their Opposition that the clients include charitable foundations, insurance companies and pension funds. Opp. at 7 n.4. However, Plaintiffs cite no basis or authority to keep the names of such entities confidential.

*grounds by South Ferry LP, No. 2 v. Killinger*, 542 F.3d 776, 784 (9th Cir. 2008); *In re Party City Sec. Litig.*, 147 F. Supp. 2d 282, 307 (D.N.J. 2001) ("[B]oilerplate introductory paragraph does not provide the particularity required under the PSLRA. . . . Plaintiffs do not sufficiently identify the particular SEC filings and press releases that allegedly support their information and belief allegations.").[5]

The rule is particularly important here because the categories of documents referenced in the Amended Complaint's first paragraph do not provide <u>any</u> factual basis for Plaintiffs' allegations against KPMG HK. None of those documents contain information regarding how KPMG HK performed its audits, which audit procedures were performed and what information KPMG HK reviewed and considered as part of its audits. Plaintiffs' allegations against KPMG HK are based on sheer speculation, which is insufficient. *See Rubke v. Capitol Bancorp Ltd*, 551 F.3d 1156, 1166 (9th Cir. 2009) (citing *Silicon Graphics* and holding allegations insufficient where plaintiff did not "reveal 'the sources'" or explain how she knew certain facts); *Glenbrook Capital Ltd. P'ship v. Kuo*, C07-02377 JSW, 2009 WL 839289, at *9 (N.D. Cal. Mar. 30, 2009) (PSLRA's "information and belief" requirement "is to prevent a plaintiff from citing vague reports and unspecified sources in the hopes that discovery will turn up something actionable.")[6]

**B. <u>Plaintiffs Fail To Plead Falsity Against KPMG HK</u>**

**1. <u>Plaintiffs Do Not Properly Plead that KPMG HK's Audit Opinions Were False</u>**

**a.** <u>Plaintiffs Fail to Plead that KPMG HK Violated GAAS</u>

To state a proper claim under Section 18, Plaintiffs must allege sufficient facts tending to show that KPMG HK failed to comply with GAAS during its audits of ShengdaTech's financial statements. While Plaintiffs claim that "[t]he Complaint describes numerous ways in which the

---

[5] *See also In re Health Mgmt. Sys. Inc. Sec. Litig.*, No. 97-1865, 1998 WL 283286, at *3 (S.D.N.Y. June 1, 1998) (introductory paragraph purportedly detailing the basis for plaintiffs' information and belief allegations fails to satisfy the PSLRA).

[6] Since Plaintiffs concede that the heightened pleading standards of the PSLRA apply, Plaintiffs' argument challenging the application of FRCP 9(b) is moot. Regardless, Plaintiffs do not cite a single case where a court has declined to apply FRCP 9(b) to a Section 18 claim, and as shown in KPMG HK's Motion, courts in fact routinely apply FRCP 9(b) to Section 18 claims. *See* Mot. at 15; *see also, e.g., In re Enron Corp. Sec., Derivative & ""ERISA" Litig.*, 540 F. Supp. 2d 800, 814-15 (S.D. Tex. 2007) (applying FRCP 9(b)).

auditors violated PCAOB and GAAS standards by failing to exercise due professional care," Opp. at 16 (citing Am. Compl. ¶¶ 103-123), all those allegations are made entirely on "information and belief," and they all fail to identify any source that contains any information regarding KPMG HK's audit work. Indeed, all five alleged examples cited by Plaintiffs where KPMG HK purportedly violated GAAS by failing to exercise due professional care are based on speculative and conclusory assertions without any factual basis. Opp. at 16-17.

*First*, Plaintiffs argue that KPMG HK violated GAAS because it supposedly failed to take steps to "verify that ShengdaTech's reported assets, including bank accounts and CDs, actually existed during 2007-2009." Opp. at 17. Plaintiffs argue that "if" KPMG HK performed those tasks, it would have learned that ShengdaTech was overstating its assets and that bank accounts that reportedly held over $70 million actually held only $50,000. *Id*. Plaintiffs allege no facts to support this bare conclusion, and the sources for Plaintiffs' "information and belief" allegations contain no information regarding the audit procedures KPMG HK performed to verify ShengdaTech's assets during its audits of the 2008 and 2009 financial statements. Moreover, those purported bank balances do <u>not</u> even relate to the 2008 and 2009 financial statements that KPMG HK audited. Rather the source document Plaintiffs cite for this allegation states that those bank accounts were supposed to contain approximately $73 million <u>as of December 31, 2010</u>, but contained only $50,000 <u>as of some unspecified time after March 26, 2011</u>. *See* Supp. RJN, Ex. A (ShengdaTech's Bankruptcy Disclosure Statement). KPMG HK did not render any opinions on ShengdaTech's financial condition or financial statements as of those dates, but instead issued its last audit opinion on ShengdaTech's financial statements <u>as of December 31, 2009</u>.

