Jennifer Willis Arledge
Nevada Bar No. 008729
WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER LLP
300 South Fourth Street, 11th Floor
Las Vegas, NV 89101
(702) 727-1400; FAX (702) 727-1401
E-mail:Jennifer.Arledge@wilsonelser.com

Peter J. Larkin
William J. Kelly
Admitted *Pro Hac Vice*
WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER LLP
1133 Westchester Avenue
White Plains, NY 10604
(914) 323-7000; FAX (914) 323-7001
E-mail: Peter.Larkin@wilsonelser.com
E-mail: William.Kelly@wilsonelser.com

*Attorneys for Defendant Hansen, Barnett & Maxwell, P.C.*

THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEVADA

OAKTREE CAPITAL MANAGEMENT, L.P., on behalf of certain of its managed accounts; OAKTREE (LUX.) FUNDS – OAKTREE GLOBAL CONVERTIBLE BOND FUND; OAKTREE (LUX.) FUNDS – OAKTREE GLOBAL CONVERTIBLE BOND FUND (IB), OAKTREE (LUX.) FUNDS – OAKTREE NON-U.S. CONVERTIBLE BOND FUND; OAKTREE HIGH INCOME CONVERTIBLE FUND, L.P.; OAKTREE HIGH INCOME CONVERTIBLE FUND II, L.P; OAKTREE NON-U.S. CONVERTIBLE FUND, L.P.; OAKTREE TT MULTI-STRATEGY FUND, L.P.; LAZARD ASSET MANAGEMENT LLC, on behalf of certain of its managed accounts; LAZARD RATHMORE MASTER FUND, L.P.; AG OFCON LTD.; ZAZOVE ASSOCIATES LLC, on behalf of certain of its managed funds and accounts; CNH CA MASTER ACCOUNT, L.P.; CNH DIVERSIFIED OPPORTUNITIES MASTER ACCOUNT, L.P.; ADVENT CLAYMORE CONVERTIBLE SECURITIES AND INCOME FUND II; AQR CONVERTIBLE OPPORTUNITIES BOND UCITS FUND; AQR DELTA

No. 12-cv-00956-JCM-GWF

**DEFENDANT HANSEN, BARNETT & MAXWELL P.C.'S MOTION TO DISMISS AMENDED CONSOLIDATED COMPLAINT**

MASTER ACCOUNT, L.P.; AQR OPPORTUNISTIC PREMIUM OFFSHORE FUND L.P.; AQR DIVERSIFIED ARBITRAGE FUND; HFR CA LAZARD RATHMORE MASTER TRUST; and DELAWARE PUBLIC EMPLOYEES' RETIREMENT SYSTEM,

Plaintiffs,

-against-

HANSEN, BARNETT & MAXWELL, P.C.,

Defendant.

///

///

///

///

///

///

///

///

///

///

///

///

///

///

# TABLE OF CONTENTS

Page

DEFENDANT HANSEN, BARNETT & MAXWELL P.C.'S MOTION TO DISMISS AMENDED CONSOLIDATED COMPLAINT ....1

PRELIMINARY STATEMENT ....1

STATEMENT OF THE CASE ....2

A. Background ....2

B. The Causes of Action ....5

ARGUMENT ....6

POINT 1

THE COMPLAINT FAILS TO ADEQUATELY PLEAD A CLAIM UNDER { TA \l "Exchange Act § 18" \s "§ 18" \c 6 }SECTION 18 OF THE EXCHANGE ACT OF 1933 ....6

A. The Section 18 Claim Is Subject to the PSLRA's Particularity Pleading Requirements ....7

B. The Complaint Fails to Sufficiently Identify a False Statement by Hansen ....8

i. Plaintiffs Must Plead, with Particularity, that Hansen's Opinions of GAAS and GAAP Compliance in their 2007 Audit Opinion were False or Lacked a Reasonable Basis ....8

ii. Plaintiffs Fail to Plead Subjective Falsity ....9

iii. Plaintiffs' Assertions of GAAS Violations are Insufficient to Demonstrate a False Statement by Hansen ....11

a) Insufficient Allegations that Hansen Violated GAAS by Failing to Plan and Execute Appropriate Confirmation Procedures ....12

b) Insufficient Allegations that Hansen Violated GAAS by Failing to Address ShengdaTech's Lack of Internal Audit Function and Material Weaknesses in Internal Controls Over Financial Reporting ....15

c) Insufficient Allegations that Hansen Violated GAAS by Not Accounting for the Risks Associated with ShengdaTech's Operations In China ....16

iv. ShengdaTech's Alleged GAAP Violations are Insufficient to Demonstrate a Misstatement by Hansen ....17



648185v.1

a) Allegations of Overstated Financial Statements for 2008-2010 Do Not Equal Factual Allegations of Overstatements in 2007 ....................18

b) Additional Allegations are Insufficient to Imply Overstated Financial Statements in 2007 ....................18

v. ShengdaTech's Alleged Internal Controls Violations are Insufficient to Demonstrate a Misstatement by Hansen ....................19

C. The Complaint Fails to Set Forth Facts Supporting Actual Reliance ....................20

D. The Facts Alleged Do Not Support Justifiable Reliance on the Hansen Audit Report ....................22

E. Plaintiffs' Allegations of Loss Causation are Insufficient ....................23

POINT II

PLAINTIFFS' STATE LAW CLAIMS MUST BE DISMISSED ....................26

A. The Court Should Decline to Exercise Supplemental Jurisdiction ....................26

B. The Common Law Negligent Misrepresentation Claims Should Be Dismissed ....................26

i. Choice of Law ....................26

ii. Causes of Action ....................28

iii. Plaintiff Fails to Allege Privity ....................28

iv. Plaintiffs' Negligent Misrepresentation Claim Also Fails Under Nevada Law ....................29

C. The Claim under Section 36b-29 of the Connecticut Securities Law and Business Opportunity Investment Act Should Be Dismissed ....................31

i. Plaintiffs Fail to Allege a Primary Violation ....................32

ii. Plaintiffs Fail to Allege "Material Assistance" ....................32

CONCLUSION ....................34

# TABLE OF AUTHORITIES

## CASES

**Page**

*Aclys International v. Equifax*,
438 Fed. Appx. 689 (10th Cir. 2011) ........ 28

*Amorosa v. Ernst & Young, LLP*,
682 F. Supp. 2d 351 (S.D.N.Y. 2010) ........ 23

*Teamsters Local 617 Pension & Funds v. Apollo Group, Inc.*,
633 F. Supp. 2d 763, 818 (D. AZ 2009) ........ 24

*Ashcroft v. Iqbal*,
129 S. Ct. 1937 (2009) ........ 6, 14

*Bell Atl. Corp. v. Twombly*,
550 U.S. 554 (2007) ........ 6

*Bily v. Arthur & Young & Co.*,
3 Cal 4th 370 (1992) ........ 30

*Buttonwood Tree Value Partners, LP v. Sweeney*,
2012 U.S. Dist. LEXIS 80118 (C.D. Cal. June 7, 2012) ........ 9, 10

*Connecticut National Bank v. Giacomi*,
242 Conn. 17 (1997) ........ 32, 30

*Deephaven Private Placement Trading Ltd. v. Grant Thornton & Co.*,
454 F.3d 1168 (10th Cir. 2006) ........ *passim*

*Dictor v. Creative Management Services, LLC*,
223 P.3d 332 (2010) ........ 27

*Dura Pharmaceuticals, Inc. v. Broudo*,
544 U.S. 336, 347 (2005) ........ 23, 26

*Edward J. Goodman Life Income Trust v. Jabil Circuit, Inc.*,
595 F. Supp. 2d 1253 (M.D. Fl. 2009) ........ 9

*Farlander v. Mitchell*,
2007 Conn. Super. LEXIS 1721 (Conn. Sup. Ct. 2007) ........ 32

*First National Bank of Commerce v. Monco Agency Inc.*,
911 F.2d 1053 (5th Cir. 1990) ........ 30

*Gould v. Winstar Commc'ns, Inc.*,
692 F.3d 148 (2d Cir. 2012) ........ 21

*Howard v. Everex Sys., Inc.*,
228 F.3d 1057 (9th Cir. 2000) ........ 20

*Hufnagle v. Rino Int'l Corp.*,
2013 U.S. Dist. LEXIS 6095 (C.D. Cal. Jan. 14, 2013) .......... 9, 10

*IM Partners v. Debit Direct Ltd.*,
394 F. Supp. 2d 503 (D. Conn. 2005) .......... 31

*In re Advanced Battery Technologies*,
2012 U.S. Dist. LEXIS 123757 (S.D.N.Y. Aug. 29, 2012) .......... *passim*

*In re Colonial Bancgroup, Inc. Sec. Litig.*,
Fed. Sec. L. Rep. (CCH) P97,906 (2014) .......... 9

*In re Dell Inc., Sec. Litig.*,
591 F. Supp. 2d 877 (W.D. Tex. 2008) .......... 11, 15

*In re Gilead Scis. Sec. Litig.*,
536 F.3d 1049 (9th Cir. 2008) .......... 23

*In re No. 1 International, Inc.*,
2010 U.S. Dist. LEXIS 84323 (D. Utah 2010) .......... 29

*In re Party City Secs. Litig.*,
147 F. Supp. 2d 282 (D.N.J. 2001) .......... 7

*In re Redback Networks, Inc. Sec. Litig.*,
329 F. App'x 715 (9th Cir. 2009) .......... 23

*In re Silicon Graphics Inc. Sec. Litig.*,
183 F.3d 970 (9th Cir. 1999) .......... 7,8

*In re Suprema Specialties, Inc. Sec. Litig.*,
438 F.3d 256 (3d Cir. 2006) .......... 20, 21

*In re Syntex Corp. Sec. Litig.*,
95 F.3d 922 (9th Cir. 1996) .......... 23

*In re Washington Mut., Inc. Sec., Derivative & ERISA Litig.*,
2010 U.S. Dist. LEXIS 41773 (W.D. Wash. April 28, 2010) .......... 10, 20

*In re Williams Sec. Litig. – WCG Subclass*,
558 F.3d 1130 (10th Cir. 2009) .......... 24