*Second*, Plaintiffs assert that "KPMG failed to send confirmations to ShengdaTech's customers to confirm its sales transactions." Opp. at 17. However, Plaintiffs cite no GAAS rules that required KPMG HK to send confirmations to customers to confirm sales transactions. Further, this assertion that KPMG HK did not send confirmations is entirely speculative and is alleged solely on information and belief. The sources identified to support Plaintiffs' information and belief allegations do not contain any information at all about KPMG HK's audit procedures, let alone whether KPMG HK sent confirmations to ShengdaTech's customers as part of its 2008

and 2009 audits. Plaintiffs are simply guessing about the audit procedures KPMG HK performed.

*Third*, Plaintiffs argue that "KPMG HK failed to conduct a crosscheck of the financial statements that were being presented for filing in ShengdaTech's U.S. Form 10-K filings against those that its operating subsidiaries had filed with Chinese regulators." Opp. at 17. Again, Plaintiffs cite no source for the bare conclusion asserted on "information and belief" that KPMG HK did not review the AIC filings. Further, Plaintiffs do not even attempt to respond to KPMG HK's arguments in its Motion establishing that these allegations are defective. Mot. at 24-25. Plaintiffs also do not cite any GAAS provision that required KPMG HK to review ShengdaTech's subsidiaries' AIC filings. Moreover, Plaintiffs allege none of the facts that other courts have required to support allegations regarding alleged discrepancies between a company's SEC filings and its subsidiaries' AIC filings.[7]

*Fourth*, Plaintiffs allege that "KPMG HK failed to perform appropriate audit procedures with respect to transactions between ShengdaTech and entities owned by its Chief Executive Officer." Opp. at 17. Once again, Plaintiffs are guessing about whether KPMG HK performed such procedures but are presenting their speculation as "factual" assertions made on information and belief with no source cited supporting the claim. ShengdaTech's SEC filings identified many related party transactions with its CEO, and Plaintiffs allege no facts indicating that the 2008 and 2009 financial statements did not properly account for any related party transaction.

*Fifth*, Plaintiffs allege that after KPMG HK discovered "weaknesses in ShengdaTech's internal controls during its audit of the 2009 Financial Statements, KPMG HK failed to shape its audit procedures to take those weaknesses into account . . . ." Opp. at 17. But, as stated in its audit reports, KPMG HK found material weaknesses in ShengdaTech's internal controls during its audit of the <u>2008</u> financial statements, <u>not 2009</u>. It cannot be disputed that after KPMG HK

---

[7] *See In re A-Power Energy Generation Sys. Ltd. Sec. Litig.*, MDL 11-2302-GW CWX, 2012 WL 1983341, *8 (C.D. Cal. May 31, 2012) (holding AIC allegations insufficient where plaintiffs failed to allege "that compliance with PRC's GAAP is even required when filing with the SAIC or that A–Power's subsidiaries prepared their filings in compliance with GAAP."); *In re L & L Energy, Inc. Sec. Litig*., 11-1423RSL, 2012 WL 6012787, at *3-4 (W.D. Wash. Dec. 3, 2012) (holding falsity not pled from alleged discrepancies between AIC and SEC filings because, among other things, reporting periods varied, inputs were different, and there were no allegations that subsidiaries' financial statements were audited or followed same accounting principles).

reported on the weakness in the internal controls over financial reporting in its 2008 audit report, ShengdaTech disclosed in its subsequent quarterly 10-Q filings throughout 2009 that it was taking steps to remediate the internal control deficiencies identified by KPMG HK during its 2008 audit. *See* Supp. RJN, Exs. B-D. Plaintiffs are speculating about the audit procedures KPMG HK performed based on a demonstrably inaccurate factual premise.

**b.** Plaintiffs Likewise Fail to Plead the Falsity of KPMG HK's GAAP Opinion

As shown in KPMG HK's moving papers, Plaintiffs' GAAP allegations fail for two basic reasons. First, because an auditor's GAAP opinion is based on its GAAS audit, "[a]bsent sufficient allegations of GAAS violations, the plaintiffs' claim . . . fails." *Edward J. Goodman Life Income Trust v. Jabil Circuit, Inc.*, 595 F. Supp. 2d 1253, 1282 (M.D. Fla. 2009) *aff'd* 594 F.3d 783 (11th Cir. 2010). As demonstrated above, Plaintiffs' failure to allege sufficient facts showing that KPMG HK did not conduct a GAAS audit necessarily means that Plaintiffs have failed to allege sufficiently the falsity of KPMG HK's opinions that the Company's financial statements presented the financial condition of the Company in conformity with GAAP. *See Deephaven Private Placement Trading, Ltd. v. Grant Thornton & Co.*, 454 F.3d 1168, 1175-76 (10th Cir. 2006).