*Kungys v. United States*
485 U.S. 759 (1988) .......... 32

*Kelley v. Rambus, Inc.*

2008 U.S. Dist. LEXIS 100319 (N.D. Cal. 2008) .......... 7, 8, 20

*Kelley v. Rambus, Inc.*,
384 Fed. Appx. 570 (9th Cir. 2010) .......... 7

*Meltzer Inv. GMBH v. Corinthian Colleges, Inc.*,
540 F.3d 1049 (9th Cir. 2008) .......... 23

*Nycal Corp. v. KPMG Peat Marwick, LLP,*
426 Mass. 491 (Mass. Sup. Ct. 1998) ........ 30

*Oaktree Capital Management, L.P. v. KPMG et al.,*
963 F. Supp. 2d 1064 (D. Nev. 2013) ........ *passim*

*Ravenswood Inv. Co. v. Bishop Capital Corp.,*
374 F. Supp. 2d 1055 (D. Wy. 2005) ........ 20

*Rubke v. Capitol Bancorp Ltd,*
551 F.3d 1156 (9th Cir. 2009) ........ 8, 10

*Scottish Heritable Trust, PLC v. Peat Marwick Main & Co.,*
81 F.3d 606 (5th Cir. Tex. 1996) ........ 30

*Smith v. Frandsen,*
94 F.3d 919 (Utah 2004) ........ 28

*Stephenson v. PricewaterhouseCoopers, LLP,*
768 F.Supp.2d 562 (S.D.N.Y. 2011) ........ 33

*Stremmel Motors, Inc. v. First National Bank of Nevada,*
575 P.2d 938 (Nev. 1978) ........ 29

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.,*
551 U.S. 308 (2007) ........ 7

*Tricontinental Indus., Ltd. v. PricewaterhouseCoopers, LLP,*
475 F.3d 824 (7th Cir. 2007) ........ 24

*U.S. ex rel. Pervez v. Beth Israel Med. Ctr.,*
736 F. Supp. 2d 804 (S.D.N.Y. 2010) ........ 12

**STATUTORY AUTHORITIES**

15 U.S.C. § 78u-4(b)(1) ........ 2, 7

15 U.S.C. § 78u-4(b)(4) ........ 23

28 U.S.C. § 1367(c)(3) ........ 26

15 U.S.C. § 78r(c) ........ 4

Conn. Gen. Stat. § 36b-29 ........ 31, 32

Utah Code Ann. § 58-26a-60 ........ 29

**RULES AND REGULATIONS**

F.R.C.P. 8(a) ........ 2

F.R.C.P 15 ........ 9

F.R.C.P. 17(A)(3) ........ 8

Fed. R. Civ. P. 9(b) ........ 31

Fed. R. Civ. P. 12(b) .......... 6

Fed. R. Civ. P. 12(b)(6).......... 1

**ADDITIONAL AUTHORITIES**

*RANDOM HOUSE COLLEGE DICTIONARY* (Rev. Ed. 1980) .......... 7

AU § 110.02.......... 14

Restatement (Second) of Conflict of Laws .......... 27

Restatement (Second) of Torts.......... 29, 30

**DEFENDANT HANSEN, BARNETT & MAXWELL P.C.'S MOTION TO DISMISS AMENDED CONSOLIDATED COMPLAINT**

Defendant Hansen, Barnett & Maxwell P.C. ("Hansen"), by and through its attorneys of record, WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER LLP, hereby moves for an order dismissing the complaint in its entirety and for any other relief the Court finds just and proper, for failure to state a claim upon which relief can be granted. This motion is brought pursuant to Federal Rules of Civil Procedure 12(b)(6) and the Private Securities Litigation Reform Act ("PSLRA").

**PRELIMINARY STATEMENT**

Hansen, Barnett & Maxwell, P.C. is a small accounting firm with one office in Salt Lake City, Utah. Hansen conducted an audit of ShengdaTech, Inc.'s financial statements for the fiscal year ending December 31, 2007. Five years later, Plaintiffs brought a securities action questioning the audit and the opinion rendered by Hansen in early 2008 as it pertains to Notes Offerings by ShengdaTech in 2008 and December 2010. On August 5, 2013, this Court dismissed Plaintiffs' Amended Complaint in its entirety. This Court found that "[g]enerally speaking, plaintiffs do not appear to know a single fact about the way defendant auditors performed their audits."[1] *Oaktree Capital Management, L.P. v. KPMG et al.*, 963 F. Supp. 2d 1064, 1089 (D. Nev. 2013). Plaintiff's Amended Consolidated Complaint ("Amended Consolidated Complaint" or "ACC") demonstrates that they still do not know anything about Hansen's audit or ShengdaTech's financial condition in 2007, and critically – Plaintiffs have not alleged any specific facts about Hansen's audit or the 2007 financial statements.

---

[1] Plaintiffs' prior complaints in this action included claims against KPMG Hong Kong and related KPMG entities for allegedly making similar false statements in its audit opinions for the years ended December 31, 2008 and 2009. Those claims have been resolved by settlement, and the KPMG entities are a non-party to the Amended Consolidated Complaint.

The Amended Consolidated Complaint supplements claims against Hansen with findings from the ShengdaTech Special Committee's internal investigation. The fatal flaw with the Amended Consolidated Complaint, however, is that this investigation that did not focus on the year that Hansen audited – 2007. Plaintiffs make some allegations about audit procedures performed and not performed during KPMG HK's 2010 audit. Plaintiffs also make allegations about discrepancies between ShengdaTech's 2008-2010 financial statements and the company's actual cash and total assets during these years. But none of these allegations touch on the year 2007 – the only year relevant to Hansen's audit. This Court previously concluded that "Plaintiffs' speculation about what [Hansen] did or did not do in performing [its] audit[] is not a substitute for factual assertions that meet the requirements of *Fed R. Civ. P. 8(a)* and 15 U.S.C. § 78u-4(b)(1)." *Id.* at 1091. Yet, the Amended Consolidated Complaint provides nothing more than the same inadequate speculation regarding Hansen's audit. Because Plaintiffs fail to set forth an alleged misstatement by Hansen, actual reliance on that misstatement and loss causation relating to that misstatement, the allegations do not set forth a claim under Section 18 of the Exchange Act. Further, as Plaintiffs' Section 18 claim fails, the Court should decline to exercise supplemental jurisdiction over Plaintiffs' state law claims. If the Court opts to hear these claims, they also nevertheless fail.

## STATEMENT OF THE CASE

### A. Background

This matter arises from an alleged fraud perpetrated by ShengdaTech, Inc. (the "Company"), a Chinese company that manufactures a specialty additive known as nano-precipated calcium carbonate. ACC ¶ 3. Plaintiffs filed the original complaint in this matter on June 6, 2012 (the "Original Complaint"). On November 21, 2012, Plaintiffs filed an Amended Complaint to consolidate this action with a similar action in the District of Nevada, *Delaware Public Employees' Retirement System v. KPMG et al.*, Index No. 12-cv-00961-JCM-GWF (the "Amended Complaint").

On September 6, 2012, Hansen had moved to dismiss the Amended Complaint, and on August 5, 2013, this Court granted Hansen's motion in its entirety. Co-defendants KPMG, a Hong Kong Partnership ("KPMG HK"), KPMG International Cooperative, KPMG LLP and Morgan Stanley & Co. have each now settled Plaintiffs' claims. Hansen is the only remaining defendant in this Amended Consolidated Complaint.

Hansen audited the Company's financial statements for the fiscal year ending December 31, 2007 (the "2007 Audit Opinion"). ACC ¶ 9. Hansen is a Utah-based accounting firm with its sole office in Utah. ACC ¶ 32. The 2007 Audit Opinion was filed with the SEC on March 14, 2008. ACC ¶ 85. The Audit Opinion was amended several weeks later to reclassify some balance sheet items, which did not have any impact on the financial statements as a whole.

Plaintiffs are institutional investors who reside in California, New York, Connecticut, Delaware, Nevada and Bermuda and certain of their managed funds. ACC ¶¶ 17-29. ShengdaTech, a Nevada Corporation, is not a party to this lawsuit. ACC ¶ 33.

ShengdaTech went public in the United States by virtue of a "reverse merger," a common method used by foreign and domestic entities to access the market without going through an initial public offering. *See* ACC ¶¶ 35; *In re Advanced Battery Technologies*, 2012 U.S. Dist. LEXIS 123757, *58 (S.D.N.Y. Aug. 29, 2012). Beginning in June 2011, such "reverse mergers" by Chinese companies have come under scrutiny. ACC ¶ 119.

In 2008, ShengdaTech conducted a 6.0% Note Offering pursuant to an Offering Memorandum. ACC ¶ 40. According to the Amended Consolidated Complaint, this offering incorporated the Hansen audit report and the Company's financial statements for 2007. *Id.* Only one Plaintiff, CNH Diversified Opportunities Master Account, L.P., has brought a claim based upon

their purchase of 6.0% Notes in the 6.0% Notes Offering.[2] *See* ACC ¶¶ 17-29, 40.

In November 2008, ShengdaTech replaced Hansen as its auditor with KPMG HK. ACC ¶ 38. CIBC/Oppenheimer, the underwriter for the 6.0% Notes, required as part of the deal that ShengdaTech utilize a "Big Four" accounting firm to audit the Company's financial statements in conjunction with that offering. ACC ¶ 12, n. 3. KPMG HK subsequently audited and issued audit reports concerning ShengdaTech's 2008 and 2009 Financial Statements. ACC ¶ 38. KPMG HK, in its audit report on the Company's 2008 Financial Statements filed on April 1, 2009, reported that it had found material weaknesses in the Company's internal controls over financial reporting. ACC ¶ 116; Original Complaint ¶ 41.

Plaintiffs also allege that "[t]he fact that 'material weaknesses' existed and were uncovered by a new auditor within mere months of its retention, coupled with the fact that ShengdaTech was later revealed to have falsified transaction documents and misstated [] basic [financial] information . . . ., demonstrate that such weaknesses existed during Hansen's audit of ShengdaTech's 2007 Financial Statements, and that Hansen was negligent in issuing an unqualified audit opinion on those financial statements and on ShengdaTech's internal controls . . . ." ACC ¶ 117. Regarding these "material weaknesses," Plaintiffs had previously alleged that KPMG's internal controls report for the year 2008 "raise[d] serious questions about the rigor Hansen applied in auditing the Company's 2007 Financial Statements and the basis upon which it opined that such statements presented the Company's financial positions and the results of its operations in accordance with GAAP..."