Second, Plaintiffs' GAAP claim fails because Plaintiffs fail to identify any GAAP rules that were allegedly violated. Plaintiffs base their GAAP claim on the alleged violation of FASB Statement of Concepts Nos. 1 and 2. Am. Compl. ¶ 74, Opp. at 19-21. However, as demonstrated in KPMG HK's Motion, the Statement of Concepts cited by Plaintiffs is not part of the controlling FASB Accounting Standards Codification, which is the source of authoritative GAAP. Because the Statement of Concepts does not constitute GAAP rules, it cannot form the basis of a GAAP violation. *See In re Charles Schwab Corp. Sec. Litig.*, 257 F.R.D. 534, 561-62 (N.D. Cal. 2009) (holding that failure to follow FASB Statement of Concepts Nos. 1 and 2 does not support a claim for an alleged GAAP violation because Statement of Concepts does not establish generally accepted accounting principles).

In their Opposition, Plaintiffs attempt to suggest there is a conflict in the authorities on

this issue by citing to an older line of cases to support their argument that the FASB Statements of Financial Accounting Concepts are the "fifth and final level of authority" in the GAAP hierarchy and thus form a basis for GAAP rules. Opp. at 21 (citing *Bolt v. Merrimack Pharmaceuticals, Inc.*, 503 F.3d 913, 917 n.6 (9th Cir. 2007); *Rumsfeld v. United Technologies Corp.*, 315 F.3d 1361, 1374 n.17 (Fed. Cir. 2003)). But, there is no conflict because Plaintiffs' argument, and the older line of cases they rely upon, address a superseded version of the GAAP hierarchy. The more recent *Charles Schwab* case addresses the revised GAAP hierarchy that applies to KPMG HK's audits of ShengdaTech's 2008 and 2009 financial statements.

The *Bolt* and *Rumsfeld* cases cited by Plaintiffs rely on the AICPA's Statement on Auditing Standards No. 69 ("SAS No. 69") as the source of the GAAP hierarchy. However, on May 9, 2008, FASB issued Statement No. 162, revising the GAAP hierarchy which resulted in the Auditing Standards Board formally withdrawing SAS No. 69. Supp. RJN, Ex. E. And, in Statement No. 162, which now governs the GAAP hierarchy, FASB Statements of Financial Accounting Concepts are **not** listed as GAAP authority, but rather are placed in a category labeled "other accounting literature" along with other non-authoritative guidance.[8] *Id*. Statement No. 162 became effective on November 13, 2008, ***before*** KPMG HK issued any of its audit opinions at issue in this case. *Id*. Plaintiffs neither acknowledge this rule change, nor cite a single case supporting their position that was issued after this change took effect.[9]

In contrast, the case cited by KPMG HK, *Charles Schwab*, was decided in 2009 and squarely holds that "a Statement of Financial Accounting Concepts does not establish generally accepted accounting principles."[10] 257 F.R.D. at 561. In fact, FASB Statement of Concept No. 1

---

[8] This change in the hierarchy was further emphasized by FASB Statement No. 168 (effective July 1, 2009), which established the new "Codification" as the sole source of authoritative non-governmental GAAP. Supp. RJN, Ex. G. Statement No. 168 replaced Statement No. 162 with a two-level hierarchy consisting only of authoritative and non-authoritative guidance. *Id*. Again, under this guidance, FASB Statements of Financial Accounting Concepts are deemed non-authoritative. *Id*.

[9] Statement 162 also emphasizes that "the GAAP hierarchy should be directed to entities because it is the entity (not its auditor) that is responsible for selecting accounting principles for financial statements that are presented in conformity with GAAP." Supp. RJN, Ex. G.

[10] The other cases Plaintiffs cite in support of their contention that a violation of a FASB Statement of Financial Accounting Concepts constitutes as violation of GAAP were likewise issued before SAS No. 69 was withdrawn.

(upon which Plaintiffs rely) now states that: "Unlike a Statement of Financial Accounting Standards, a Statement of Financial Accounting Concepts does **not** establish generally accepted accounting principles." Supp. RJN, Ex. F (emphasis added).

In addition to relying on an outdated GAAP hierarchy, Plaintiffs' conclusory GAAP allegations are also based on a false factual record. Plaintiffs cite to paragraphs 76, 79, 83 and 88 of the Amended Complaint to support their argument that "the financial statements materially overstated ShengdaTech's cash and cash equivalents, total assets, sales, and net income." Opp. at 20. And, to support this conclusory assertion, Plaintiffs argue once again that "bank accounts that were reported to contain $73 million actually contained only about $50,000. Opp. at 20 (citing Am. Compl. ¶ 69). As explained above, none of the purported bank balance figures relate back to the 2008 and 2009 financial statements that KPMG HK audited.