---

[2] 15 U.S.C. § 78r(c) contains a three-year statute of repose for § 18 claims. Per the tolling agreement, this action is considered commenced on March 14, 2012, for the purposes of limitation periods. Plaintiffs are bound by the three-year statute of repose. As such, Plaintiffs § 18 claims are limited to purchases of ShengdaTech Notes made on or after March 14, 2009. *See Oaktree Capital Management, L.P. v. KPMG et al.*, 963 F. Supp. 2d 1064, 1082, n. 14 (D. Nev. 2013). Plaintiffs' do not allege the date(s) when CNH Diversified Opportunities Master Account, L.P. purchased 6.0% Notes. To the extent such purchases occurred before March 14, 2009, they cannot for the basis of any claim.

Original Complaint ¶ 41.

On December 10, 2010, ShengdaTech commenced a second note offering for notes bearing 6.5% interest. ACC ¶ 41. This note offering also incorporated the Hansen 2007 audit report and the Company's 2007 financial statements. ACC ¶ 42. Also, as Plaintiffs alleged in their Original Complaint, it included the KPMG HK audit report regarding the material weaknesses in internal controls that Plaintiffs stated would cause any reader to seriously question the Hansen audit. *See* Original Complaint ¶ 41.

On August 19, 2011, ShengdaTech filed for bankruptcy protection in the United States Bankruptcy Court for the District of Nevada and effectively defaulted on the 6.0% Notes and 6.5% Notes purchased by Plaintiffs. ACC ¶ 56.

**B. The Causes of Action**

Plaintiffs set forth multiple claims for relief against Hansen, some by all plaintiffs and some by only a select few plaintiffs. The first Claim for Relief is pursuant to Section 18 of the Exchange Act relating to the company's 2007 10-k. The second Claim for Relief is a Section 18 claim relating to the Company's 2008 10-k. No new representations were made by Hansen in the 2008 10-k, but a copy of its previous audit report was incorporated into the 2008 10-k. The third Claim for Relief is also a Section 18 claim, but relates to the 2009 10-k. Like the 2008 10-k, a copy of the 2007 Hansen audit report is incorporated into the 10-k.

The fourth Claim for Relief seeks recovery relating to Plaintiff CNH Diversified Opportunities Master Account, L.P. purchase of the 6.0% Notes and sounds in common law negligent misrepresentation. Plaintiff CNH Diversified Opportunities Master Account, L.P., an investment fund managed by CNH Partners LLC, a Connecticut entity, is the only plaintiff who purchased the 6.0% Notes from the 6.0% Notes Offering. The fifth Claim for Relief seeks recovery

on behalf of all Plaintiffs in connection with the 6.5% Note purchases and sounds in common law negligent misrepresentation.

Finally, the sixth Claim for Relief seeks recovery on behalf of two plaintiffs, CNH Partners LLC and AQR Management LLC, on behalf of their managed funds located in Connecticut, the "Connecticut plaintiffs," for an alleged violation of the Connecticut Uniform Securities Act § 36b-29(a) relating to these plaintiffs' purchases of the 6.5% notes.

## ARGUMENT

In order to survive a motion to dismiss pursuant to Fed. R. Civ. P. 12(b), a complaint must plead sufficient factual allegations "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 570 (2007). "A claim has facial plausibility when the pleaded factual content allows the court to the draw reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (citation omitted). "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (internal quotation marks and citation omitted). If the plaintiff has not "nudged [his] claims across the line from conceivable to plausible, [the] complaint must be dismissed." *Twombly*, 550 U.S. at 570.

## POINT I

### THE COMPLAINT FAILS TO ADEQUATELY PLEAD A CLAIM UNDER SECTION 18 OF THE EXCHANGE ACT OF 1933

To state a claim under Section 18 of the Exchange Act, a plaintiff must plead that (1) a document filed pursuant to the Exchange Act, or any rule or regulation promulgated under it, contained a false or misleading statement; (2) the defendant made or caused to be made the false or misleading statement; (3) the plaintiff actually relied on the false statement; and (4) that reliance

caused loss to the plaintiff. *See Kelley v. Rambus, Inc.*, 2008 U.S. Dist. LEXIS 100319, fn. 3 (N.D. Cal. 2008) (aff'd by *Kelley v. Rambus, Inc.*, 384 Fed. Appx. 570 (9th Cir. 2010)). Plaintiffs' Complaint fails to adequately allege a false statement, actual reliance and loss causation. As such, the Complaint's First, Second and Third Claims for Relief must be dismissed as to Hansen.

**A. The Section 18 Claim Is Subject to the PSLRA's Particularity Pleading Requirements**

A plaintiff bringing a Section 18 claim must meet the PSLRA's "exacting pleading requirements." *See Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308 (2007); *Kelley*, 2008 U.S. Dist. LEXIS 100319, *10 (applying PSLRA to Section 18(a) claims); *Deephaven Private Placement Trading Ltd. v. Grant Thornton & Co.*, 454 F.3d 1168, 1172 (10th Cir. 2006) (applying PSLRA to Section 18(a) claim). Under § 78u-4(b)(1), plaintiffs must (1) specify each false statement and (2) elucidate the reasons why that statement is misleading. "Because plaintiffs concede that all of their factual allegations are made on information and belief, they must also state *with particularity* the facts that underlie that belief." *Oaktree*, 963 F. Supp. 2d at 1074 (emphasis in original); *see* 15 U.S.C. § 78u-4(b)(1).

The Ninth Circuit has interpreted the "particularity" according to its plain meaning. *See In re Silicon Graphics Inc. Sec. Litig.*, 183 F.3d 970, 984 (9th Cir. 1999). "Particularity refers to . . . dealing with or giving details; detailed; minute; circumstantial." *Id.* (quoting RANDOM HOUSE COLLEGE DICTIONARY 473 (Rev. Ed. 1980)) (internal quotation marks omitted).

Courts in this circuit and others have held that blanket, boilerplate allegations about misstatements in regulatory filings, press releases, and similar documents are not sufficient to plead a claim under PSLRA's particularity requirement. *Oaktree*, 963 F. Supp. 2d at 1074; *see Silicon Graphics Inc. Sec. Litig.*, 183 F.3d at 984.; *In re Party City Secs. Litig.*, 147 F. Supp. 2d 282 (D.N.J. 2001). The Ninth Circuit has also held that allegations were insufficient where the plaintiff did not

indicate the source of information or facts that she had alleged on information and belief. *Id. see Rubke v. Capitol Bancorp Ltd*, 551 F.3d 1156 (9th Cir. 2009). Plaintiffs "must provide, in great detail, all the relevant facts forming the basis of [their] belief." *In re Silicon Graphics Inc. Sec. Litig.*, 183 F.3d 970, 985 (9th Cir. 1999) (superseded by statute on other grounds). "It is not sufficient for a plaintiff's pleadings to set forth a belief that certain unspecified sources will reveal, after appropriate discovery, facts that will validate [their] claim." *Id.*

**B. The Complaint Fails to Sufficiently Identify a False Statement by Hansen**

i. *Plaintiffs Must Plead, with Particularity, that Hansen's Opinions of GAAS and GAAP Compliance in their 2007 Audit Opinion were False or Lacked a Reasonable Basis*

In a Section 18 Claim, as brought here, to plead that an audit opinion is false and misleading, plaintiffs must allege either (1) that the auditor did not believe its audit opinions were true at the time they were made, or (2) that it did not have a reasonable basis for its audit opinions. *See Kelley v. Rambus*, 2008 U.S. Dist. LEXIS 100319, at *41. Plaintiffs' allege three false statements arising from Hansen's 2007 audit report: (1) Hansen's statement that its audit was performed in accordance with the standards of the Public Company Accounting Oversight Board ("GAAS compliance"); (2) Hansen's statement that it believed ShengdaTech's financial statements complied with GAAP; and (3) Hansen's statement expressing an opinion on the effectiveness of ShengdaTech's internal controls.

This Court has already dismissed these allegations because, among other reasons, the "plaintiffs do not appear to know a single fact about the way the defendant auditors performed their audits." *Oaktree*, 963 F. Supp. 2d at 1089. The Amended Consolidated Complaint now attempts to bolster allegations against Hansen with findings from ShengdaTech's internal investigation that admittedly "did not focus on ShengdaTech's asset figures for 2007." Plaintiffs' Motion for Leave to (I) Substitute and/or Join Plaintiffs Pursuant to F.R.C.P. 17(A)(3), and (II) File an Amended

Consolidated Complaint Pursuant to F.R.C.P 15 ("Motion to Amend") [Dkt. 156, September 19, 2013] at 8, n. 6.

ii. *Plaintiffs Fail to Plead Subjective Falsity*

Because assertions of GAAS and GAAP compliance are statements of opinion, "Plaintiffs must allege subjective falsity, that [the auditor] did not believe, or had no reasonable basis to believe, that it complied with GAAS and that [the Company] complied with GAAP." *Buttonwood Tree Value Partners, LP v. Sweeney*, 2012 U.S. Dist. LEXIS 80118, *5 (C.D. Cal. June 7, 2012). In other words, "where a plaintiff challenges an opinion statement under the securities law, the plaintiff must allege with particularity that the defendant believed his or her opinion was false." *Id.* "An auditor's report is a statement of professional opinion, not fact." *Id.*

It is undisputed that auditor statements of GAAP compliance are statements of opinion. *See Oaktree*, 963 F. Supp. 2d 1064 at 1090 (*citing Deephaven*, 454 F.3d at 1168; *Edward J. Goodman Life Income Trust v. Jabil Circuit, Inc.*, 595 F. Supp. 2d 1253, 1282 (M.D. Fl. 2009)). This Court, however, recognized a split of authority among district courts in the Ninth Circuit regarding statements of GAAS compliance.[3] *Id.* at 1086. District courts in this circuit and nationally now follow *Buttonwood*, and find that GAAS compliance statements are also statements of opinion. *See Hufnagle v. Rino Int'l Corp.*, 2013 U.S. Dist. LEXIS 6095 (C.D. Cal. Jan. 14, 2013); *In re Colonial Bancgroup, Inc. Sec. Litig.*, Fed. Sec. L. Rep. (CCH) P97,906 (2014), 2014 U.S. Dist. LEXIS 40808, at *11 (M.D. Ala. March 27, 2014).