### 2. <u>Plaintiffs Fail Properly to Plead Subjective Falsity</u>

Plaintiffs' GAAP and GAAS allegations fail for another basic reason. As demonstrated in KPMG HK's Motion, because audit opinions are expressed as matters of opinion, Plaintiffs must plead that KPMG HK's GAAP and GAAS opinions were ***both*** subjectively and objectively false at the time those opinions were issued. Mot. at 29-30. In their Opposition, Plaintiffs claim that KPMG HK's audit opinions are statements of fact, not opinion. Opp. at 16, 22. To the contrary, courts in this Circuit and elsewhere have held that an auditor's GAAS and GAAP statements are statements of opinion, including several recent cases involving audit opinions expressed on the financial statements of companies with principal operations in China. *See, e.g.*, *Hufnagle v. Rino Int'l Corp.*, CV 10-08695 DDP VBKX, 2013 WL 160223, at *2 (C.D. Cal. Jan. 14, 2013) ("'[A]n auditor's [generally accepted accounting standards] and GAAP assertions are statements of professional judgment and opinion, not verifiable fact.'"); *In re Longtop Fin. Technologies Ltd. Sec. Litig.*, 11 CIV. 3658, 2012 WL 5512176, at *10 (S.D.N.Y. Nov. 14, 2012) (same).[11]

Plaintiffs also attempt to argue that they "have alleged the subjective falsity of . . . KPMG HK's audit reports." Opp. at 15. That is simply not true. There are no factual allegations in the

---

[11] *Accord Buttonwood Tree Value Partners, LP v. Sweeney*, SACV10-00537-CJC, 2012 WL 6644397, at *6 (C.D. Cal. Dec. 10, 2012) ("[A]n auditor's GAAS and GAAP assertions are statements of professional judgment and opinion, not verifiable fact.").

Amended Complaint showing that KPMG HK did not believe its audit opinions at the time they were issued. Instead, Plaintiffs conflate the standards for pleading objective and subjective falsity by arguing that "a statement of belief or opinion is actionable when there is no reasonable basis for that belief." Opp. at 22 n.29. However, this same argument was rejected by the court in *Lane v. Page*, 581 F. Supp. 2d 1094, 1127 (D.N.M. 2008) because it "turns every objectively false statement of belief into one that is also subjectively false."

Plaintiffs also rely on *In re Apple Computer Sec. Litig*, 886 F.2d 1109, 1113 (9th Cir. 1989) for the proposition that a statement of opinion is false under the securities laws "where there is no reasonable basis for the belief." Opp. at 22 n.29. But, *Apple Computer* was decided before the Supreme Court's seminal decision in *Virginia Bankshares, Inc. v. Sandberg*, 501 U.S. 1083 (1991), which requires plaintiffs to plead the subjective falsity of opinions. Courts have recognized that the Ninth Circuit's recent decision in *Rubke* effectively overruled *Apple Computer*. *See McGuire v. Dendreon Corp.*, 688 F. Supp. 2d 1239, 1242 (W.D. Wash. 2009) ("*Rubke* leads inexorably to the conclusion that *Apple Computer* is no longer the standard regarding statements of opinion in securities litigation.")[12]

### C. **Plaintiffs Fail To Plead Reliance**

Plaintiffs concede that they must plead "eyeball reliance" to state a claim under Section 18. Opp. at 25. To meet this standard, Plaintiffs must allege facts establishing that they actually relied on the alleged misstatements contained in KPMG HK's audit opinions on ShengdaTech's 2008 and 2009 financial statements in deciding to purchase the ShengdaTech Notes at issue. Plaintiffs argue that they satisfied this standard by lumping together 46 separate clients and managed funds under the term "Plaintiffs" and then stating a perfunctory formulaic conclusion that "Plaintiffs" read and relied on KPMG HK's audit opinions. Opp. at 25-26. Plaintiffs'

[12] Plaintiffs cite the earlier *Buttonwood* decision for the proposition that "no reasonable basis" would suffice to plead subjective falsity. Opp. at 22 n.29. But in a subsequent order, the *Buttonwood* court rejected the plaintiffs' argument that it could plead subjective falsity by asserting that the auditor had no reasonable basis for its opinion. *See Buttonwood Tree*, 2012 WL 6644397, at *6 (allegations that the auditor knew it had no legal or professional justification for blessing the financial statements was insufficient because the complaint was "completely devoid of any substantive allegation demonstrating that [the auditor] did not genuinely belief its opinions to be accurate when they were issued").

allegations fall well short of satisfying the strict "eyeball reliance" standard.