*Deephaven* is oft cited for the proposition that GAAS compliance is a statement of fact. *Oaktree*, 963 F. Supp. 2d 1064 at 1086. However, the *Deephaven* court's assertion was dicta. 454 F.3d at 1175-76 (finding, without explanation, that a statement of auditor's compliance with GAAS

---

[3] This Court declined to address subjective falsity because the Plaintiffs "failed to adequately allege objective falsity." *Oaktree*, 963 F. Supp. 2d 1064 at 1086.

was a factual assertion but holding a statement of company's compliance with GAAP to be an issue of opinion). One recent decision recognized the different arguments, but explained that the only case in the Ninth Circuit to seemingly side with the Plaintiffs' GAAS position does not actually do so. In *Hufnagle*, the court explained:

> Plaintiff argues that at least one court in this circuit has rejected the proposition that auditors can only be held liable if they subjectively believe that their own stated opinions are false. (*In re Wa. Mut. Inc. Sec. Deriv. & ERISA Litig.*, 694 F. Supp. 2d 1192 [W.D. Wash 2009].) The *Washington Mutual* court, however, did recognize the Ninth Circuit's holding that auditor opinions must be plead to be both objectively and subjectively false. *Id.* at 1223 (*citing [Rubke v. Capital Bancorp, Ltd.*, 551 F.3d 1156, 1162 (9th Cir. 2009)].) The court proceeded to find the subjective falsity requirement inapplicable only because the defendant auditor had stated a verifiable fact, not an opinion. *Washington Mutual*, 694 F. Supp. 2d at 1224.
>
> The court acknowledges that the *Washington Mutual* court addressed allegations similar to those here. So too, however, did a court of this district in *Buttonwood*, 2012 U.S. Dist. LEXIS 18376, at * 6 (C.D. Cal. Dec. 10, 2012). As the court recently recognized, reiterating its earlier holding, "an auditor's [generally accepted accounting standards] and GAAP assertions are statements of professional judgment and opinion, not verifiable fact." *Id.* This court agrees. As the *Buttonwood* court initially explained, GAAP "are a collection of broad standards that are couched in rather general[,] and in some cases inherently subjective[,] terms . . . ." *Buttonwood*, 2012 U.S. Dist. LEXIS 80118, at *2 (quotation and citation omitted). Furthermore, though Plaintiff now strives to characterize Frazer Frost's [the auditor] opinion regarding PSAOB and GAAP compliance as a statement of fact rather than of belief, the SAC itself alleges that Frazer Frost issued "false and misleading audit opinions," that Frazer Frost "falsely opined" that Rino's statements satisfied GAAP, and that Frazer Frost "provided an audit opinion" and "opined." Having based her claim against Frazer Frost upon an allegation that the Auditor misrepresented its own opinion, Plaintiff must allege that Frazer Frost's stated opinion was subjectively false. Absent any such allegation, Plaintiff cannot satisfy the misrepresentation element of a securities fraud claim, and the complaint must be dismissed.

*Hufnagle v. Rino Int'l Corp.*, 2013 U.S. Dist. LEXIS 6095 (C.D. Cal. Jan. 14, 2013) (internal citations to complaint omitted).

Thus, the issue of whether a plaintiff must plead both objective and subjective falsity appears well settled. This same analysis is equally applicable here. Plaintiffs have not pleaded facts to support an allegation of "subjective" falsity. Plaintiffs fail to allege that Hansen, in early 2008, "did not believe its audit opinions were true" and fail to allege that Hansen had "no reasonable basis for

its audit opinions" at that time. ACC ¶¶ 98, 107. Plaintiffs' only allegations remain conclusory statements that the underlying financial statements did not comply with GAAP and that Hansen's audit therefore must have violated GAAS. ACC ¶¶ 86, 92.

iii. *Plaintiffs' Assertions of GAAS Violations are Insufficient to Demonstrate a False Statement by Hansen*

Along with subjective falsity, Plaintiffs fall well short of demonstrating that Hansen's GAAS compliance statement was objectively false. Although the Amended Consolidated Complaint adds pages of findings from ShengdaTech's Special Committee investigation, these facts do not "actually touch on the [audit] procedures that [Hansen] did or did not employ." *Oaktree*, 963 F. Supp. 2d 1064 at 1087. Plaintiffs do not and cannot plead specific facts about the conduct of Hansen's audit in early 2008, because this investigation admittedly did not focus on ShengdaTech's financial condition in 2007. *See* Motion to Amend [Dkt. 156, September 19, 2013] at 8, n. 6.

In the prior decision, this Court offered Plaintiffs a clear roadmap for curing its pleadings and alleging with particularity that Hansen lacked a "reasonable basis" for its GAAS compliance statements. This Court instructed Plaintiffs to plead "some additional information about the way the audits were actually performed, or far more specific grounds upon which the court could conclude that the 2007, 2008, and 2009 figures were materially overstated." *Oaktree*, 963 F. Supp. 2d 1064 at 1089. The Amended Consolidated Complaint does not follow this roadmap.

"To successfully allege falsity, plaintiffs must, at the least, show that the auditor defendants failed to perform their audits in compliance with GAAS." *Id.* at 1086; *see Deephaven Private*, 454 F.3d at 1176. "To allege that an auditor defendant made a false statement about GAAS compliance, plaintiffs must do more than simply recite a GAAS rule or procedure, claim that defendants failed to follow that rule, and point to adverse results down the road." *Id*; *see In re Dell Inc., Sec. Litig.*, 591 F. Supp. 2d 877, 903 (W.D. Tex. 2008). "Plaintiffs must make specific allegations about the steps an auditor took, the way in which it planned its audit, and the procedures it employed." *Id.*

"Plaintiffs must allege something specific about the way an auditor did or did not perform its audit and cannot simply rely on bare allegations that fraud discovered years later speaks for itself." *Id.*; *U.S. ex rel. Pervez v. Beth Israel Med. Ctr.*, 736 F. Supp. 2d 804, 812 (S.D.N.Y. 2010). "Allegations in the form of 'had defendant auditor done x, they would have unveiled y, and because the court can infer that y occurred from a, b, and c, defendant must not have done x' have been specifically rejected by a number of courts." *Id.* at 1086-1087 (citation string omitted).

Based on the foregoing, this Court gave Plaintiffs a simple instruction for curing their pleadings: provide a "factual basis for knowing how the audit reports were produced." *Id.* at 1089. This Court has already found that:

> Generally speaking, ***plaintiffs do not appear to know a single fact about the way the defendant auditors performed their audits***. Without knowing what these defendants did, this court finds it hard to understand how plaintiffs can conscionably claim to know, on information and belief, that defendants did not do certain things. That is, without having any idea what auditing procedures defendants did follow, how can plaintiffs claim that they know the auditors did not follow certain procedures? Nothing in the complaint indicates any factual basis for knowing how the audit reports were produced.

*Id.* The Amended Consolidated Complaint, which is admittedly based on an "internal investigation [that] did not focus on ShengdaTech's asset figures for 2007," does not plead with particularity facts that demonstrate Hansen lacked a "reasonable basis" for its GAAS compliance opinion. *See* Motion to Amend [Dkt. 156, September 19, 2013] at 8, n. 6.

a) <u>Insufficient Allegations that Hansen Violated GAAS by Failing to Plan and Execute Appropriate Confirmation Procedures</u>

The Amended Consolidated Complaint once again restates GAAS Standard of Fieldwork No. 3 and assumes that if Hansen had implemented an appropriate confirmation process, then Hansen would have refused to issue an unqualified audit opinion for the year 2007. ACC ¶¶ 100-105. Needless to say, this is an "[a]llegation[] in the form of 'had defendant auditor done x, they would have unveiled y, and because the court can infer that y occurred from a, b, and c, defendant must not

have done x'" that this Court has already rejected. *Oaktree*, 963 F. Supp. 2d 1064 at 1086-1087. The Amended Consolidated Complaint purports to distinguish this pleading with additional facts uncovered for the years 2008-2010.

Plaintiffs' allegations demonstrate they know nothing about the confirmation procedures employed by Hansen in early 2008. Most significantly, the Plaintiffs the only fact Plaintiffs know about confirmations at-all is that KPMG HK discovered ShengdaTech's management was providing KPMG HK with fake addresses during the 2010 audit conducted in 2011. ACC ¶ 105. Plaintiffs do not allege a single fact about the way **Hansen** performed its audit three years earlier. The Court's inquiry should end here.

Instead, Plaintiffs make an assumption that "[m]anagement's interference with the confirmation process began as early as 2006 and was not detected because Hansen failed to comply with GAAS." Plaintiffs support this conclusory allegation with facts that do not touch on confirmation procedures.

The crux of Plaintiffs' GAAS claim against Hansen is a Special Committee finding concerning phony sales from one of ShengdaTech's five subsidiaries in 2007, alleged overstated reported sales to two other unnamed customers in 2007, and a vague description of an address discrepancy for another customer. ACC ¶¶ 71, 106 (a), (b). These facts were uncovered during an investigation that did not focus on the year 2007, and therefore should not be read as generalizations for that year absent allegations that the same customer appeared in each year, used the same address and that Hansen's audit procedures were deficient in failing to uncover that discrepancy.

Plaintiffs' certainly have not pleaded with particularity facts setting forth Hansen's procedures regarding customer accounts or that Hansen improperly tested these specific customer accounts and therefore Hansen's confirmation procedures fell short of GAAS. Once again, Plaintiffs have just recited a GAAS standard and pointed to fraud uncovered years later. This Court has

already explained that the "problem with these types of allegations is that they are merely consistent with a failure to follow GAAS standards." *Oaktree*, 963 F. Supp. 2d at 1089; *see Iqbal*, 129 S. Ct. at 1950.

Plaintiffs also allege that Hansen failed to confirm the existence of $65 million in CDs ShengdaTech's former CEO Xiangzhi Chen had claimed to exist in 2011, but could not be located by the Special Committee investigation. ACC ¶¶ 69-70, 106 (c). Plaintiffs, however, do not know if these CDs had existed in 2007 (if at all) and certainly do not plead this fact. In 2007, ShengdaTech reported only $26,366,568 in cash and cash equivalents and current assets totaling $38,476,494. *See* Exhibit "A" at F-4.[4] Thus, there cannot be a legal assumption that the alleged $65 million in CDs existed during Hansen's audit. It is far more plausible that these alleged CDs would have been acquired *after* Hansen's tenure as auditor, and after ShengdaTech raised $76 million from investors. Like with each of these allegations, Plaintiffs are speculating Hansen's lack of "reasonable basis," as opposed to pleading sufficient facts with particularity to support their claims.