In its Motion, KPMG HK cited numerous decisions holding that conclusory allegations asserting that plaintiffs actually read and relied on the alleged misstatements are insufficient to plead eyeball reliance under Section 18. Mot. at 30-31. The cases Plaintiffs rely on in their Opposition are inapposite. For example, *Gould v. Winstar Communications, Inc.*, 692 F.3d 148, 161 (2d Cir. 2012) is a summary judgment case and does not address the requirements for pleading eyeball reliance. Moreover, none of the other cases Plaintiffs cite address claims brought on behalf of multiple parties, nor do they support the argument that numerous plaintiffs can plead the individual reliance element of a Section 18 claim through a conclusory assertion that all plaintiffs, grouped together, read and relied on the alleged misstatements at issue.

Plaintiffs' failure to plead facts regarding each of the purchases at issue renders the Section 18 claim deficient since multiple Plaintiffs are attempting to bring claims in a representative capacity on behalf of at least 46 clients. Even if Plaintiffs claim that various investment managers employed by Plaintiffs made the decisions to purchase the securities at issue on behalf of their clients, they fail to identify which investment managers made the decisions to make the purchases at issue. Nor do they plead that the investment manager who allegedly read KPMG HK's audit reports is the same person who made the decision to purchase the Notes at issue, and that he or she relied on KPMG HK's statements to make those purchases.

**D. <u>Plaintiffs Fail Properly To Plead Loss Causation</u>**

"[I]n cases where, as here, a plaintiff seeks to hold a[n] . . . auditor responsible for primary violations of the securities laws, the plaintiff must plead [and prove] that the market reacted negatively to some disclosure correcting the falsity in the . . . auditor's statements (and not simply the underlying fraud)." *Amorosa v. Ernst & Young LLP*, 682 F. Supp. 2d 351, 363 (S.D.N.Y. 2010) (citation omitted). Plaintiffs allege no such causal connection in the Amended Complaint. Plaintiffs do not allege facts tending to show that the prices of the 6.5% Notes and 6.0% Notes dropped in response to any alleged revelation that KPMG HK's audit opinions on ShengdaTech's 2008 and 2009 financial statements were false at the time those audit opinions were issued.

As a threshold matter, Plaintiffs allege no price information at all for the 6.0% Notes.

Thus, Plaintiffs' claims based on the alleged losses suffered from the purchase of the 6.0% Notes fail as a matter of law. For the 6.5% Notes, Plaintiffs cite no facts indicating that the price of the ShengdaTech Notes fell in response to any alleged corrective disclosures revealing the falsity of KPMG HK's audit opinions. While Plaintiffs allege sporadic price declines of the 6.5% Notes, they make no effort to connect those declines to any alleged corrective disclosures revealing the alleged falsity of KPMG HK's audit opinions.

In their Opposition, Plaintiffs reference ShengdaTech's March 15, 2011 announcement that "'potentially serious discrepancies and unexplained issues' had been discovered during the course of KPMG HK's ***audit of the December 31, 2010 financial statements***, and that the Special Committee of the board of directors had launched an internal investigation into those issues." Opp. at 30 (emphasis added). But KPMG HK never issued an audit opinion on ShengdaTech's 2010 financial statements. The last audit opinion issued by KPMG HK concerned ShengdaTech's financial statements as of December 31, 2009, and Plaintiffs' claims are limited to KPMG HK's 2008 and 2009 audit opinions. Plaintiffs do not, and cannot, allege that the March 15, 2011 disclosure mentioned ShengdaTech's 2008 and 2009 financial statements, much less KPMG HK's audit opinions. Further, the announcement of the special committee investigation is not a corrective disclosure. *See In re Immersion Corp. Sec. Litig.*, C 09-4073 MMC, 2011 WL 6303389, *10 (N.D. Cal. Dec. 16, 2011) ("'the announcement of an investigation, standing alone, does not give rise to a viable loss causation allegation.'"); *Meyer v. Greene*, 12-11488, 2013 WL 656500, at *8 (11th Cir. Feb. 25, 2013) (same).