Ultimately, the purpose of an audit is to obtain a reasonable and not an absolute assurance that financial statements are free from material misstatement. *See AU § 110.02*; *Deephaven*, 454 F.3d at 1176. Plaintiffs' Amended Consolidated Complaint fails to show Hansen violated GAAS, and therefore fails to demonstrate a "reasonable basis" that Hansen's GAAS compliance statement was false. *Oaktree*, 963 F. Supp. 2d at 1089; *see Deephaven*, 454 F.3d at 1176.

---

[4] Hansen respectfully requests that this Court consider Exhibit "A", a true and accurate copy of ShengdaTech's balance sheet for the year ended December 31, 2007. Exhibit "A" is an excerpt from ShengdaTech's 2007 Form 10-K/A that forms the basis, in part, for Plaintiffs' claims and is cited in passim in the Amended Consolidated Complaint. Exhibit "A" is publicly available through the SEC's Edgar company database at http://www.sec.gov/Archives/edgar/data/1160165/000114420408028708/v113859_10ka.htm.

b) Insufficient Allegations that Hansen Violated GAAS by Failing to Address ShengdaTech's Lack of Internal Audit Function and Material Weaknesses in Internal Controls Over Financial Reporting

The Amended Consolidated Complaint merely restates and reiterates its previous conclusory allegation regarding Hansen's internal control opinion. Absolutely no new material factual allegations have been alleged in this complaint, just the old allegations repackaged. The Amended Consolidated Complaint purports to distinguish this claim from the Consolidated Complaint by listing another GAAS standard and introducing an additional fact that ShengdaTech did not have an internal audit function in 2007. ACC ¶¶ 109-117. Specifically, the Amended Consolidated Complaint pleads that ShengdaTech's internal auditor Ernst & Young, retained in 2008, discussed with the Audit Committee that there was a lack of training and experience in ShengdaTech's auditing department. ACC ¶ 112 Based on this alleged "new" fact, Plaintiffs assume that Hansen must have violated GAAS by not accounting for the lack of internal audit function and unsophisticated employees because fraud was uncovered years later. ACC ¶ 113 ("Because an internal audit function is an important safeguard against misstatements of financial results, Hansen should have been particularly vigilant in investigating the accuracy of management's representation and the Company's reported financial results during the period when no such function existed.")

Yet again, Plaintiffs only rely on a "retroactive 'if only they had' basis for information and belief." *Oaktree*, 963 F. Supp. 2d 1064 at 1086-1087. "To allege that an auditor defendant made a false statement about GAAS compliance, plaintiffs must do more than simply recite a GAAS rule or procedure, claim that defendants failed to follow that rule, and point to adverse results down the road." *Id.*; *In re Dell Inc., Sec. Litig.*, 591 F. Supp. 2d at 903. Plaintiffs do not allege anything more, and therefore cannot establish that Hansen lacked a reasonable basis for its GAAS or internal control opinions. *Id.* at 1089; *see Deephaven*, 454 F.3d at 1176.

c) Insufficient Allegations that Hansen Violated GAAS by Not Accounting for the Risks Associated with ShengdaTech's Operations In China

Finally, Plaintiffs' addition of yet another GAAS standard and further general detail about Chinese reverse mergers does not substitute for Plaintiffs' lack of knowledge about Hansen's audit. ACC ¶¶ 118-122. Plaintiffs still do not know anything about the actual conduct of Hansen's audit in China and do not plead anything new about ShengdaTech's AIC filings, other than that a "competent auditor" would have reviewed these filings. ACC ¶ 121; *see Oaktree*, 963 F. Supp. 2d 1064 at 1086 ("plaintiffs do not plead anything to indicate whether the AIC filings, the SEC filings, or both contain misstatements—only the two sets of filings don't match").

Likewise, this Court has already rejected Plaintiffs' contention that Hansen should have been on "heightened alert to the possibility of fraud" because ShengdaTech was a Chinese company that accessed the U.S. markets by virtue of a reverse merger. ACC ¶ 120. This contention is mistaken and has already been rejected by this Court and in other decisions involving audits of Chinese companies prior to 2011. In *In re Advanced Battery Technologies*, the Court found that the mere fact that a Chinese company went public by virtue of a reverse merger transaction does not constitute a "red flag" for auditors between 2007 and 2009. *Advanced Battery Technologies*, 2012 U.S. Dist. LEXIS 123757 , *58. The Court found that the complaint had "no allegation that it was industry standard to view reverse mergers, particularly those involving China-based operations, with skepticism from 2007-2009, the only dates relevant to [the auditor]." *Id.* The Court continued: "Rather, there were, and still are, completely legitimate reasons for a small company to access the equity markets through a reverse merger, e.g., to avoid the legal fees associated with a conventional IPO." *Id.* Here, like *Advanced Battery*, the Amended Complaint alleges that Chinese reverse mergers came under scrutiny in "recent years." ACC ¶ 120. Plaintiffs' do not plead, however, that Chinese reverse mergers were under scrutiny in 2007, or early 2008, when Hansen conducted its audit.

iv. *ShengdaTech's Alleged GAAP Violations are Insufficient to Demonstrate a Misstatement by Hansen*

An auditor's statements of a company's GAAP compliance are statements of opinion and therefore Plaintiffs must allege that Hansen either didn't believe its opinion or had no reasonable basis upon which to form that opinion. *See Oaktree*, 963 F. Supp. 2d 1064 at 1090 (*citing Deephaven*, 454 F.3d at 1168)). Regardless of whether plaintiffs adequately alleged deviations from GAAP requirements in ShengdaTech's financial statements, they must first show that Hansen lacked a reasonable basis for its opinion on those statements. *Id. see, e.g., Deephaven*, 454 F.3d at 1168. "An adequate pleading of GAAS non-compliance is necessary to show that auditors lacked a reasonable basis for their opinions." *See id.*; *see also Edward*, 595 F. Supp. 2d at 1282-3.

Here, Plaintiffs allege that Hansen lacked reasonable bases for their opinions on ShengdaTech's GAAP compliance. Plaintiffs specifically allege that Hansen's failures to comply with GAAS left defendants without a reasonable basis upon which to opine. *See e.g.*, ACC ¶ 78, 86, 108. The problem for plaintiffs, however, is that they fail to sufficiently plead GAAS non-compliance. *See Oaktree*, 963 F. Supp. 2d 1064 at 1090. Because the Plaintiffs failed to allege a GAAS violation, plaintiffs cannot show that the auditors lacked a reasonable basis for their statements of opinion. *Id.*

Notwithstanding the foregoing, the basis for Plaintiffs' GAAP claim against Hansen is the alleged material overstatements of cash, total assets, sales, and net income in ShengdaTech's 2007 financial statements. ACC ¶ 84. This argument fails because Plaintiffs do not plead with particularity facts sufficient to demonstrate material overstatements in ShengdaTech's 2007 financial statements. Plaintiffs' allegations concerning the magnitude of overstated cash and total asset figures in ShengdaTech's 2007 financial statements are pure conjecture. Most significantly, as plaintiffs specifically alleged, "the internal investigation did not focus on ShengdaTech's asset figures for 2007." Motion to Amend [Dkt. 156, September 19, 2013] at 8, n. 6. The inquiry should

end here. However, Plaintiffs' attempt to save this claim with additional conclusory and misleading allegations about ShengdaTech's sales figures for the year 2007 and from another lawsuit filed against Hansen.

a) Allegations of Overstated Financial Statements for 2008-2010 Do Not Equal Factual Allegations of Overstatements in 2007

Without knowledge of ShengdaTech's 2007 cash and total assets, Plaintiffs cannot plead with particularity upon information and belief that ShengdaTech's 2007 cash and total asset figures were materially overstated. Under the PSLRA, Plaintiffs may not "merely lump" unsubstantiated claims about cash and total assets for the year 2007 together with Special Committee investigation findings for the years 2008-2010. *See Oaktree*, 963 F. Supp. 2d 1064 at 1076; *Swartz*, 476 F.3d at 764-65. A primary reason for the PSLRA's particularity pleading requirement is that a defendant should be able to defend itself from dubious claims and not be forced into discovery without particularized allegations of wrongdoing. Here, Plaintiffs are trying to force Hansen to defend claims that Plaintiffs themselves cannot articulate.

b) Additional Allegations are Insufficient to Imply Overstated Financial Statements in 2007

Plaintiffs' additional allegations concerning the overstatement of ShengdaTech's reported sales for 2007 and a malpractice lawsuit by the ShengdaTech Liquidating Trust, in conjunction with the Special Committee's 2008-2010 findings, still fail to create a more than plausible inference that ShengdaTech's cash and total assets were materially overstated in 2007. ACC ¶ 98. The Amended Consolidated Complaint, which is filled with allegations against KPMG HK," appears to make only one concrete, albeit dubious, allegation against Hansen: The Special Committee investigation "revealed that the Company's reported sales for 2007 included at least RMB 75 million (equivalent to more than $10.2 million) of phony sales, representing an overstatement of 2007 sales by over 11%." ACC ¶ 82. However, Plaintiffs do not allege that a particular audit procedure or lack thereof

by Hansen caused this alleged overstatement to go undetected.

Lastly, Plaintiffs supplement their GAAP claims against Hansen with a recitation of the ShengdaTech Liquidation Trust's purported malpractice allegations against Hansen. ACC ¶ 83 ("the ***fact*** that the ShengdaTech Liquidating Trust, which now holds title to all legal claims belonging to ShengdaTech, has filed a lawsuit against Hansen."). Incredibly, this allegation fails to mention that the very same attorneys who represent Plaintiffs herein, represent the plaintiff in that action. The only fact this allegation proves is that the same attorneys who represent these Oaktree Capital Management, L.P., et al. plaintiffs also represent the ShengdaTech Liquidating Trust.

The Amended Consolidated Complaint makes no concrete allegation against Hansen, and instead relies on a single dubious finding regarding sales from one ShengdaTech's five subsidiaries in 2007. This is not the sort of allegation that can cure the Court's previous finding that absent "far more specific grounds upon which the court could conclude that the 2007, 2008, and 2009 figures were materially overstated, there are simply no allegations from which the court can draw a *reasonable* inference that plaintiffs have plausibly pleaded objective falsity." *Oaktree*, 963 F. Supp. 2d 1064 at 1089.