Plaintiffs also point to the May 5, 2011 announcement regarding KPMG HK's resignation as ShengdaTech's auditor, which stated, in part, that "disclosures should be made and action should be taken to prevent future reliance on their previously issued audit reports related to the consolidated balance sheets of ShengdaTech . . . as of December 31, 2008 and 2009 . . . ." Am. Compl. ¶ 52. But this disclosure did not state that the 2008 and 2009 financial statements were materially misstated or that KPMG HK's audit opinions on those financial statements were false or that a restatement of those financial statements should be issued. *See Meyer*, 2013 WL 656500, at *8 (finding that the commencement of an investigation, even if it resulted in a drop in

the price of the securities, did not constitute corrective disclosure to plead loss causation because it amounted to "an added *risk* of future corrective action," but did not "reveal to the market that a company's previous statements were false or fraudulent"). Plaintiffs also fail to identify any price drops for the 6.0% or 6.5% Notes following the May 5, 2011 announcement, and they do not cite any articles, reports or any other evidence showing that the market understood this revelation as revealing the falsity of KPMG HK's 2008 and 2009 audit opinions.[13]

### E. The Statute Of Limitations Bars DPERS' Section 18 Claim

Plaintiffs do not dispute that DPERS was on notice of its claims more than one year before it filed its Section 18 claim. Opp. at 40. To avoid the one year statute of limitations, Plaintiffs argue that DPERS was supposedly intended to be covered by the Tolling Agreement entered into between KPMG HK and the other named Plaintiffs. However, as Plaintiffs admit, unlike all the other named plaintiffs, DPERS is not named or identified in the Tolling Agreement as a party to the agreement. Accordingly, DPERS is not protected by that agreement. *See Monaco v. Bear Stearns Companies, Inc.*, CV 09-05438 SJO JCX, 2011 WL 4059801, at *14 (C.D. Cal. Sept. 12, 2011) ("Plaintiffs provide absolutely no legal support to find that a tolling agreement binds a party that is not named in the tolling agreement.").

Plaintiffs suggest that DPERS should receive the benefits of the Tolling Agreement because its account was managed by Oaktree Capital Management, who allegedly entered into the agreement "on behalf of themselves and the funds and accounts on whose behalf they purchased ShengdaTech Notes." Opp. at 40. However, Plaintiffs do not dispute that Grant & Eisenhofer, the attorneys who executed the Tolling Agreement for the other named Plaintiffs, did not represent DPERS in this action. Nor do they claim that DPERS assigned its claims to Oaktree to pursue in a representative capacity, and DPERS is not identified as an entity with an alleged monetary interest in Oaktree's Certificate of Interested Parties. DPERS did not join in the

[13] *See Metyk v. KeyCorp*, 1:10 CV 2112, 2013 WL 331122, at *4 (N.D. Ohio Jan. 29, 2013) ("Plaintiffs do not identify a single instance in which the truth regarding some alleged prior misrepresentation was ever revealed to the market, or in which KeyCorp's stock price dropped significantly as a result."); *L & L Energy*, 2012 WL 6012787, at *3 ("Plaintiff has not . . . linked most of these statements to a drop in share price, either because there was no corrective disclosure or because there was no significant drop in share price following a disclosure.").

complaint filed by the other named plaintiffs who are named in the Tolling Agreement, but instead filed a separate lawsuit. Since DPERS is not a party to the Tolling Agreement and was on notice of its claims more than one year before it filed its Section 18 claim, its claims are barred by the statute of limitations and should be dismissed with prejudice.

## IV. PLAINTIFFS' NEGLIGENT MISREPRESENTATION CLAIM SHOULD BE DISMISSED

### A. <u>Negligent Misrepresentation Claims Cannot Be Assigned</u>

In its moving papers, KPMG HK established that Plaintiffs' negligent misrepresentation claims, which are based on purported assignments from Plaintiffs' clients, must be dismissed because "Nevada law prohibits the assignment of fraud and negligent misrepresentation claims." *In re AgriBioTech, Inc.*, 319 B.R. 207, 210 (D. Nev. 2004) (citing *Prosky v. Clark*, 109 P. 793 (Nev. 1910)). Plaintiffs have cited no case holding otherwise. While Plaintiffs suggest that Judge Pro misread *Prosky*, on which he relied in *In re AgriBioTech*, Plaintiffs are mistaken.

Plaintiffs do not dispute that *Prosky* prohibits the assignment of claims "based on fraud." They attempt to distinguish *Prosky* by arguing that a negligent misrepresentation claim is "plainly not 'based on fraud.'" Opp. at 45. To the contrary, as this Court recognized: "'**Fraud is . . . an essential element of a negligent misrepresentation claim**." *Halpern v. Lightyear Network Solutions, Inc.*, 2:12-CV-340 JCM RJJ, 2012 WL 4482680, at *3 (D. Nev. Sept. 26, 2012) (Mahan, J.) (emphasis added); *see also Anahuac Mgmt. v. Mazer*, 2:09-CV-01590-MMD, 2013 WL 211080, at *8 (D. Nev. Jan. 18, 2013) ("'[a]lthough the word 'fraud' is not found anywhere in the Restatement definition—nor is the intent requirement that normally must accompany an allegation of common law fraud—fraud is still an 'essential element' of a negligent misrepresentation claim.'"). Thus, Plaintiffs' assertion that Judge Pro "misstated the holding" in *Prosky* is wrong. Plaintiffs do not cite any cases that contradict this Court's holding in *Halpern* that fraud is an essential element of a negligent misrepresentation claim. *See* Opp. at 45 n.53.