*v. ShengdaTech's Alleged Internal Controls Violations are Insufficient to Demonstrate a Misstatement by Hansen*

Likewise, "an auditor's opinion on 'internal controls' is just that-an opinion" and to prove liability under § 18 Plaintiffs must allege that Hansen either did not believe its opinion or lacked a reasonable basis upon which to base its opinion. *Id.* at 1090. Plaintiffs' rely on their GAAS violation allegations to support their allegation that Hansen lacked a reasonable basis for its opinion. *Id.* As Plaintiffs' "GAAS allegations failed, [] so do Plaintiffs' internal control allegations along with it." *Id.*

### C. The Complaint Fails to Set Forth Facts Supporting Actual Reliance

A Section 18 claimant must allege *actual* reliance on the relevant misstatements or omissions in purchasing or selling a security, and may not allege constructive or presumed reliance. *Howard v. Everex Sys., Inc.*, 228 F.3d 1057, 1065 (9th Cir. 2000); *Kelley*, 2008 U.S. Dist. LEXIS 100319, *48. The standard for pleading actual reliance in a Section 18 claim is demanding. "Conclusory assertions of reliance are insufficient, and plaintiffs must plead facts probative of their actual reliance on any specific false statement in the filings at issue." *Kelley*, 2008 U.S. Dist. LEXIS 100319, *48; *In re Suprema Specialties, Inc. Sec. Litig.*, 438 F.3d 256, 284 (3d Cir. 2006). "Statements to the effect that plaintiffs 'received, reviewed, actually read, and relied upon' certain financial documents, or 'actually read and relied upon [them] in making their decisions to invest in [company] common stock,' are inadequate." *Id*; *see also In re Washington Mut., Inc. Sec., Derivative & ERISA Litig.*, 2010 U.S. Dist. LEXIS 41773, *33 (W.D. Wash. April 28, 2010).

Reliance cannot be presumed for a Section 18 claim. *Id.* Merely alleging to have read Forms 10-K and auditor certifications is insufficient. *Washington Mut.*, 2010 U.S. Dist. LEXIS 41173, *33. Plaintiffs must allege which specific documents they read, when they read them and how what they read impacted their decision to purchase or retain the Notes at issue. *Id.* Section 18 plaintiffs must also affirmatively allege that such reliance occurred "when he bought or sold the security at issue" and provide the accompanying factual allegations. *Id.*; *Ravenswood Inv. Co. v. Bishop Capital Corp.*, 374 F. Supp. 2d 1055, 1064 (D. Wy. 2005). Absent additional factual circumstances that convincingly demonstrate reliance, Plaintiffs must plead actual reliance. *Cf. Gould v. Winstar Commc'ns, Inc.*, 692 F.3d 148, 161 (2d Cir. 2012) (factual basis for reliance established as "a matter of practice" where plaintiff provides evidence of its practice of reviewing financial statements).

Plaintiffs do not come close to meeting these standards. In each of the Section 18 claims,

Plaintiffs merely allege that they "read and relied upon" the financial statements contained in ShengdaTech's 2007 10-K/A, 2008 10-K, and 2009 10-K and 10-K/A, and the 2007 Audit Opinion. ACC ¶¶ 134, 143, 152. Merely reciting at the pleading stage the substance of ShengdaTech's SEC filings, including Hansen's 2007 Audit Opinion and specific statements therein, does not demonstrate actual reliance.

Indeed, Plaintiffs' allegations demonstrate they did not "read and rely" on ShengdaTech's 2007 Form 10-K/A. To support their theory that Hansen's audit was deficient, Plaintiffs allege that Hansen failed to confirm the existence of $65 million in CDs ShengdaTech's former CEO Xiangzhi Chen had claimed to exist but could not be located by the Special Committee investigation in 2011. ACC ¶¶ 69-70, 106 (c). Plaintiffs do not plead that these CDs were issued in 2007. Rather, it is far more plausible that these CDs were issued after Hansen's tenure (if at all), and after ShengdaTech raised $76 million from Plaintiffs and millions more from other investors. In 2007, ShengdaTech reported $26,366,568 in cash and cash equivalents and current assets totaling $38,476,494. *See* Exhibit "A." If Plaintiffs had read and relied on this document, they would have not manufactured an allegation relating to CDs that could not have existed in the year 2007 to support their otherwise insufficient claim.

Plaintiffs' allegations are precisely the bare allegations that courts have rejected as inadequate. Plaintiffs provide no factual allegations regarding what was relied upon in the audit opinions, how those opinions were false, and how their reliance led them to the purchase. Plaintiffs also fail to affirmatively allege that such reliance occurred when the Notes were bought or sold. Plaintiffs merely rely on the improper conclusory assertion that they "read and relied upon" the 2007 Audit Opinion. As has been held previously, boilerplate allegations of reliance will not be sufficient to state a Section 18 claim.

**D. The Facts Alleged Do Not Support Justifiable Reliance on the Hansen Audit Report**

If Plaintiffs indeed "read and relied upon" ShengdaTech's 2008 10-K, and such review sufficiently impacted their investment decisions to the point of supporting actual reliance, then Plaintiffs' cannot plausibly allege justifiable reliance. ACC ¶ 143. Plaintiffs allege that "[t]he fact that 'material weaknesses' existed and were uncovered by a new auditor within mere months of its retention, coupled with the fact that ShengdaTech was later revealed to have falsified transaction documents and misstated [] basic [financial] information . . . ., demonstrate that such weaknesses existed during Hansen's audit of ShengdaTech's 2007 Financial Statements, and that Hansen was negligent in issuing an unqualified audit opinion on those financial statements and on ShengdaTech's internal controls . . . ." ACC ¶ 117. KPMG's criticism of ShengdaTech's internal controls for the year 2008 was apparent in ShengdaTech's 2008 10-K. ACC ¶ 116.

Regarding these "material weaknesses," Plaintiffs had previously alleged that KPMG's internal controls report for the year 2008 "raise[d] serious questions about the rigor Hansen applied in auditing the Company's 2007 Financial Statements and the basis upon which it opined that such statements presented the Company's financial positions and the results of its operations in accordance with GAAP . . ." Original Complaint ¶ 41. While Plaintiffs' Amended Consolidated Complaint backtracks from this blatant admission, the fact that Plaintiffs were on notice of the alleged deficiencies with Hansen's audit opinion when they purchased the Notes does not change.

After KPMG issued its report, according to Plaintiffs, the Hansen audit report was so seriously questioned that no reasonable investor, much less a sophisticated institutional investor, would have or should have reasonably relied on the audit report in making its investment decisions. If Plaintiffs did actually read and rely on the 2008 10-K, then they would have justifiably relied on KPMG's unqualified audit opinion that followed Hansen's. Because the 6.5% Notes were not offered until 2010, over a year after KPMG issued its Internal Controls report, the Complaint makes

clear that there could be no reasonable reliance on the Hansen report in making a decision at that time to invest in the Company's notes. Absent reasonable reliance, the claim should fail.

**E. Plaintiffs' Allegations of Loss Causation are Insufficient**

To allege loss causation, a plaintiff must "demonstrate a causal connection between the deceptive acts that form the basis for the claim . . . and the injury suffered by the plaintiff." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055-56 (9th Cir. 2008); *In re Redback Networks, Inc. Sec. Litig.*, 329 F. App'x 715, 717 (9th Cir. 2009) (affirming dismissal of Section 18 claim for failure to plead loss causation); *see* 15 U.S.C. § 78u-4(b)(4) (in private actions under this title, plaintiff must prove loss causation – "that the act or omission of the defendant alleged to violate this title caused the loss for which the plaintiff seeks to recover damages"). To do so, Plaintiffs must set forth particular allegations as to "what the relevant economic loss might be," and "what the causal connection might be" between the fraud alleged and the economic losses actually suffered. *Dura Pharmaceuticals, Inc. v. Broudo*, 544 U.S. 336, 342, 347 (2005). Plaintiffs must allege that "the practices that the plaintiff contends are fraudulent were revealed to the market and caused the resulting losses." *Meltzer Inv. GMBH v. Corinthian Colleges, Inc.*, 540 F.3d 1049, 1063 (9th Cir. 2008). While a court assumes that the facts in a complaint are true, it is not required to indulge "unwarranted inferences in order save a complaint from dismissal." *In re Syntex Corp. Sec. Litig.*, 95 F.3d 922, 926 (9th Cir. 1996) ("[C]onclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss for failure to state a claim.").

The misrepresentation "need not be the sole reason for the decline in value of the securities, but it must be a 'substantial cause.'" *In re Gilead*, 536 F.3d at 1055-56. With respect to auditor liability, the plaintiff must plead "that the market reacted negatively to some disclosure correcting the falsity" of the auditor's statements, and "not simply the underlying fraud." *Amorosa v. Ernst &*

*Young, LLP*, 682 F. Supp. 2d 351, 363 (S.D.N.Y. 2010).

"One way in which [a] plaintiff can prove [loss causation] is by showing that a corrective disclosure caused the stock price to decline." *Teamsters Local 617 Pension & Funds v. Apollo Group, Inc.*, 633 F. Supp. 2d 763, 818 (D. AZ). "To be corrective, the disclosure need not precisely mirror the earlier misrepresentation, but it must at least relate back to the misrepresentation and not to some other negative information about the company." *In re Williams Sec. Litig. – WCG Subclass*, 558 F.3d 1130 (10th Cir. 2009). Moreover, corrective disclosures limited to exposing misrepresentations from a specific time period apply only to that time period. *See Tricontinental Indus., Ltd. v. PricewaterhouseCoopers, LLP*, 475 F.3d 824, 843 (7th Cir. 2007) (granting motion to dismiss because disclosure about misrepresentations expressly limited to 1998 and 1999 did not correct alleged misrepresentation from 1997).

Here, Plaintiffs are asking the Court to infer that the drop in price after the March 15, 2011 disclosure must mean that the 2007 Audit Report, filed three years before the disclosure, caused the fall in value of the Notes, as opposed to the disclosure of a years-long ongoing fraud and disclosures about three intervening unqualified audit opinions. *See* ACC ¶¶ 45-54. However, nothing in the disclosures implicates or relate to Hansen or its audits. *Id.*

The March 15, 2011 disclosure, as alleged in the Amended Consolidated Complaint, revealed the fact that the Company established a Special Committee to investigate "potentially serious discrepancies" uncovered by KPMG in conducting its 2010 audit. ACC ¶ 45. Nothing therein called into question Hansen's audit report from three years prior, despite Plaintiffs' unsupported conclusion that the investigation "*later* revealed that [the fraud] had been ongoing since 2007." *Id.* Even taking Plaintiffs' allegation on its face, the March 15, 2011, disclosure still did not concern the year 2007 or Hansen at all. The disclosure explicitly refers only to KPMG's ongoing audit of the 2010 financial statements. It cannot logically follow that a disclosure pertaining to the 2010

financial statements automatically implicates every audit since the Company's inception. Thus, no drop in securities price triggered by this announcement could be logically or legally traced back to any representation by Hansen.