### B. <u>Plaintiffs Fail To Plead Facts Establishing That KPMG HK Owed Them Any Duty</u>

Plaintiffs' negligent misrepresentation claim also fails because they do not sufficiently

allege that KPMG HK owed them any duty. It is settled that "an auditor who does an annual opinion for no special particular purpose has no duty to third parties." *In re Washington Mut., Inc. Sec., Derivative & ERISA Litig.*, 2:08-MD-1919 MJP, 2010 WL 1734848, at *7 (W.D. Wash. Apr. 28, 2010). An auditor is only liable to third parties when it prepares a "transaction-specific audit statement or is informed of the intended audience distinct from the general investing public . . . ." *Id*. Plaintiffs do not allege that KPMG HK prepared any "transaction-specific audit statement" for either the 6.5% Notes or the 6.0% Notes. Instead, KPMG HK performed an annual financial statement audit of ShengdaTech's 2008 and 2009 financial statements.

In an effort to avoid this deficiency, Plaintiffs assert that "KPMG HK . . . consented to the inclusion of their audit report in the offering memoranda for the Notes" and "Plaintiffs were among a limited group of investors to whom KPMG HK knew its audit reports would be disseminated for purposes of evaluating potential investments in a private offering of Notes." Opp. at 48 n.57. However, Plaintiffs plead no facts supporting their assertion that KPMG HK consented to ShengdaTech's use of its audit opinions in the 6.5% Notes Offering Memorandum, and Plaintiffs do not dispute the fact that no such consent is contained in the Memorandum.

Plaintiffs' bold attempt to extend KPMG HK's duty to the purchasers of the 6.5% Notes, despite the absence of KPMG HK's written consent to include its audit reports in the Offering Memorandum, would exponentially expand the liability of outside auditors and defies the basic principle that "an auditor owes no general duty of care regarding the conduct of an audit to persons other than the client." *Bily v. Arthur Young & Co.*, 3 Cal. 4th 370, 376, 834 P.2d 745, 747 (1992).[14]

Plaintiffs assert that other courts have upheld negligent misrepresentation claims against auditors, but none of those cases is apposite. One of the cases was cited in violation of Ninth Circuit Rules, others apply standards that are no longer applicable, or do not follow Restatement 552 (which governs negligent misrepresentation claims in Nevada), and others involve situations

[14] *See also Nordica USA, Inc. v. Deloitte & Touche, LLP*, 839 F. Supp. 1082, 1090 n.12 (D. Vt. 1993) ("Under plaintiffs' reading, a client could contract for audit services and forward the documents to unlimited numbers of third parties years later. The accountant would then be liable to all the third parties if the client, years after the audit, let the accountant know of the third party involvement.").

where the auditor actually intended to supply the information to the investors. Opp. at 49 n. 58.[15] Not one of the cases supports the imposition of a duty in the circumstances present here.[16]

## V. PLAINTIFFS' CONNECTICUT UNIFORM SECURITIES ACT CLAIM SHOULD BE DISMISSED

Although Plaintiffs allege that KPMG HK "materially assisted ShengdaTech in selling the 6.5% Notes in the 6.5% Notes Offering," CAC. ¶ 215, they do not dispute that in order properly to plead a claim for material assistance, they must show "that the aider or abettor materially assisted the primary violator: (1) in the offer or sale; and (2) in the violation by which the primary violator accomplished the offer or sale." *Conn. Nat'l Bank v. Giacomi*, 699 A.2d 101, 119 (1997).

Plaintiffs fail to allege any facts establishing that KPMG HK materially assisted ShengdaTech, or that it "knew or should have known of the untruth or omission." *Id.* Plaintiffs merely repeat their unsupported allegations that KPMG HK consented to the inclusion of its audit opinions in the 6.5% Notes Offering Memorandum. Lacking any written consent, Plaintiffs claim "[t]he logical inference from Defendants' agreement to audit ShengdaTech's financial statements and issue opinions thereon -- in exchange for what likely were substantial fees -- is that they knew their audit opinions would be included in publicly filed documents and consented to such inclusion." Opp. at 71 n. 81. There is no legitimate basis for this alleged "logical inference," which would greatly increase an outside auditor's potential liability to third parties, and would render actual written consents meaningless. Plaintiffs have alleged no facts from which consent may properly be inferred.