Similarly, the April 29, 2011 8-K filed by the Company did not mention anything having to do with Hansen or its audit. *See* ACC ¶¶ 47-48. In fact, the filing and related press release identified ongoing issues concerning cooperation of management and late filings as the cause of the stock's delisting. *Id.* Again, no drop in securities price attributable to this filing or press release could relate in any way to anything Hansen did or said in connection with its 2007 year audit.

The May 5, 2011 disclosures are also unconnected to anything relating to Hansen's audit. Those disclosures detail management's continuing refusal to cooperate with the investigation, KPMG's resignation as auditors and KPMG's concerns about the company's 2010 financial statements. There is no mention of the Hansen audit report or the time period covered by that audit report. KPMG also withdrew its prior audit opinions because it found that management's conduct in 2011 caused KPMG to doubt the veracity of representations of management made previously to KPMG. Thus, KPMG withdrew all of its audit opinions for ShengdaTech. *See* ACC ¶¶ 50-51. Again, nothing in this or any of the disclosures in 2011 or 2012 mentioned anything about Hansen or its audit period.

Plaintiffs conveniently overlook the one corrective disclosure that does concern Hansen. On March 31, 2009, KPMG's Internal Controls Report for the year ended 2008 allegedly corrected Hansen's 2007 internal controls opinion. ACC ¶¶ 116-117. KPMG's disclosure of "material weaknesses" in ShengdaTech's internal controls was public knowledge well before any loss. This disclosure did not cause a loss to the 6.0% Note holders and occurred before the Plaintiffs even purchased the 6.5% Notes.

At minimum, Plaintiffs have clearly failed to allege that the 2007 Audit Report was a

"substantial cause" for the decline in value. The disclosures occurred several years and multiple audit opinions after the 2007 Audit Report and Plaintiffs do not allege that the corrective disclosures specifically corrected any misstatement by Hansen regarding the Company's financial condition in 2007.

The Supreme Court has found that the loss causation requirement is designed "not to provide investors with broad insurance against market losses, but to protect them against those losses that misrepresentations actually cause." *Dura Pharms.*, 544 U.S. at 345. It is contrary to the objectives of federal securities laws to allow Plaintiffs to allege causation as to everyone ever related to ShengdaTech.

As Plaintiffs fail to allege loss causation, their Section 18 claims must be dismissed.

## POINT II

## PLAINTIFFS' STATE LAW CLAIMS MUST BE DISMISSED

### A. The Court Should Decline to Exercise Supplemental Jurisdiction

Plaintiffs assert subject matter jurisdiction based on a federal question, not diversity. ACC ¶ 15. If the Court dismisses the federal claim against Hansen, as it should for the reasons set forth above, the Court should once again decline to exercise supplemental jurisdiction over the state law claims, as is common practice in such circumstances. *See, e.g., Oaktree*, 963 F. Supp. 2d 1064 at 1091; 28 U.S.C. § 1367(c)(3). However, to the extent that this Court is inclined to assess the State Law claims, it will find that each of the State Law claims lack merit.

### B. The Common Law Negligent Misrepresentation Claims Should Be Dismissed

*i. Choice of Law*

Plaintiffs' Common Law Negligent Misrepresentation claim should be based on Utah law. The Amended Consolidated Complaint is silent as to what state's common law should apply to this

claim, however there are two clear possibilities: Nevada (the venue) or Utah (the state from which Hansen conducted its audits). A federal court in conducting a choice of law analysis utilizes the forum state's choice of law rules. Nevada has adopted the Restatement (Second) of Conflict of Laws as the relevant authority for choice-of-law jurisprudence in tort cases and the most significant relationship test of section 6 of the Second Restatement governs a choice-of-law analysis, unless another, more specific section applies. *Dictor v. Creative Mgmt. Servs., LLC*, 223 P.3d 332, 334 (2010). When there is no directive on choice of law, the relevant factors include: (a) the needs of the interstate and international systems; (b) the relevant policies of the forum; (c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue; (d) the protection of justified expectations; (e) the basic policies underlying the particular field of law; (f) certainty, predictability and uniformity of result; and (g) ease in the determination and application of the law to be applied. *Id.* The Supreme Court of Nevada has determined that additional comments in the Second Restatement support the position that the local law of the state where the parties are domiciled, rather than the local law of the state of conduct and injury, may be applied to determine whether one party is immune from tort liability. *Id.* at 336.

Hansen is a Utah accounting firm. Hansen's accountants are licensed by the State of Utah. Hansen's accountants have to maintain continuing professional education requirements in accordance with the rules set forth by the State of Utah. Any official investigation into professional misconduct would be by Utah officials under Utah rules. As Utah based accountants, they would expect that Utah law would apply to their conduct. Moreover, it is in the interests of the state of Utah to regulate the professionals licensed to practice in their state.

The only connection to Nevada is that ShengdaTech, a non-party, is a Nevada Corporation, that Plaintiffs chose this venue and that one of the investment manager Plaintiffs, Zazove Associates LLP, is located in Nevada. *See* ACC ¶¶ 17-31 (the remaining investment manager Plaintiffs are

located in California, New York, Connecticut, Delaware and Bermuda, and Plaintiffs do not plead the jurisdictions in which their funds are organized). At no time did the Hansen accountants contemplate that their conduct would be governed by Nevada law. Indeed, if an accountant had to be concerned about being sued under any state's law simply because it conducted an audit, the cost to the audit community to ensure compliance would be prohibitive.

Therefore, Utah state law should apply to the common law claim for negligent misrepresentation.

*ii. Causes of Action*

Plaintiffs have brought two causes of action for common law negligent misrepresentation. First, Plaintiff CNH Diversified Opportunities Master Account, L.P. has brought a claim for its purchase of 6.0% Notes in the May 2008 6.0% Notes Offering. ACC ¶¶ 158-166. CNH Diversified Opportunities Master Account, L.P. is the only party who purchased these Notes from the 6.0% Notes Offering. ACC ¶ 25. Plaintiff is managed by CNH Partners LLC, a Connecticut entity, and has also brought a claim under Connecticut Securities Law. Second, Plaintiffs have brought a claim for negligent misrepresentation relating to the purchase of 6.5% Notes in the December 2010 6.5% Notes Offering. ACC ¶¶ 167-175.

*iii. Plaintiff Fails to Allege Privity*

In Utah, to prevail under a claim for negligent misrepresentation, a plaintiff must demonstrate the existence of a duty running between the parties. *Smith v. Frandsen*, 94 F.3d 919, 923 (Utah 2004); *Aclys Int'l v. Equifax*, 438 Fed. Appx. 689 (10th Cir. 2011). Utah's Accountancy Practice Act provides that:

> A licensee, a CPA firm registered under this chapter, and any employee, partner, member, officer, or shareholder of a licensee or CPA firm *are not liable to persons with whom they are not in privity of contract* for civil damages resulting from acts, omissions, decisions, or other conduct in connection with professional services performed by that person, except for:

> (1) acts, omissions, decisions, or conduct that constitute fraud or intentional misrepresentations; or
>
> (2) other acts, omissions, decisions, or conduct, if the person performing the professional services:
>
> > (a) knew that a *primary intent* of the client was for the professional services to benefit or influence the *particular* person seeking to establish liability; and
> >
> > (b) identified in writing to the client that the professional services performed on behalf of the client were intended to be relied upon by the particular person seeking to establish liability.

Utah Code Ann. § 58-26a-602 (2012) (emphasis added); *see also In re No. 1 International, Inc., 2010 U.S. Dist. LEXIS 84323* (D. Utah 2010).

Plaintiffs do not, and cannot, allege that they were in privity of contract with Hansen and it is clear that neither exception applies. First, Plaintiffs have brought a negligent misrepresentation claim, which clearly does not constitute fraud or intentional misrepresentations. Second, with respect to the second exception, Plaintiffs have not, and cannot, allege that (a) ShengdaTech's *primary* intent was for the professional services to benefit or influence these particular purchasers of the notes and (b) Hansen "identified in writing" that the 2007 Audit Opinion was intended to be relied upon by specific purchasers of future notes. As the Plaintiffs are not in privity of contract with Hansen and the relationship is not in accordance with the Utah Accountancy Practice Act, the negligent misrepresentation claims are improper.

*iv. Plaintiffs' Negligent Misrepresentation Claim Also Fails Under Nevada Law*

Although the choice of law analysis favors application of Utah law, Plaintiffs' negligent misrepresentation claim also fails to state a claim under Nevada law. Plaintiffs have failed to allege privity between themselves and Hansen under Nevada law. In determining liability for negligent misrepresentation, Nevada has adopted § 552 of the Restatement (Second) of Torts. *Stremmel*

*Motors, Inc. v. First Nat'l Bank of Nevada*, 575 P.2d 938, 940 (Nev. 1978). Under § 552 of the Restatement (Second) of Torts, liability is limited to loss suffered "(a) by the person or one of a limited group of persons for whose benefit and guidance he *intends* to supply the information or knows that the recipient intends to supply it; and (b) through reliance upon it in a transaction that he *intends* the information to influence or *knows* that the recipient so intends or in a substantially similar transaction." Restatement (Second) of Torts § 552(2) (emphasis added).

Plaintiffs, as part of an unlimited class of potential future notes purchasers, do not constitute a "limited group" under § 552. *Id.* Several jurisdictions, in applying Section 552 to auditors, have defined what constitutes such a "limited group." *See e.g., Nycal Corp. v. KPMG Peat Marwick, LLP*, 426 Mass. 491, 496 (Mass. Sup. Ct. 1998); *Scottish Heritable Trust, PLC v. Peat Marwick Main & Co.*, 81 F.3d 606, 613 (5th Cir. Tex. 1996); *Bily v. Arthur & Young & Co.*, 3 Cal 4th 370, 408 (1992). In *Nycal*, Massachusetts' highest court held that an auditor's liability to noncontractual third parties is limited to those third parties who can demonstrate "actual knowledge" of the purchasers and the particular transaction "at the moment the audit is published, not by the foreseeable path of harm envisioned by [litigants] years following an unfortunate business decision." *Id.*; *see also First Nat'l Bank of Commerce v. Monco Agency Inc.*, 911 F.2d 1053, 1059 (5th Cir. 1990) (an auditor's liability is "fixed by the accountants' particular knowledge at the moment the audit is published."). Under the Restatement, an accounting firm cannot be made liable for its audit opinion by events occurring after the issuance of the opinion. Plaintiffs simply cannot demonstrate Hansen's actual knowledge, in March 2008, of the particular purchasers of a notes offering that did not exist until after the issuance of Hansen's audit opinion.