---

[15] *See Hayes v. Arthur Young*, 34 F.3d 1072 (9th Cir. 1994) (Unpublished) (cited in violation of Ninth Circuit Rule 36-3 and inapposite); *Citizens State Bank v. Timm, Schmidt & Co., S.C.*, 335 N.W.2d 361, 366 (1983) (declining to follow Restatement 552); *Duke v. Touche Ross & Co.*, 765 F. Supp. 69, 77 (S.D.N.Y. 1991) (no mention of Restatement and auditor solicited investments); *Kohala Agric. v. Deloitte & Touche*, 949 P.2d 141, 163 (Hawaii Ct. App. 1997) (allegations that auditor knew that the information would be transmitted to investors at time of audit report); *Boykin v. Arthur Andersen & Co.*, 639 So. 2d 504, 508 (Ala. 1994) (plaintiffs pleaded that the auditors knew that the reports "were to be specifically directed and addressed to" the plaintiffs) *overruled on other grounds by Altrust Fin. Services, Inc. v. Adams*, 76 So. 3d 228 (Ala. 2011).

[16] Plaintiffs also do not allege a misstatement, reliance, loss causation, or that KPMG HK failed to exercise reasonable care. Plaintiffs rely on their Section 18 arguments to respond to these deficiencies. KPMG HK incorporates its response to those arguments set forth above.

Even if Plaintiffs did sufficiently plead KPMG HK's actual consent (and they did not), the claim would still fail because Plaintiffs do not plead any facts establishing that KPMG HK knew or should have known of the falsity of the alleged statements or omissions in the Offering Memorandum. The only statements that Plaintiffs even attempt to connect to KPMG HK are its 2008 and 2009 audit opinions referenced in the Notes Offering Memorandum. However, as explained above, Plaintiffs fail to plead facts establishing that the 2008 and 2009 opinions were false (*see* Section III(B), *supra*).

Moreover, since the audit opinions expressed in KPMG HK's audit reports are the only "statements" made by KPMG HK regarding ShengdaTech, KPMG HK cannot be held liable for any other statements or representations contained in the Offering Memorandum. Plaintiffs do not allege that KPMG HK drafted the memorandum, nor do they allege that KPMG HK even reviewed the memorandum. And Plaintiffs admit that KPMG HK did not audit the "unaudited" 2010 financial information contained in the 6.5% Notes Offering Memorandum. Simply alleging that KPMG HK knew or should have known of the alleged false statements is completely conclusory and is insufficient. *See Poptech, L.P. v. Stewardship Inv. Advisors, LLC*, 849 F. Supp. 2d 249, 279 (D. Conn. 2012) ("Plaintiffs fail to carry their burden to allege that [the defendant] assisted other Defendants in the securities fraud violation or that, even if he did, [the defendant] knew or should have known of the alleged misrepresentations and omissions.")

## VI. CONCLUSION

Plaintiffs have been provided with two opportunities to plead their claims against KPMG HK. It is now clear that Plaintiffs cannot meet the rigorous pleading standards of the PSLRA, and they do not possess the facts that would be necessary to plead legally sufficient claims. Accordingly, KPMG HK respectfully requests that the Court dismiss Plaintiffs' claims with prejudice at this time. *See In re Silicon Graphics*, 183 F.3d at 991 (finding that dismissal with prejudice was "appropriate" where plaintiff "failed to set forth any facts which he could add to save his complaint[ ]"); *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991) ("[W]here a plaintiff is unable to allege any fact sufficient to support its claim, a complaint should be dismissed with prejudice.")

DATED: March 25, 2013

CAMPBELL & WILLIAMS

By: *s/Donald J. Campbell*
Donald J. Campbell (Nevada Bar # 1216)
djc@campbellandwilliams.com
J. Colby Williams (Nevada Bar # 5549)
jcw@campbellandwilliams.com
700 S. Seventh Street
Las Vegas, NV 89101
(702) 382-5222

BINGHAM MCCUTCHEN LLP
Jeffrey Q. Smith (*Admitted Pro Hac Vice*)
(NY Bar #1376961)
399 Park Avenue
New York, New York 10022-4689
Telephone: 212.705.7000
Facsimile: 212.752.5378
Email: jq.smith@bingham.com

BINGHAM MCCUTCHEN LLP
Edward S. Kim
(*Admitted Pro Hac Vice)*
edward.kim@bingham.com
Craig A. Taggart
(*Admitted Pro Hac Vice*)
craig.taggart@bingham.com
600 Anton Boulevard, 18th Floor
Costa Mesa, CA 92626-1924
(714) 830-0622

Attorneys for Defendant KPMG HK

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that the foregoing **KPMG HK'S REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' CONSOLIDATED AMENDED COMPLAINT** was served on the 25th day of March, 2013 via the Court's CM/ECF electronic filing system addressed to all parties on the e-service list.

**/s/ *Donald J. Campbell***
An employee of Campbell & Williams