All potential purchasers of future notes do not constitute a limited group of potential third parties that would rely on the 2007 Audit Opinion. Indeed, the field of potential third parties is virtually unlimited. Moreover, Plaintiffs cannot demonstrate Hansen's actual knowledge, at the time

of the audit in March 2008, of Plaintiffs' reliance in connection with a notes offering that did not yet exist. Any such allegation of Hansen's actual knowledge of Plaintiffs' future reliance would be factually impossible.

As such, Plaintiffs' negligent misrepresentation claim would be dismissed under Nevada law in addition to Utah law, and Plaintiffs' fourth and fifth Claims for Relief must be dismissed

**C. The Claim under Section 36b-29 of the Connecticut Securities Law and Business Opportunity Investment Act Should Be Dismissed**

Plaintiffs CNH Partners LLC and AQR Capital Management, the Connecticut-based investment manager Plaintiffs, on behalf of their managed funds, have brought a claim under Section 36b-29 of the Connecticut Uniform Securities Law. Section 36b-29 attaches liability to any person who "offers or sells or materially assists any person who offers or sells a security by means of any untrue statement of a material fact or any omission to state a material fact necessary in order to make the statements made." *Conn. Gen. Stat. § 36b-29(a)*. This claim must be pled with particularity under Fed. R. Civ. P. 9(b). *See IM Partners v. Debit Direct Ltd.*, 394 F. Supp. 2d 503, 518 (D. Conn. 2005).

As an initial matter, Plaintiffs claims fail because they do not allege that their managed funds are domiciled in Connecticut. Conn. Gen. Stat. § 36b-29 is an investor protection statute that applies to Connecticut residents. CNH Partners LLC and AQR Capital Management are alleged to be Connecticut residents, but they are only the investors' agents, not the actual investors. As such, Plaintiffs do not have standing to pursue a claim under Conn. Gen. Stat. § 36b-29.

In addition to the foregoing, the Connecticut Plaintiffs' claims fail to allege the necessary primary violation and material assistance.

*i. Plaintiffs Fail to Allege a Primary Violation*

Plaintiffs allege that Hansen materially assisted ShengdaTech in selling the 6.0% and 6.5% Notes. However, Plaintiffs have failed to allege a primary violation, a prerequisite to any claim of

material assistance. *See Conn. Nat'l Bank v. Giacomi*, 242 Conn. 17, 46 (1997). Plaintiffs fail to allege a primary violation against any seller of ShengdaTech's 6.0% and 6.5% Notes in either the sale of the Notes Offerings or the purchases made on the secondary market. As such, this claim should be dismissed. At the very least, the Court should dismiss the claim to the extent it is based on purchases on the secondary market because Hansen cannot be said to have materially assisted unidentified secondary market sellers.

*ii. Plaintiffs Fail to Allege "Material Assistance"*

To be liable under Section 36b-29, Plaintiffs must allege that Hansen "materially assisted" ShengdaTech's alleged fraud. In 1997, the Connecticut Supreme Court clarified the relevant standard for what constitutes "material assistance" under the statute. *Giacomi*, 242 Conn. at 47; *See also Farlander v. Mitchell*, 2007 Conn. Super. LEXIS 1721, *9 (Conn. Sup. Ct. 2007). The Court found that (under the Former Section 36-498(a)(2)):

> In order for conduct to violate this section as "material assistance," to which we refer as aiding and abetting, it must also be proven that the aider or abettor materially assisted the primary violator: (1) in the offer or sale; and (2) in the violation by which the primary violator accomplished the offer or sale. In addition to the foregoing elements of proof, the buyer must also meet a burden of production concerning the issue of whether the aider and abettor knew or should have known of the untruth or omission.

The *Giacomi* court also quotes the U.S. Supreme Court in *Kungys v. United States*, 485 U.S. 759 (1988), for the proposition that "aid is material if it has a natural tendency to influence, or was capable of influencing, the decision of the purchaser." *Giacomi*, 242 Conn. 17, 53.

The initial burden is on the buyer to show that alleged aider and abettor knew or should have known of the untruth or omission. *Id.* The Connecticut Supreme Court cited what they found to be a "desire on the part of the legislature to provide some additional protection to those persons alleged to be aiders and abettors, namely, that the plaintiff will have to produce some evidence relevant to the aider and abettor's knowledge of the untruth or omission before that issue gets to the fact finder."

*Id.* at n. 34. "A simple pleading of knowledge will not suffice." *Id.* The necessary minimum standard is recklessness.

Plaintiffs fail to allege facts establishing material assistance and that Hansen knew or should have known of the alleged misrepresentations and omissions. Plaintiffs allege that "Hansen and KPMG materially assisted ShengdaTech in selling the 6.5% Notes." ACC ¶ 180. To support their allegation of material assistance, Plaintiffs note that the auditors' role as outside auditors assumed "special importance" because "ShengdaTech accessed the United States capital markets via a 'reverse merger' transaction, a process that allowed ShengdaTech to sell its securities publicly without undergoing the due diligence typically performed by underwriters in advance of an initial public stock offering…". *Id.* Again, the mere fact that a Chinese company entered the U.S. market via a "reverse merger" does not establish that it was "industry standard to view reverse mergers, particularly those involving China-based operations, with skepticism from 2007-2009." *Advanced Battery*, 2012 U.S. Dist. LEXIS 123757, *58.

Moreover, such "special importance" does not imply that an auditor "materially assisted" in a fraud. Plaintiffs assert no facts of aiding and abetting a fraud beyond the fact that Hansen had once prepared an audit report that was included in an offering three years in the future. Finally, Plaintiffs note, in a conclusory assertion that Hansen "should have known" that the Company's financial statements were materially false and misleading. *Id.* at ¶ 259. Such a bare and unsupported allegation is insufficient. *Giacomi*, 242 Conn. at 47, fn. 34 (burden is on plaintiff to allege facts supporting knowledge and a simple pleading of knowledge will not suffice). In addition, Plaintiffs' baseless allegation that Hansen knew or should have known ShengdaTech's financial statements were materially false and misleading in early 2008, even if true, is not sufficient to establish recklessness for aiding and abetting. *See Stephenson v. PriceWaterhouseCoopers, LLP*, 768 F.Supp.2d 562, 571-72 (S.D.N.Y. 2011) ("failures to comply with [GAAP] or other such

irregularities are insufficient to establish [an auditor's] recklessness").

As such, Plaintiffs' sixth Claim for Relief must be dismissed.

## CONCLUSION

For all the foregoing reasons, defendant Hansen respectfully requests the Court to dismiss all of the claims as against Hansen in their entirety, and with prejudice.

Dated: May 27, 2014

Respectfully submitted,

WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER LLP

By: [signature]
Jennifer Willis Arledge
300 South 4th Street
Las Vegas, NV 89101

Attorneys for Hansen, Barnett & Maxwell, P.C.

**CERTIFICATE OF SERVICE**

I certify that I am an employee of WILSON ELSER MOSKOWITZ EDELMAN & DICKER LLP and that on this 27th day of May, 2014, I caused a true and correct copy of the foregoing **DEFENDANT HANSEN, BARNETT & MAXWELL P.C.'S MOTION TO DISMISS AMENDED CONSOLIDATED COMPLAINT** to be served via the Court's ECF system and by regular U.S. mail upon counsel at the address listed below:

## Electronic Mail Notice List

The following is the list of **parties** who are currently on the list to receive email notice/service for this case.

***Attorneys for Plaintiffs Oaktree Capital Management, L.P; Lazard Asset Management LLC; Angelo, Gordon & Co., L.P.; Zazove Associates, LLC; CNH Partners, LLC; Advent Capital Management, LLC; and AQR Capital Management, LLC.***

***Attorneys for Consol Plaintiff HFR CA Lazard Rathmore Master Trust***

**Amanda J. Cowley**
**Gary R. Goodheart**
Fennemore Craig Jones Vargas
300 South Fourth St. 14th Floor
Las Vegas, NV 89101
702-692-8044
Fax: 702-692-8099
Email: acowley@fclaw.com
Email: ggoodheart@fclaw.com

**Brenda F. Szydlo**
Grant & Eisenhofer P.A.
485 Lexington Avenue
New York, NY 10017
646-722-8500
Email: bszydlo@gelaw.com

**Christine Mackintosh**
**Megan D. McIntyre**
**Stuart M. Grant**
Grant & Eisenhofer P.A.
123 Justison Street
Wilmington, DE 19801
302-622-7000
Fax: 302-622-7100
Email: cmackintosh@gelaw.com

Email: mmcintyre@gelaw.com
Email: sgrant@gelaw.com

*Attorneys for Plaintiff Delaware Public Employees' Retirement System*

**Ann Marie Johnson**
Delaware Department of Justice
820 North French Street
Wilmington, DE 19801
302-577-8423
Email: AnnMarie.Johnson@state.de.us

**Brenda F. Szydlo**
Grant & Eisenhofer P.A.
485 Lexington Avenue
New York, NY 10017
646-722-8500
Email: bszydlo@gelaw.com

**Cynthia L. Collins**
State of Delaware
Attorney General's Office
Carvel State Office Building
820 N French St 6th Fl
Wilmington, DE 19801
302-577-8400
Fax: 302-577-6630
Email: cynthia.collins@state.de.us

**Gary R. Goodheart**
Fennemore Craig Jones Vargas
300 South Fourth St. 14th Floor
Las Vegas, NV 89101
702-692-8044
Fax: 702-692-8099
Email: ggoodheart@fclaw.com

**Ralph K Durstein**
Delaware Department of Justice
820 North French Street
Wilmington, DE 19801
302-577-8510
Email: Ralph.Durstein@state.de.us

Hade Davis

An Employee of WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER LLP